The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JULIE DALESSIO, an individual, | Case No. 2:17-cv-00642 |
| Plaintiff, | **PLAINTIFF'S RESPONSE (and incorporated objections) TO Defendant University of Washington's Motion for SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF's CLAIMS** |
| v. | |
| UNIVERSITY OF WASHINGTON, | |
| Defendant. | **Noted for Hearing: Friday, September 15, 2017** |

**TABLE OF CONTENTS**

Table of Contents                              p.2- 3

Table of Authorities                           p. 4-11

I.   INTRODUCTION                                                    13
II.  EVIDENCE RELIED UPON                                           14
III. STATEMENT OF FACTS                                             14
  **A.  PUBLIC RECORDS RELEASE                                      15**
    **1.  UW provided Personal, confidential information to Unauthorized Persons**

      a)  **PR 15-00570,** provided to Plaintiff's next door neighbor.      15
      b)  Plaintiff was classified staff and student at the University of Washington    15
      c)  UW has admitted that staff failed to redact Plaintiff's Social Security Number   16
      d)  The Plaintiff has satisfied exhaustion requirements; this case was timely filed.   17

    **2.  Public Records Requests regarding UW employment records.          17**

      a)  The UW did not request records from the persons likely to have custody.      17
      b)  The UW responses to Public Records requests differ based on the purported
              identity of the requestor.                              18

      c)  Public Dissemination of Confidential Employee Information       19

  **B.  BREACH OF CONTRACT                                          20**

    **1.**  The Settlement Agreement                                    20

    **2.**  The UW publicized the Agreement.                            20

    **3.**  Statement of the Dispute refers to Plaintiffs "employment relationship with the
              University of Washington."                               20

    **4.**  The UW did not comply with the terms of the Agreement.        20

    **5.**  The UW removed this lawsuit from King County Superior Court     21

    **6.**  The Public Records Releases contain Evidence of Additional Breaches   21

  **C.**  Libel/ Slander/Defamation  Negligence, Malice              **21**

**D. CIVIL AND EMPLOYMENT RIGHTS**                                            **22**

  **1.** The conduct complained of was committed by persons
        acting under color of state law.

  **2.** The Plaintiff has satisfied all Exhaustion and Service requirements

**IV. ARGUMENT AND ANALYSIS**                                                 **22**

  **A.** "Good Faith" **Immunity Doctrine Does Not Bar** any of Plaintiff's Claims.   23

  **1.** The UW is liable for the tortious Actions of its Employees, Invasion of Privacy.   23

  **2.** "Good Faith" Analysis.                                              24


  **B. THE CONDUCT OF THE UW VIOLATED STATUTORY AND
        CONSTITUTIONAL  RIGHTS to Privacy**                                   **25**

  **C.    28 U.S.C. § 1367  provides for federal supplemental jurisdiction
              over all other claims in this action.**                         **26**

  **D. Libel/ Slander/Defamation**                                           **27**

  **E. Negligence/Malice**                                                   **29**

  **F. Civil Rights Violations, Discrimination, Retaliation**                **31**

  **1.** Plaintiff's Claims for Civil Rights Violations thus far have been based on the
        2015-2017 actions of the UW, and the terms of the Settlement Agreement   31

  **2.** Plaintiff has no wish to relitigate her employment relationship with the UW.   32

  **3.** Terms of the Settlement Agreement Specifically denote Age and Disability, and
        Bar the Plaintiff's Right to Complain of Discrimination                32

  **4.** Plaintiff's employment claims                                       32
        a) **42 U.S.C sec. 1981 includes post-employment retaliation**
        b) **Statute of Limitations**
  **5. Whistleblower** Protection                                            37

**V.   INJUNCTIVE RELIEF**                                                    38

**TABLE OF AUTHORITIES**

1.     '"[A]n individual has a **privacy** interest whenever information which reveals unique facts about those named is linked to an identifiable individual.'" *Cowles*, 44 Wn. App. at 897 (quoting *In re Rosier*, 105 Wn.2d 606, 613, 717 P.2d 1353 (1986))

2.     ". . .[T]he employee **privacy** definition protects personal information that the employee would not normally share with strangers." *Dawson*, 120 Wn.2d at 796 (quoting *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 38, 769 P.2d 283 (1989)) (citing *Cowles*, 44 Wn. App. at 890-91).

3.     In *Cowles,* the court discussed what sort of information the "personal" exception was intended to protect:  Such information might include, *but is not limited to,* the particular employee's union dues, charitable contributions, deferred compensation, medical records, disabilities, employment performance evaluations, and reasons for leaving employment. Likewise, the phrase may include those sensitive records relating to health, or marital and family information necessary for calculating health plans, job benefits, and taxes. <u>Cowles</u>, 44 Wn. App. at 891 (citation omitted) (emphasis added).

4.     "release of employees' identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individuals concerning information unrelated to any governmental operation and impermissible invasions of **privacy** as contemplated in *Painting Indus, Preservation Fund, and Hopkins.*  90 Wn. App. 205; 951 P.2d 357; 1998 Wash. App. LEXIS 273"

5.     "disclosure of identified employees' address, wage, and benefits information unwarranted because the public's interest did not meet FOIA's central purpose— "to open agency action to the light of public scrutiny."  *Department of Air Force v. Rose*, 425 U.S. 352, 357, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976).

6.     In *Human Rights Comm'n v. City of Seattle*, 25 Wn. App. 364, 607 P.2d 332 (1980) (*HRC*),determined that answers to questions such as why the applicant left his or her last job, the applicant's salary, and questions about education, military service, criminal convictions, and disabilities, were personal information. *HRC*, 25 Wn. App. at 369-70.

7.     Washington courts often look to federal court interpretations of similar provisions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1966), for guidance in interpreting Washington's public disclosure act. *See Dawson*, 120 Wn.2d at 791 ("Cases interpreting FOIA are relevant when we are interpreting our state act."). Exemption 6 of FOIA protects "personnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal **privacy**."

# TABLE OF AUTHORITIES

8.      5 U.S.C. § 552(b)(6).  *Id.* at Subsection (4) exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential;"

9.      It is clear from federal cases that Exemption 6 prevents disclosure of employee job classification, salary and benefits information, *coupled with the employee's name and address.* For example, in *Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force*, 26 F.3d 1479 (9th Cir. 1994), the court stated that "[t]he requesters seek to procure not only a name and address list of workers, but a list that connects those names to precise information about each worker's occupational classification, wages, and wage deductions. It cannot be disputed that this information is normally considered private." *Painting Indus.*, 26 F.3d at 1483.

10.      in *Painting & Drywall Work Preservation Fund, Inc. v. Department of Hous. & Urban Dev.*, 936 F.2d 1300 (D.C. Cir. 1991), the court held that employee names, addresses, and wage, hour, and deduction information was personal and exempt from disclosure under FOIA.

11.      *Hopkins v. Department of Hous. & Urban Dev.*, 929 F.2d 81 (2nd Cir. 1991), determined that payroll records, which contained employee names, addresses, and wage information, were exempt from disclosure because of the employees' substantial **privacy** interest against dissemination of that information.

12.      "[T]he disclosure of a public employee's [s]ocial [s]ecurity number would be highly offensive to a reasonable person and not of legitimate concern to the public. Also, residential addresses and telephone numbers of employees of public agencies are independently exempt from disclosure under RCW 42.17.310(1)(u)." *PAWS*, 125 Wn.2d at 254.

13.      90 Wn. App. 205; 951 P.2d 357; 1998 Wash. App. LEXIS 273  argues that disclosure of an employee's name coupled with his or her identification number would provide access to other exempt personal information, such as the social security number, home address, and telephone number and that release of employees' identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individuals concerning information unrelated to any governmental operation and impermissible invasions of **privacy** as contemplated in *Painting Indus., Preservation Fund,* and *Hopkins.*

14.      the letters are recommendations and intra-University memorandums expressing opinions and evaluations made preliminary to, and not publicly cited in connection with, any University action they are exempt under RCW 42.17.310(1)(i). -- Hafermehl v. University of Washington, 29 Wn. App. 366, 368 (Wash. Ct. App. 1981)

1

2

**TABLE OF AUTHORITIES**

**RCW 41.06.450**

3

**Destruction or retention of information relating to employee misconduct.**

4

(1) The director shall adopt rules applicable to each agency to ensure that information

5

relating to employee misconduct or alleged misconduct is destroyed or maintained as

follows:

6

(a) All such information determined to be false and all such information in situations where

7

the employee has been fully exonerated of wrongdoing, shall be promptly destroyed;

8

(b) All such information having no reasonable bearing on the employee's job performance or

on the efficient and effective management of the agency, shall be promptly destroyed;

9

(c) All other information shall be retained only so long as it has a reasonable bearing on the

10

employee's job performance or on the efficient and effective management of the agency.

11

**RCW 41.06.450** Destruction or retention of information related to employee misconduct or

12

alleged misconduct "The legislature finds that . . . The purpose of RCW 41.06.450 is  ". . . so

13

that records are maintained in a manner which is fair to employees . . .")

14

**RCW 42.40.020(3)**  "An individual who knowingly provides or reports, or who reasonably

15

ought to know he or she is providing or reporting malicious, false, or frivolous information,

16

or information that is provided with reckless disregard for the truth, or who knowingly omits

17

relevant information is not acting in good faith."

18

**RCW 42.52.050** "(3) No state state officer or state employee may disclose confidential

19

information to any person not entitled or authorized to receive the information."

20

**RCW 42.56.050  Invasion of privacy, when.**

21

A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these

22

terms are used in this chapter, is invaded or violated only if disclosure of information about

1

2

### TABLE OF AUTHORITIES

3

4   the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate

concern to the public. The provisions of this chapter dealing with the right to privacy in

5   certain public records do not create any right of privacy beyond those rights that are specified

in this chapter as express exemptions from the public's right to inspect, examine, or copy

6   public records.

7   [ **1987 c 403 § 2.** Formerly RCW 42.17.255.]

**NOTES:**

8   **Intent—1987 c 403:** "The legislature intends to restore the law relating to the release of

9   public records largely to that which existed prior to the Washington Supreme Court decision

in "In Re Rosier," 105 Wn.2d 606 (1986). The intent of this legislation is to make clear that:

10   (1) Absent statutory provisions to the contrary, agencies possessing records should in

11   responding to requests for disclosure not make any distinctions in releasing or not releasing

12   records based upon the identity of the person or agency which requested the records, and (2)

agencies having public records should rely only upon statutory exemptions or prohibitions

13   for refusal to provide public records. Further, to avoid unnecessary confusion, "privacy" as

14   used in RCW 42.17.255 is intended to have the same meaning as the definition given that

15   word by the Supreme Court in "Hearst v. Hoppe," 90 Wn.2d 123, 135 (1978)." [ **1987 c 403 §**

16   **1.**]

17

18   **RCW 42.56.070  Documents and indexes to be made public.**

(1)  . . . . To the extent required to prevent an unreasonable invasion of personal privacy

19      interests protected by this chapter, an agency shall delete identifying details in a manner

20      consistent with this chapter when it makes available or publishes any public record;

however, in each case, the justification for the deletion shall be explained fully in

21      writing.

22

1

2

**TABLE OF AUTHORITIES**

3   **42.56.110  Destruction of information relating to employee misconduct.**

4   Nothing in this chapter prevents an agency from destroying information relating to employee

5   misconduct or alleged misconduct, in accordance with RCW 41.06.450, to the extent

    necessary to ensure fairness to the employee.

6   [ **1982 c 208 § 13.** Formerly RCW **42.17.295**.]

7

8   **42.56.230  Personal information.**

9   3) Personal information in files maintained for employees, appointees, or elected officials of

    any public agency to the extent that disclosure would violate their right to privacy;

10  (7)(a) Any record used to prove identity, age, residential address, social security number, or

11  other personal information required to apply for a driver's license or identicard.

12  **42.56.250**

13  (3) The following information held by any public agency in personnel records, public

14  employment related records, volunteer rosters, or included in any mailing list of employees

    or volunteers of any public agency: Residential addresses, residential telephone numbers,

15  personal wireless telephone numbers, personal electronic mail addresses, social security

16  numbers, driver's license numbers, identicard numbers, and emergency contact information

17  of employees or volunteers of a public agency . . .

18  **42.56.280  Preliminary drafts, notes, recommendations, intra-agency memorandums**

19  in which opinions are expressed or policies formulated or recommended are exempt under

20  this chapter, except that a specific record is not exempt when publicly cited by an agency in

    connection with any agency action.

21  [ **2005 c 274 § 408.**]

22

**42.56.290  Agency party to controversy.**

Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt from disclosure under this chapter.

**RCW 42.56.410** "Records maintained by the employment security department and subject to chapter 50.13 RCW if provided to another organization for operational, research, or evaluation purposes are exempt from disclosure under this chapter."

**RCW 42.56.540  Court protection of public records** "The examination of any specific record may be enjoined if . . . would clearly not be in the public interest and would substantially and irreparably damage any person . . ."

**42.56.590   Personal information—Notice of security breaches.**

(2) Any agency that maintains data that includes personal information that the agency does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(5) For purposes of this section, "personal information" means an individual's first name or first initial and last name in combination with any one or more of the following data elements:

(a)    Social security number;

(b) Any agency that violates, proposes to violate, or has violated this section may be enjoined.

(c) The rights and remedies available under this section are cumulative to each other and to any other rights and remedies available under law.

**TABLE OF AUTHORITIES**

**42.56.600  Mediation communications.**

Records of mediation communications that are privileged under chapter **7.07** RCW are

exempt from disclosure under this chapter.

[ **2006 c 209 § 15.**]


**7.07.**

(5) Records of mediation communications that are privileged under this chapter are exempt

from the requirements of chapter **42.56** RCW.


**7.07.070**

**Confidentiality.**

Unless subject to chapter **42.30** RCW, mediation communications are confidential to the

extent agreed by the parties or provided by other law or rule of this state.


**RCW 51.28.070** "Information contained in the claim files and records of injured workers,

under the provisions of this title, shall be confidential and shall not be open to public

inspection. . ."


**University of Washington,**

**WAC 478-276-085**

**Responses to public records requests.**

(1) **Responses generally.** The public records office shall respond within five business days of

receiving a public records request by:

(a) Providing the records;

(b) Providing an internet address and link to the records on a university web site;

(c) Acknowledging that the request has been received and providing a reasonable estimate of

the time required to respond to the request; or

TABLE OF AUTHORITIES

d) Denying the request.

(2) **Additional time.** Additional time for the office to respond to a request may be based upon the need to:

(a) Clarify the request;

(b) Locate, assemble, and review the records requested;

(c) Notify third persons or agencies affected by the request; or

(d) Determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request.

**478-276-090**

**Notice of availability.**

(1) **Notice of availability generally.** Once records responsive to a request (or any installment thereof) have been located, assembled, reviewed, and prepared for release, and any affected third persons or agencies notified, the public records office shall promptly notify the requestor that those records are available for inspection or copying.

**478-276-095**

(4) **Protection of public records.** Access to records during viewing appointments shall be restricted to the viewing area designated by the public records office. No document shall be physically removed by a member of the public from the viewing area for any reason whatsoever; nor shall any member of the public who is viewing documents disassemble, deface, or cause the disorganization of any record for any reason whatsoever.

University of Washington policy (http://hr.uw.edu/policies/providing-work-references-to-prospective-employers/) states : "so long as the disclosed information relates to:  1.  An employee's ability to perform his or her job; 2.  The diligence, skill, or reliability with which

1

**TABLE OF AUTHORITIES**

2

3    an employee performs or performed his or her job; or 3.  Any illegal or wrongful act an

4    employee committed in relation to his or her job duties."  "The presumption of good faith can

5    only be effectively challenged if a current or former employee can show by clear and

     convincing evidence that information the employer disclosed was knowingly false,

6    deliberately misleading, or made with reckless disregard for the truth."  and "the law states

7    that a supervisor or manager who provides it should retain a written record in the employee's

8    personnel file of the identity of the person or entity to which reference information is

     provided…"  "Do not provide medical information even if an employee voluntarily disclosed

9    it to you."  "Do not provide information about an employee that is not directly work related."

10

11

12

13

14

15

16

17

18

19

20

21

22

1
2

## I.  INTRODUCTION

3

Plaintiff asserts that the University of Washington (UW), in response to public records

4

(PR) requests in 2015-2017, published documents containing personal and confidential

5

information pertaining to Plaintiff, that are statutorily exempt from disclosure pursuant to the

6

Public Records Act (RCW 42.56), and provided these to unauthorized persons in violation of

7

RCW 42.52.050(3). The UW's release of records violated additional state laws (RCW 41.06.450

8

for retention and destruction of records; RCW 49.60.180 for discrimination and unfair practices

9

of employers; RCW 51.28.070 for breach of confidentiality of records of injured workers; RCW

10

7.96 for defamation), Washington Administrative Code (WAC 478-276-085, WAC

11

478-276-090; WAC 44-14 Public Records Act Rules), and Federal statutes including 45 CFR

12

part 160 & 164, 20 U.S.C 1232g(a)(4), 34 CGR Part 99,  5 U.S.C. 552(b)(6), and the negligent

13

release of information violated her constitutional right to privacy and RCW 42.56.050 (state

14

employee right to privacy).(*Dkt.2- 1 p. 10-28*)

15

In 2015-2017, UW also published a settlement Agreement between the Parties, and

16

reproduced, maintained and published certain documents, in breach of the agreement and

17

regardless of statutory exemptions.  Additionally, Plaintiff asserts that the Agreement contains

18

terms barring her rights to publicize the terms, and to complain about discrimination based on

19

age or disability, in violation of RCW 49.60.180, RCW 49.44.090, RCW 49.60.210 and RCW

20

49.60.220, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and

21

Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2, ch 76; 42 U.S.C. 1981; and 42 U.S.C.

22

1983,*(id)*

Plaintiff asserts that UW has violated RCW 40.14, WAC 478-276-095 and UW policies for records retention and destruction, and has compiled, published, distributed and left open for public inspection malicious, deliberately misleading, libelous and defamatory records and opinions concerning Plaintiff, in violation of RCW 42.40, RCW 42.52.050(3), RCW 41.06.450, RCW 42.56.050, RCW 7.96 and 42 U.S.C. sec 1981. *(id)*

Further, Plaintiff asserts that pursuant to RCW 42.40 (State employee whistleblower protection), Plaintiff has the right to confidentiality in this case. *(id)*

## II.  EVIDENCE RELIED UPON

**The evidence must be viewed favorably to the nonmoving party. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001)**

• Court Records Dkt 2-1(complaint), 1(removal), 4(answer) 15(JSR), 27, 29-1, 30-1, 30-2, 30-3, 30-4, 30-7, 30-8, 30-9, 32, 33, 34, 36, 37, 37-4(Under seal), 37-5, 37-6, 37-7, and 38.

• Public Records:  15-00570, 16-00218, 16-00283, 16-00760, 17-00357, 17-00358, 17-00359

• Attached exhibits 1-5

• Declaration of Plaintiff (Julie Dalessio) and attached exhibits

Plaintiff Objects to exhibit A of Declaration of Alison Swenson[1] and moves to strike.

Plaintiff Objects to Dkt. 28-1 and 28-2, (FRCP 12, and ER 403) and moves to strike.

## III.  STATEMENT OF FACTS

There are several issues of material fact, and the Evidence shows that there are genuine issues for trial, thus the UW motion for summary judgment should be denied.

---

[1]Partial, altered copies (submitted as Exhibit A to Decl. Alison Swenson *Dkt. 30*)  by UW as Dkts.30-1, 30-2, 30-3, 32, 33, 34.  Plaintiff has addressed objections to these in Motion to Seal records (*Dkt. 36*)

## A.  PUBLIC RECORDS RELEASE

The parties do not agree that the Defendant UW is liable for the tortious actions of its employees.

**1. UW provided personal, confidential information to unauthorized persons**. In November and December 2015, the UW published records pertaining to the Plaintiff in PRs provided to third persons.

a)    **PR 15-00570**[2] consisting of 370 pages, along with an 8-page exemptions log describing 101 additional pages, was provided to David Betz and Impact Law Group, in response to a request for "all records maintained by the University of Washington relating or pertaining to" Plaintiff *(Dkt. 30-4 p.2)*. The Plaintiff was the Defendant in an unfounded adverse possession lawsuit brought by Betz against her.  Plaintiff Objects and Moves to strike Dkt. 28-1 and 28-2 as immaterial (FRCP 12), and "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" *(ER 403)*.  Betz produced the records provided to him by the UW, to be used as evidence against Plaintiff, (Exh. 1 at #60, 61, 62) purportedly to impugn her "credibility."[3]   The Plaintiff suffered damages including the costs for her attorney to respond to this PR release. *(Dkt. 2-1 p.15)*

b)    Plaintiff was a classified staff employee and also a student at the UW in the Master of Laboratory Medicine program in 1992-1993 when some of these documents were generated. (Dkt.30-1 p.88 *and Decl Plaintiff*). The UW claims to have "research(ed)

---

[2] Altered portions in *Dkts. 30-1, 30-2, 32, 33, and 34*

[3] Court records

individual names on documents to determine whether they may be students . . " (*Dkt 27 at p. 3, line 18*) yet the cited exhibit gives no evidence of this.   The UW email address cited in Betz's Public Records request (*Dkt.30-9, p.6*) is Plaintiff's student/alumni email.(*id*).

c)  UW has admitted that staff failed to redact Plaintiff's Social Security Number  *(Dkt 27; P.4, line 1)* in the records supplied to Betz (PR 15-00570), yet has objected to admissions of the facts that UW **also** published the following statutorily exempt information:   Eleven copies of Plaintiff's SSN; Date of Birth, Home phone, Name change Information, Payroll records, Employment Security Records, Employee Identification Number, Handicap status, Health Information, Information related to **alleged** misconduct, Intra-corporate communications in which opinions are expressed, Mediation communications, Information contained in the claim files of injured workers(including L&I claim#), Performance evaluation, Employee job classification, Salary information, Benefits information, Personal information, Information in which it could be possible to determine that the Plaintiff was receiving healthcare, Personal Leave records, Continuing education records, Privileged information. *(Dkt. 32, 33, 34)* The UW claims to have complied with policies and regulations for Public Records Releases,[4] yet the PR contains proof of numerous violations.   *See Plaintiff's Exhibit 2 and corresponding Table of Authorities (p.4-11 herein) detailing*

---

[4] UW has objected to requests for production of all relevant training materials, handbooks, policies and to RFP NO. 23: Please produce all documents referring to, regarding, and/or related to redaction of information pursuant to Public Records requests and said production of documents.
"**RESPONSE: OBJECTION**. Overbroad; Vague; Unduly Burdensome; Relevance. It is unclear if Plaintiff is request all documents the University as a whole has "referring to, regarding, and/or related to redaction of information" for Public Records Requests, or if this request is limited in scope to documents that compliance analysts have. The former is potentially unlimited as many employees receive public records training. Defendant would need Plaintiff to define the scope of her request to allow it to answer, if possible. Without waiving said objection, the University of Washington redacts documents pursuant to the Washington Public Records Act, RCW 42.56."

*exemptions for documents that were improperly provided to unauthorized third persons.*

**d)**  On March 25, 2016, upon learning about Betz's request for records concerning her, Plaintiff submitted a public records request for copies of the discs he was given. *(Dkt. 30-8 p. 2)*  UW responded with PR 16-00218.(*id p. 3*)  Upon receipt on April 8, 2016, Plaintiff discovered that UW had provided confidential information (including her SSN and DOB). She informed the UW Office of Public Records(*Dkts. 30-8, 30-9*), the UW Ombud, and UW attorney general Rob Kosin of the improper release of records.  After learning that none of these persons could or would act in any way to correct any mistakes or mitigate damages, the Plaintiff filed claims with the State of Washington Department of Enterprise Services and UW Office of Risk Management(October 21, 2016, Denied Feb. 2, 2017) Washington State Office of Human Rights, and EEOC.[5]  (*Decl. Plaintiff*)  The Plaintiff has satisfied exhaustion requirements and this lawsuit was timely filed.

**2.  Public Records Requests regarding UW employment records.**

**a)**  On   April 27, 2016, UW produced four pages of records, **PR 16-00283** *(Dkt. 30-9)*, in response to Plaintiff's request for records of those who had accessed her records since her resignation.  The UW responded only with information regarding PR Requests.(*id*) The Request Summary Report (*Exh.3*) indicates that no records were found in Upper Campus Human Resources or payroll. Evidently, the Office of Public Records did not request information regarding accession of Plaintiff's records from any of the Departments which would have had custody of these records (UW Medicine, Laboratory Medicine Human

---

[5] The UW has disclosed their copies of these documents, but has objected to requests for admissions.

Resources, and the Department of Virology).[6]   The UW did not make a good-faith effort to respond to this Request for Records.

**b)  The UW responses to Public Records requests differ based on the purported identity of the requestor.**

On November 9, 2016, Plaintiff submitted a **Public Records Request** (PR 16-00760) for a copy of her "departmental personnel file, along with any other computer or paper files that might contain records of inquiries concerning my employment" (Dkt. 29-1 p.2)[7]   The Plaintiff hoped to identify the **portion** of documents provided in response to Betz's request for "***all records*** maintained by the University of Washington relating or pertaining to" Plaintiff *(Dkt.30-4, p.2)., **emphasis added***).   The Plaintiff hoped to ascertain what portion of "***all records***" were provided to potential employers who enquired concerning her employment in the Dept. of Laboratory Medicine, Virology Division at the UW.    The Plaintiff did not provide any proof of her id with any requests.

In  January  and  February  2017,  UW  again  published  personal,  confidential information in PR 16-00760 (Dkt. 38, under seal) containing a total of **1142** pages. This is, in fact, 671 pages more than those produced plus those withheld in response to Betz's request for "all records"(*Dkt. 30-4, p.2 and 30-7 p.4*).   PR 16-00760 is **not** a non-redacted copy of the records produced in PR 15-00570 as Defendant might attempt to lead you to believe, but a **different assortment and selection** of documents, proving that different documents were selected based on the identity of the requestor.   Also of note, the Request Summary Report

---

[6]   The UW has objected to Discovery requests for this information.

[7] NOT a "Request for All of Her Employment Records" as claimed by Defendant (Dkt 27 P. 4, line 22).

for PR 16-00760 (*Exh. 4*) indicates that 2591 pages were received, eighteen pages were irrelevant, and 1142 pages were granted.   UW did not provide any explanation regarding exemptions for the 1431 pages that were not granted in the PR Release.

### c)  Public Dissemination of Confidential Employee Information

The UW has no qualms about "publicly re-disseminating records or information Plaintiff claims should never have been released." (*Dkt 27 P. 5, line 24*)[8] The UW has selected, manipulated and compiled these as PRs of Plaintiff's employment history, and has not expressed any willingness to mitigate damages (*Decl Plaintiff*), or to comply with applicable statutes and policies, thus indicating that the UW intends to continue publishing these records.

In order to determine if it is the habit of the UW to provide employees' personal, confidential records to anyone making a PR Request for "all records pertaining to" specified employees, the Plaintiff requested the records of a few, specified employees.[9]  In response, UW provided PRs 17- 357, 17- 358, 17 -359 (a few records from these are contained in *Dkts. 37-5, 37-6, 37-7*) containing employee's personal information including height, weight, veteran status, date and place of birth, tobacco use, handicap status, medical test results, marital and family information necessary for calculating health plans, job benefits, and taxes(including birth certificates, W-4), insurance policy information (including policy numbers), L&I information and claim numbers, disabilities and accommodations

---

[8] The UW entered PR 15-00570 into the court record, despite the Plaintiff's claims of confidentiality.

[9] Ten employees that were identified in PR 15-00570 as Clients of the Disability Services Office, and 2 current employees working in positions similar to the Plaintiff's former job.  The Plaintiff disclosed these PR requests to Counsel for UW.

information, records of alleged misconduct, work and leave records, payroll records, personal, medical and family leave information, reasons for leaving employment. records relating to health, all in conjunction with the employee's name and Id number.  Many of these documents are specified as confidential.(*id.* see highlights)

It is the habit of the UW to provide confidential employee information to anyone in response to PR requests for "all records pertaining to" specified employees.

## B.  BREACH OF CONTRACT

**1.**  Dkt #*30-3* is a copy of an undated "settlement agreement" signed by the Plaintiff upon her resignation after 16 years of employment with the UW.

**2.**   The parties agreed "not to publicize the terms of this agreement"  (Dkt.*30-3*. p.4 #16). The UW breached the agreement by publishing this agreement in PR 15-00570, PR 16-00218, PR 16-00760 and in the public court records (see *Dkt.36 p.3).*

**3.**  The Settlement Agreement states "There is a dispute between Dalessio and the University with regard to Dalessio's employment relationship with the University of Washington."(Dkt.*30-3* p.2 at <u>Statement of Dispute</u>.")  That is the only subject of dispute.

**4.**   The UW agreed to withdraw certain documents from Plaintiff's "official Personnel Department file and from all Department of Laboratory Medicine files." (*Id* p.2. #2).  The Plaintiff has identified 37 copies of these documents that Defendant UW, in fact, failed to remove from their files, and subsequently produced in PRs.(*Dkt. 37 p.6 at line 9 and footnote*

*7).*[10]  (*Exh. 5 and Dkts. 37-4 and 38, under seal, and Decl. Plaintiff*)

**5.**  The agreement states:  "Should this Agreement need to be enforced in court, both parties agree to jurisdiction and venue in King County Superior Court." *(Dkt. 30-3 p.3 at #11).*  The Plaintiff filed this lawsuit in King County Superior Court, Defendant UW removed the lawsuit to this Court.  (*Dkt. 1*)

**6.**  Significant evidence  arose in 2015-2016 PR releases indicating that UW also breached terms requiring:  "If contacted by the Employment Security Department, the University shall decline to give any response"*(Dkt. 30-3 p.3  #6, and Decl. Plaintiff).*

**C.  Libel/ Slander/Defamation  Negligence, Malice**

Plaintiff objects to Dkt 27 P. 5, line 25 as deliberately misleading.  Dkt 15 is not a request that discovery be stayed, it's a Joint Status Report improperly filed by Counsel for UW.  The UW has responded to two sets of discovery requests with objections, dismissive assertions, and derogatory mis-characterizations regarding Plaintiff's intentions. The Plaintiff has requested production of relevant documents, and admissions of general descriptions to avoid publicly re-disseminating information that should not be associated with her name.

The UW has again published these objectionable, libelous and defamatory documents (PR 15-00570) via the Court Records, which are readily available on the internet (linked to her name in Search engines) as exhibits in this case (*Dkt 30-1, 30-2, 30-3, 32, 33, 34*), in essence,  publishing  a  world-wide  permanent  record  that  UW  discriminately  (whether

---

[10] The UW has objected to all requests to produce and identify locations or custodians of these documents and to admit descriptions of these documents, stating "Defendant lacks sufficient knowledge to determine to either admit or deny, and therefore denies the same."  The UW did not include any statements with their objections concerning any attempts to make "reasonable inquiry" to determine "that the information known or readily obtainable by the answering party is insufficient to enable the answering party to admit or deny" as required under CR 36.  The UW has improperly objected and failed to respond properly to all discovery requests.

maliciously and/or negligently) selected, manipulated, compiled, and preserved to discredit the Plaintiff.(Decl. Plaintiff)   Substantial evidence of both negligence and malice has been produced.

**D**. **CIVIL AND EMPLOYMENT RIGHTS**

The 2003 Agreement between the Parties contains terms that specifically bar the Plaintiff's rights to publicize the terms of the agreement,(*Dkt. 30-3 p.4 at #16*) and to complain about discrimination based on age or disability.(*id, p.3 at #7*)   The Plaintiff has thus far based her claims on the fact that the Settlement Agreement, containing these terms, currently in effect, arose with 2015-2017 PR releases, along with additional evidence of discrimination and retaliation.(Decl Plaintiff )

**1.  The conduct complained of was committed by persons acting under color of state law.**   The Defendant has admitted that "all actions of the Defendant herein alleged manifest a reasonable exercise of judgment and discretion by authorized public officials made in the exercise of governmental authority entrusted to them by law . . ." (*Dkt.4 p. 11*)

**2.**  The Plaintiff has satisfied all Exhaustion and Service requirements and these claims were timely filed, less than one year after these actions arose, and these actions are continuing.

**IV.  ARGUMENT AND ANALYSIS**

Plaintiff Objects to Defendant's characterizations at Dkt 27 p. 5 lines 15-17 and footnote #7.[11]  Plaintiff has described additional evidence in her initial disclosures and has

_____

[11] In fact, The UW has objected and failed to respond to all requests to produce or identify any documents, the locations or the custodians of these documents, instead producing more copies of copies of documents.

requested production of additional information.[12]

The Evidence that is already admitted proves that there are genuine issues for trial, thus Plaintiff's claims should go forward.

**A. "Good Faith" Immunity Doctrine Does Not Bar any of Plaintiff's Claims.**

The "Good Faith" Immunity Doctrine under the Public Records Act *(RCW 42.56.060*) only applies ***if*** the employee "acted in good faith" and only applies to actions "in attempting to comply with the provisions of this chapter." Therefore, this cannot apply to All of Plaintiff's Claims.

**1.** According to the Department of Enterprise publication (des.wa.gov), RISK MANAGEMENT BASICS, May 2017, *p. 36* regarding Security Breaches "If confidential information (defined as a person's name in combination with specific data such as Social Security number)" is inappropriately disclosed, RCW 42.56.590 "allows anyone injured by the breach to take civil action against the agency."

"The state of Washington, whether acting in its governmental or proprietary capacity, *shall be liable for damages* arising out of its tortious conduct to the same extent as a private person or corporation." *RCW 4.92.090 Act of March 25, 1963,* ch. *159, 1963 Wash. Sess. Laws 753 (codified as amended at WASH. REV. CODE § 4.92.090 (2004)) (emphasis added).*

Discretionary immunity is confined to government conduct at the *policy-making* level, as opposed to the operational levels,

"decisions which are essential to the realization or attainment of the basic *policies and objectives . . .*" *Evangelical,* 67 Wash. 2d at 260, 407 P.2d at 447-48, italics added.

In *Osborn v. Mason County,* the court stated,

---

[12] Defendant has objected, citing: "relevance; unduly burdensome; not reasonably calculated to lead to discovery of admissible evidence; not proportional to the needs of the case."

**PLAINTIFF's Response re: SUMMARY JUDGMENT - Case 2:17-cv-00642-MJP**          **p. 23**

1

2

3

4

5

6

 "Because a public entity is liable in tort "to the same extent as if it were a private person or corporation," former RCW 4.92.090 (1963) *and* former 4.96.010 (1967) (municipality), the public duty doctrine does not-cannot-provide immunity from liability. Rather it is a "focusing tool" we use to determine whether a public entity owed a duty to a "nebulous public" or a particular individual. The public duty doctrine simply reminds us that a public entity like any other defendant is liable for negligence only if it has a statutory or common law duty of care. And its "exceptions" indicate when a statutory or common law duty exists. "The question whether an exception to the public duty doctrine applies is thus another way of asking whether the State has a duty to the plaintiff." *Osborn v. Mason County 157 Wash. 2d at 27-28. 134 P.3d at 202 (citations omitted*).

7

8

9

10

11

  The UW failed to adhere to the Public Records Act, provided documents specifically exempted from public records releases, violated several regulations and policies for the preservation, maintenance, security, redaction, and release of Employee records.  As this conduct is attributable to managerial acts and was not lawful, discretionary immunity is not applicable.

12

13

14

  Actions taken or challenged under the PRA are subject to de novo review, and any person "who prevails against an agency" is awarded costs and fees and, in the discretion of the court, a statutory penalty. RCW 42.56.550(4).

15

16

17

18

19

20

  **2.**  The UW Public Records Releases contain frivolous, **and** malicious information,(*Dkt. 32, 33, 34, 38 and Decl. Plaintiff*) **and** were provided with reckless disregard for the truth, and selected for production based on the identity of the person requesting the records. There is substantial evidence that UW deliberately manipulated Plaintiff's employee records to mislead investigators, knowingly omitted relevant information, and produced deliberately misleading and false information in Public Records.

21

22

RCW 42.40.020(3) "An individual who knowingly provides or reports, *or who reasonably* **ought to know** he or she is providing *or* reporting malicious, false, *or* frivolous information,

*or* information that is provided with reckless disregard for the truth, *or* who knowingly omits relevant information is not acting in good faith."  (emphasis added)

The UW Office of Public Records should have known that malicious, false or frivolous information is statutorily exempt from PRs.  The UW Offices of Human Resources (Upper Campus, UW Medicine, and Laboratory Medicine) should have known that these records were not to have been placed in personnel files (ref), and Plaintiff's Supervisor, UW Virology and/or Laboratory Medicine Human Resources should have known their responsibilities for maintaining employee records.  The UW did not act in good faith.

B.  **THE CONDUCT OF THE UW VIOLATED STATUTORY AND CONSTITUTIONAL  RIGHTS to Privacy**

Plaintiff objects to Dkt.27 p.12, lines 6-13 (impertinent), UW's nonsensical projections regarding Plaintiff's arguments, and objects to lines 20-22 (false).  Plaintiff has claimed violations of her rights to privacy and to protection from discrimination.(*Dkt. 2 p.9*)

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,"(42 U.S.C. § 1983)

The PRA exempts from disclosure

 "[p]ersonal information in files maintained for employees, appointees, or elected officials of any **public** agency to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3).  The UW has a **duty** to protect the **privacy** of its employees, to ensure the security of employees' personal information, and to maintain and produce the public record in accordance with all applicable regulations and policies.   The UW breached those duties by a) releasing personal, confidential information to unauthorized persons in violation of RCW 42.52.050(3);  b)  discriminately selecting documents and manipulating Plaintiff's employee

1

2    records for public disclosure based on the identity of the requestor, in violation of RCW
     42.56.050;  c) violating Plaintiff's right to privacy with the disclosure of information that "(1)
3    Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the
     public" (RCW 42.56.050) *see also* <u>Hearst v. Hoppe, 90 Wn.2d 123, 580 P.2d 246 (1978)</u>.

4

5    <u>RCW 42.17.310(1)(b)</u> exempts "[p]ersonal information in files maintained for
     employees.""[T]he basic purpose and policy of RCW 42.17 was 'to allow public scrutiny of
6    *government, rather than* to promote scrutiny of *particular individuals* who are *unrelated to
     any governmental operation*.'" *Cowles*, 44 Wn. App. at 897-98 (quoting *Rosier*, 105 Wn.2d at

7    611) (alteration in original).

8     "[T]he disclosure of a public employee's [s]ocial [s]ecurity number would be highly
     offensive to a reasonable person and not of legitimate concern to the public. Also, residential
9    addresses and telephone numbers of employees of public agencies are independently exempt
     from disclosure under RCW 42.17.310(1)(u)." <u>PAWS</u>, 125 Wn.2d at 254.

10

11        The UW cannot truthfully deny that they disclosed Plaintiff's personal information

12   (including DOB and SSN)as described (*Exh. 2*) and verified (*Dkts. 32,33,34*) to unauthorized

13   persons (Betz and Impact Law Group)(*Dkt. 30-7*) and to the public (in Court filings and in

14   Public Records).  The UW PR releases of Personal, Confidential and frivolous records is

15   Offensive, Not in the Public Interest, and resulted in invasion of the Plaintiff's privacy.

16

17   **C.  28 U.S.C. § 1367  provides for federal supplemental jurisdiction over all other claims**

18   **in this action.**  Plaintiff has cited HIPAA, FERPA and FOIA cases and regulations as

19   supplemental authority for her state claims.[13]

20        All Potential Federal Claims should be supplemented to the Plaintiff's current claims.

21   Plaintiff originally filed this lawsuit in King County Superior Court.  The Defendant UW

22   _____

[13] Additionally PR 16-00760 includes private emails between Plaintiff's supervisor and other students.(ref)

**PLAINTIFF's Response re: SUMMARY JUDGMENT -  Case 2:17-cv-00642-MJP**                    **p. 26**

removed this case to Federal Court.(*Dkt. 1*)

D. **Libel/ Slander/Defamation**

Defamation includes both libel and slander. Black's Law Dictionary, at 288 (6th ed. 1991).

"'A communication is defamatory if it tends so to harm the reputation of another as to lower

him [or her] in the estimation of the community **or *to deter third persons*** from associating or

dealing with him [or her].'" *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*,

146 Wn.2d 370, 382, 46 P.3d 789 (2002) (quoting Restatement (Second) of Torts § 559

(1977), emphasis added). The elements of a defamation claim are falsity, an unprivileged

communication, fault, and damages. *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027

(1989), also *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005).

Dkt. 34 p. 97 is evidence of all four elements.  The letter contains false information regarding

removal of certain letters from UW files (evidence detailed above), it was produced to

unauthorized persons (Betz and the Public), the fault lies with employees of UW, and

Plaintiff has suffered damages.  Plaintiff provides further evidence.(*Decl. P*)

Defamation by implication occurs when
" 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between
them, or creates a defamatory implication by omitting facts.' " *Id.* at 823 (quoting Prosser and
Keeton on the Law of Torts § 116, at 117 (W. Page Keeton ed., 5th ed. 1Supp. 1988)). 5 (c) 1.

A false light claim arises when "someone publicizes a matter that places another in a false

light if (a) the false light would be highly offensive to a reasonable person and (b) the actor

knew of or recklessly disregarded the falsity of the publication and the false light in which

the other would be placed." *Eastwood*, 106 Wn.2d at 471.

  See attached Decl. Plaintiff detailing additional evidence of falsity and false light

1  defamation in  the PRs.

2  Gonzaga Univ. v. Doe, 536 U.S. 273 (2002)

3  "The court found that the university and its employees could be liable on defamation claim

4  even though the statements in question were only made among university personnel and not
   among those outside the university's community. The court also found that the evidence

5  supported that the University had invaded plaintiff's privacy. Although the University
   claimed that there was nothing "highly offensive" about its attempts to determine the facts

6  about John Doe's relationship with Jane Doe, jury was "presented with sufficient evidence of
   investigative activities to determine that John Doe's privacy had been invaded, and that such

7  an intrusion would be highly offensive to a reasonable person."[14]

8  There is substantial evidence that UW manipulated Plaintiff's records for the purpose of

9  impugning her reputation, to present these records to third persons.

10   Plaintiff objects to Dkt 27, p. 14, lines 6-7(Deliberately misleading, untrue).  The Plaintiff

11  has complained of numerous records that were provided in PR 15-00570 to Betz (Dkt. 30-9

12  p.2; Dkt. 2-1, p.10). *(See also exhibit 2 describing PR 15-00570 docs and exemptions)*

13      Plaintiff objects to Dkt. 27 p.13 lines 15-16 and footnote(impertinent, misleading).

14  Plaintiff asserts that her records were obviously altered for the purpose of presenting to third

15  persons.  Plaintiff objects to Dkt 27 p.13 line 22(false).  It is **not** undisputed - Plaintiff **does**

16  have a privacy interest in the publication of these records in association with her name.*(See*

17  *Exhibit 2 and Table of Authorities, p. 4 herein, detailing privacy interests)*

18      PR 16-00760 *(Dkt. 38)* was produced as a public record of Plaintiff's departmental

19  personnel file.  This was not assembled for the Plaintiff's benefit and bears no resemblance to

20  the file that existed in 2002.*(Decl P)*  WAC 478-276-095 states that no-one shall

21  "disassemble, deface or cause disorganization of any record."  The PRs presented thus far

22  ───────────────
   [14] http://www.withoutmyconsent.org/50state/state-guides/washington/common-law

provide substantial evidence of disorganization, Plaintiff provides additional evidence of

violations.(*id*)

Plaintiff had no reason to think that the UW would be negligent in their oversight of

Employee records, that the UW would recklessly and/or maliciously compile, preserve,

distribute and publish deliberately misleading, defamatory, unfounded and UNTRUE records

concerning her.(*id*)

individuals have an interest in receiving notice and being heard "[w]here a person's good

name, reputation, honor, or integrity is at stake because of what the government is doing to

him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515

(1971))

While the UW might not be legally obligated to notify persons specified in PR requests

before records releases, it would be prudent for them to adhere to WAC 478-276-090(1) and

to do so.

**E.  NEGLIGENCE/ MALICE**

An act is negligent if there is a duty owed, a breach of that duty, and an injury

proximately caused by that breach. Ruff v. King County, 125 Wn.2d 697, 704, 887 P.2d 886

(1995). To show negligent infliction of emotional distress in the workplace, the plaintiff must

show "(1) that [his or] her employer's negligent acts injured [him or] her, (2) the acts were

not a workplace dispute or employee discipline, (3) the injury is not covered by the Industrial

Insurance Act, and (4) the dominant feature of the negligence claim was the emotional

injury." Snyder v. Medical Serv. Corp., 98 Wn. App. 315, 323, 988 P.2d 1023 (1999), aff'd,

145 Wn.2d 233, 35 P.3d 1158 (2001).

The UW negligently compiled and published records related to the Plaintiff.  These

acts have resulted in damages (*Decl. P.*), were the result of PR releases, not covered by Industrial Insurance, and the dominant feature of the claim is the emotional injury.

Where a private individual is involved, fault is established under negligence principles by showing "the defendant knew or, in the exercise of reasonable care, should have known that the statement was false, or would create a false impression in some material respect." *Taskett v. KING Broad. Co.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976); *Moe v. Wise*, 97 Wn. App. 950, 957, 989 P.2d 1148 (1999)

As a private individual, Plaintiff argues that she need only prove that these documents were negligently produced. (*Hitter, 66 Wn. App. at 400*)  Plaintiff describes these facts (*Decl. P.*) and can produce additional evidence of malice if required to support her claims.

The records produced to Betz include all of the documents that Defendant denies in Dkt. 27 p.14-15.  As there is no evidence of any findings of misconduct, any inferences of misconduct in the records are merely alleged and thus are exempted from public disclosure. (Table of Authorities #14)  While documents pertaining to her health (Dkt 34 pp. 71-73, 63-65, 80-82, and 102-105) were highly redacted, it is still obvious that they pertain to her health ("Temporary Accommodations Letter" and "current medical restrictions" and "healthcare Provider" and "physician" all appear on the first page), and thus exempt from disclosure.  The redactions actually add to the demeaning, misleading and defamatory  nature of the documents. One of the letters shows that it was sent from Plaintiff's student/alumni email. (Dkt 34 p. 102) While information about public employees' compensation is and should be subject to disclosure (to allow public review of government functions and to reveal

discriminatory practices), when this information is provided in conjunction with individual

names that individual has a privacy interest.(*Table of Authorities, p. 4 herein*)  The Courts

have found that these types of unauthorized disclosures constitute invasion of privacy.(*id*)

In addition to the evidence regarding UW PR releases and Breach of the Settlement

Agreement, the Plaintiff provides supplementary evidence of negligence. (*Decl. P*)

F.  **Civil Rights Violations, Discrimination, Retaliation**

Any UW settlement agreements that deny a person's civil rights to complain of

discrimination are unconstitutional.  Plaintiff has requested that UW produce all settlement

agreements that were entered into by UW employees upon termination of employment with

the UW, starting with the present and continuing back (the first 30 documents responsive to

this request) calculated to lead to the discovery of the habits of the UW in "ending"

employment relationships.[15]

1**.** Plaintiff's civil rights, discrimination and retaliation claims arose in 2015 when the

UW chose to include the confidential Settlement Agreement, including terms barring her

rights to complain of discrimination based on Age and Disability (*Dkt. 30-3, p. 3, #7*), along

with other personal, objectionable documents in a PR provided to third parties.  Plaintiff's

Claims are based on the 2015-2017 actions of the UW that resulted in invasion of her

privacy.  There is substantial evidence, these claims were timely filed, and Plaintiff has

satisfied all exhaustion requirements, thus this claim should go forward.

---

[15] "**RESPONSE: OBJECTION.** Relevance; Not reasonably calculated to lead to the discovery of admissible evidence; not proportional to the needs of the case; unduly burdensome; overbroad; vague ("First 30"); duplicative" and "this is not a class-action lawsuit, and Plaintiff's statement does not further describe how the requested documents are relevant to any element of any of her claims."(*in First RFAs to Defendant*)

2.  **Plaintiff has no wish to relitigate her employment relationship with the UW.**  The

Settlement Agreement (*Dkt 30-3*) at "Statement of Dispute" states, in its entirety, "There is a

dispute between [Plaintiff] and the University with regard to [Plaintiff's] employment

relationship with the University of Washington."  That is the only claim of dispute that is the

subject of the agreement.  Plaintiff has no desire to seek re-employment with the UW.

Plaintiff Objects to Dkt 27 p. 10, lines 3-6, misinterpretation of Plaintiff's complaint.

Plaintiff's breach of contract claims are discussed above.

3.  **The terms of the Settlement Agreement Specifically denote Age and Disability,
and Bar the Plaintiff's Right to Complain about Such Discrimination.**

**T**he terms of the Settlement Agreement(currently in effect) are clearly intended to restrict the

Plaintiff's rights under the "Age Discrimination in Employment Act and/or the American

with Disabilities Act" (Dkt. 30-3 p.3 at #7).  This is a direct violation of RCWs 49.60.180,

49.44.090, 49.60.220, 42.40.050, 42.40.020, ADA sec 503(b), and Title VII.  But for

Plaintiff's age and disability, these terms would not have been specified.  This would be

highly offensive to anyone, thus this claim should go forward.

4.  **Plaintiff's employment claims**

a)  **42 U.S.C sec. 1981 includes post-employment retaliation**.  Plaintiff's claims

thus far have been based on 2015-2017 actions of  UW.  Until Plaintiff's records are restored,

this retaliation is ongoing.

b)  In some cases a plaintiff may recover damages for injuries sustained outside the

limitations period.  Generally, equitable circumstances that might toll a limitations period

involve conduct (by someone other than the claimant) that is misleading or fraudulent. Smith v. McClammy, 740 F.2d 925, 927 (11th Cir.1984) (Title VII case).

"Equitable tolling thus far has been allowed only in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way." Wong v. Bowen, 854 F.2d 630, 631 (2d Cir.1988) .

Turner, 862 F.2d at 710; see also, Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir. 1989) (noting that courts have generally reserved the remedy of equitable tolling for circumstances which are truly beyond the control of the plaintiff or when the conduct of the respondent has lulled the plaintiff into inaction).

"The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning that it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

The terms of the Settlement Agreement bar the Plaintiff's rights to complain of discrimination, thus the statute of limitations has been tolled and these claims should be added to this case.

Adopting the reasoning in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), the court in Antonius v. King County held that in a hostile work claim, an employer may be liable for acts of harassment which occurred outside the statute of limitations so long as one or more acts of harassment occurred within the limitations period. Antonius v. King County, 153 Wn.2d 256, 103 P.3d 729 (2005). It is the court's responsibility to determine whether acts "are part of the same actionable hostile work environment." 153 Wn.2d at 271.

Plaintiff's employee records were likely manipulated in 2003, then were selected and copied for public records release in 2015-2017.  These actions were part of the same actionable hostile work environment that resulted in the forced resignation of the Plaintiff in 2003.  "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). For purposes of the statute of limitations, it does not matter that some of the component acts of the hostile work environment fall outside the statute of limitations period. *Antonius*, 153 Wn.2d at 264 (citing *Morgan*, 536 U.S. at 117). Provided that a component act of the hostile work environment claim occurs within the statute of limitations period, courts may consider the entire time period of the hostile environment for the purposes of determining liability. *Antonius*, 153 Wn.2d at 264 (citing *Morgan*, 536 U.S. at 117).

In some circumstances, there is a delay between the injury and the plaintiff's discovery of it.  If the delay was not caused by the plaintiff sleeping on her rights, courts may apply the discovery rule. *Crisman*, 85 Wn. App. at 20. The discovery rule provides that a cause of action does not accrue until the plaintiff knows, or in the exercise of due diligence should have known, the factual bases of the cause of action. *Hibbard*, 118 Wn.2d at 744-45; *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992).

At the time of her resignation, Plaintiff had no reason to think that the UW would not comply with the separation agreement, would copy and distribute malicious and confidential records to unauthorized persons, that her supervisor was emailing others her opinions about

the Plaintiff's use of her body(*Dkt.34 p. 66*) and joking with coworkers regarding Plaintiff's accommodations requests(*Dkt. 38, 00463A1510763.pdf*), that University employees were meeting and spreading untrue, derogatory opinions, discussing the Plaintiff's physical appearance and gossiping about Plaintiff's family(*id 00362-A1510699.pdf*), and that notes from this meeting would be copied and placed in her personnel file, along with multiple copies of selected, misleading documents, and that these records would be copied and distributed as her public record.(*Decl. Plaintiff*)

 If the Court finds that justice requires that UW be held responsible for their actions, then Plaintiff should be allowed to supplement her claims for discrimination that occurred during her employment, for which substantial evidence has arisen in the 2015-2017 PRs.

 Plaintiff describes evidence of retaliation based on her supervisor's perception of Plaintiff as a whistleblower as well as  disparate treatment employment discrimination.(*Dkt. 2-1 p.7 and Decl P*)  The Plaintiff proves that she meets all elements for these claims.[16] Plaintiff was over 40 years old,[17] had a documented disability (Public Records), was engaged in protected activities *(id)*  in a hostile work environment(*id, Decl Paintiff*), well qualified for the position and subjected to forced resignation, and deprived of her rights to complain of discrimination , her right to appeal, and her right to disclose the terms of the agreement*(id and Dkt 30-3)* and the PRs include substantial evidence that infer discrimination.

---

[16]  *McDonnell Douglas* burden-shifting method. The plaintiff must first show that he or she (1) was in a protected group, (2) was qualified for the position in question, (3) was subjected to an adverse employment action, and (4) the circumstances support an inference of discrimination. <u>Kastanis</u>, 122 Wn.2d at 490-91.

[17] UW has refused to admit this, but has admitted Plaintiff's year of birth is 1959.

1

2   "'When an employer's act violates both its own contractual just-cause standard and a clear and substantial public policy, we see no reason to dilute the force of the double sanction. In such an instance, the employer is liable for two breaches, one in contract and one in tort. It

3   therefore must bear the consequences of both.'" Smith, 139 Wn.2d at 806 (quoting Retherford v. AT&T Communications of Mountain States, Inc., 844 P.2d at 960)(Utah1992).

4

5   See Smith, 139 Wn.2d at 804 ("'What is vindicated through the cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather

6   the public interest in not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public

7   policy.'" (quoting Foley v. Interactive Data Corp., 47 Cal. 3d 654, 667 n.7, 254 Cal. Rptr. 211 (1988))); see also id. at 809 ("As we have explained, the tort of wrongful discharge seeks to

8   vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because the right to be free from wrongful termination in

9   violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude Smith should not be required to exhaust her contractual or

10  administrative remedies.").

11  In order to state a claim under 42 U.S.C. § 1983 arising from the Fourteenth Amendment's guarantee of procedural due process, a plaintiff must allege that she was deprived of a life,

12  liberty, or property interest without the process that was due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 & n.3, 542 (1985).

13

14  A municipality or local governmental unit may be held liable under § 1983 for the unconstitutional acts of its officials or employees only when those acts are taken pursuant to

15  an unconstitutional policy or custom. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999); see also Powell v. City of Pittsfield, 143 F. Supp. 2d 94, 113 (D. Mass. 2001) (stating

16  that plaintiff's § 1981 claim must show that the injury resulted from an official policy or custom). A plaintiff must demonstrate that the governmental entity had an official policy or

17  custom that violated the law and caused the constitutional injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  To establish a Monell claim based on a "widespread

18  custom," a plaintiff must allege facts that tend to show (1) a "widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate

19  indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that . . . the

20  custom was the moving force behind the constitutional violation." Springdale Educ. Ass'n, 133 F.3d at 653.

21  (CASE 0:06-cv-03142-JRT-FLN Document 46 Filed 05/23/08 Page 9 of 13)

22

The conduct of the UW deprived the Plaintiff of her constitutional rights to Privacy (with the 2015-2017 UW PR releases), her rights to complain about discrimination by the UW based on age or disability, as well as her rights to Free Speech.[18]  **She has presented substantial evidence that it is the custom of the UW to publish confidential employee records, and that UW has supported and continued these practices even after notification of the wrongful conduct.[19]**

Plaintiff objects to Dkt 27 pp. 11, line 23 and 12 lines 1-14 as deliberately misleading misinterpretations of Plaintiff's Complaint, speculation regarding Plaintiff's argument, and unfounded assertions.  Plaintiff also objects to references to Dkt 15 as this was improperly filed in the court records, and objects that this is misrepresented by Defendant.

**5. Whistleblower** Protection for persons reporting improper government actions(RCW 42.40.040(5)(c), sec. 704(a) of title VII, and Sec. 503(a) of ADA)

The Plaintiff asserts that she is entitled to anonymity in this action.

In addition, section 704(a) and RCW 49.60.210 provide that it is an unlawful employment practice to discriminate against an individual because she has opposed any of these unlawful, discriminatory practices, and section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.  The "Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment." (enclosure with EEOC Form 131-A (11/09))

The Plaintiff has described Retaliatory actions (RCW 42.40.050, 42.40.020) that occurred during her employment(Dkt. 2-1) and PRs contain evidence of continuing retaliation. The

---

[18] The Settlement Agreement at #16 (a) (Dkt. 30-3 p. 4) interferes with Plaintiff's First Amendment Rights.

[19] This lawsuit was served to the Washington State Attorney General and to the President of UW

practices of the UW in publishing personally identifiable accommodations requests, health, injury, claims, personal leave records, dates of birth etc. of individual employees, are certainly practices that could have the effect of discrimination based on disability, or age.

The Plaintiff has suffered monetary and physical/emotional damages due to the actions of UW. (Decl. Plaintiff)

## IV.  INJUNCTIVE RELIEF

• Prays for the Court to grant the relief requested in Plaintiff's Motion to Seal Records(Dkt. 36), and to secure Plaintiff's employee records.

• Requests the Court to strike the records as described herein.

• Allow that Plaintiff is entitled to anonymity in this action as a whistleblower.

• Order the UW to address the privacy, safety and personal data security issues described herein

There is significant, irrefutable evidence that UW has violated Laws, Regulations and Policies and the UW is not entitled to a decision in its favor as a matter of law.   Thus the Plaintiff's claims should go forward.


Dated:  Sept 11, 2017

Signed:  julie dalessio

Julie Dalessio
1110 29th Ave.
Seattle, WA  98122
206 324 259
juliedalessio@msn.com