The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JULIE DALESSIO, an individual,<br><br>                      Plaintiff,<br>v.<br><br>UNIVERSITY OF WASHINGTON,<br><br>                      Defendant. | Case No. 2:17-cv-00642 MJP<br><br>**PLAINTIFF, Julie Dalessio's Declaration re: Plaintiff's Response to DEFENDANT's Motion for SUMMARY JUDGMENT DISMISSAL**<br><br>**Noted for Hearing: Sept. 15, 2017** |

      I, Julie Dalessio, declare that I am over the age of 18, and I am competent to testify as to all matters herein.

      Attached Exhibits are true and correct copies of the documents as cited herein. For this declaration, I also rely on the Public Records evidence attached as Exhibits 1-5 of PLAINTIFF's Response re: SUMMARY JUDGMENT.

Exh. 6, Request Summary Report PR 16-00218

Exhs. 7 and 8  Personnel file

Exh. 9  re: Bonus and re: LOA

**PLAINTIFF, Julie Dalessio's Declaration re: SUMMARY JUDGMENT -   Case 2:17-cv-00642-MJP**                1

Exh. 10 Mediation Schedule

**PR 15-00570**

     a)  In May 2015, my neighbor, David **Betz** of Impact Law Group, began an adverse possession lawsuit against me.  On March 25, 2016 Betz revealed through discovery that he had obtained copies of my employment records from the University of Washington (UW) that he intended to use as evidence against me. My attorney in the matter worked with me to compose a request to the UW Office of Public Records for a copy of the disc he was given. On April 8, 2016 I received a CD containing PR 16-00218.

     I was shocked to learn the contents of the PR 15-00570 that was released to Betz.  I was extremely upset that the UW had provided my Social Security Number, date of birth, name change information, employee id number, complete earnings history, L&I claim number - everything anyone could want for identity theft, and to embezzle my pension benefits - to the person who wanted more than anything to punish me, and Betz also found out that I would be financially strained by his lawsuit because my salary had been modest. On top of that, I was extremely offended to discover that this PR was what the UW had compiled and shared with others about me!  In addition, all of this was shared with my bank since Betz named them as co-defendants in the lawsuit.

     I first contacted UW Office of Public Records (OPR) (*Dkt. 30-9*) expecting that the UW would want to mitigate damages, to at least assure me that this would not be repeated, to redact records, request that Betz destroy all copies of personal, confidential information, and provide identity theft protection.  My attorney in the matter assisted in drafting a letter to

UW.  My attorney also viewed the records, then requested claw-back (several times) from Betz, who ignored every communication.   Subsequently, Betz entered records of my Employment Security claim, a so called "Temporary Accommodations letter," and a confidential Settlement agreement, all of which he had obtained from UW PR 15-00570, as evidence, purportedly of my lack of "credibility" in the unfounded adverse possession case.  My attorney researched Public Records laws and responded with objections to these records (*Exh. 1 at #60, 61, 62*)

The release of this information by UW caused me extreme stress on top of the stress of that lawsuit, as well as financial damages as I paid my attorney for his time.

b)  I then contacted Perry Tapper in the UW OPR, who told me that they don't respond to informational requests.  UW information directed me to the Ombud, Chuck Sloane, who directed me to UW Assistant Attorney General Rob Kosin, who informed me that he couldn't do anything unless I filed a lawsuit, but that I should know that UW has immunity from civil actions.  I then filed claims with Washington State Department of Enterprise Services, UW Office of Risk Management, Washington State Human Rights Commission and EEOC.  After these claims were denied, I commenced this lawsuit.

c)  The UW then proceeded to publish all of this personal, confidential material including my SSN, Employee ID, DOB, health information etc. in the court records.*(Dkt. 30-1, 30-2, 30- 3, 32, 33, 34)*  This has added to my stress and worry.

**PLAINTIFF, Julie Dalessio's Declaration re: SUMMARY JUDGMENT -   Case 2:17-cv-00642-MJP         3**

**Employee Records**

    **a)** I was very concerned about the Public Record that UW was sharing with anyone who made an official request, so I made a PR request for a copy of my personnel file, to find out what portion of PR 15-00570 the UW was sharing with any potential employers who inquired regarding my work history. Instead, PR 16-00760 (*Dkt. 38, under seal*) contains a different selection and assortment of an even more disorganized and overwhelming amount of scandalous, personal, and confidential material.

    b) Also of concern, I did not provide any proof of my ID, these records were provided with no redactions and contain my even more confidential information, these confidential records were delivered by USPS to a shared, insecure mail box, and these records were produced as an official Public Records Release. As such, it is UW practice to release the PR in its entirety to anyone requesting that PR number. (*Exh. 6 p.2*)

    c) Attached Exhibits 7 and 8 are copies of the records that were contained in my personnel file in 2002, yet Few of these are contained in any of the PRs. The UW is required to preserve personnel files for 50 years, yet all of the documents that recognize and commend my work have disappeared from my UW employee records. Further evidence of the determination of someone to make sure that nothing commendatory remains in my records is the selective redactions in the letter dated July 15,1997(PR 15- 00570, stage 2, pg 47, *Dkt. 34 p. 106*) compare to the non-redacted copy (*Exh. 9 p.2*) The redacted paragraph in the letter commends my work, is not offensive to me, but someone redacted it, citing RCW 42.56.050,

and 42.56.230(3).(*id*)   I have a greater privacy interest in the information in the first paragraph, revealing the amount of the bonus.

d)   Additionally, multiple copies of certain documents that look to be intentionally misleading have been added to my records.  PR 15-00570 contains seven and  PR 16-00760 contains seventeen documents referring to a Personal Leave of Absence.  These are actually multiple copies of a few documents, interspersed in the PRs.  All of these refer to the same Leave of absence in 1996 for a bicycle trip across the country. (*Exh. 9 p. 4*)  I had to put in a lot of extra work to get the time off.  I believe that these documents were added to my file to give the appearance that I had frequent personal problems and that I took multiple leaves of absence.

Other misleading documents produced in both PRs include a note that refers to "administrative duties"(*Dkt.34 p. 139*) and a letter dated January 2, 2003 regarding "administrative leave until further notice."(*Dkt. 34 p.191*)  I had never seen either of these before April 8, 2016.  The fact is that I resigned on January 2, 2003.(*Dkt. 30-3*)  I was not on administrative leave "until further notice" and I was not "required to remain available by telephone" from 9-5:30 M-F as the letter indicates.  I believe that these documents were placed in my files to mislead investigators who were auditing NIH grants.  Dkt. 34 p.107, UW "Medical Centers Audit" fax cover sheet provides evidence that there was an audit occurring on December 18, 2002.  (I have requested production of these Audit records, UW has objected)  In 2002 I had heard rumors of ongoing audits, and had come to suspect that the

reason for the harassment and abuse I was subjected to during the last year of my employment was because my supervisor needed someone to blame.

The Public Records, PR 15-00570 and PR 16-00760 contain false statements regarding my work on NIH grants. Before these PR Releases in 2015-2017, I had never received any information about the sources of money to pay my salary as classified staff of the UW. The emails that are revealed in the PRs were not copied to me. I had never seen the grant proposals, and I did not perform work in those areas. I was assigned to work on several other projects.

I believe that my Supervisor altered my personnel file to intimate that I had always been a problem, and had become useless mentally and physically, because she knew that I wouldn't accept the blame for her lack of progress, I wouldn't confirm her lies, and I wouldn't lie about the discrimination, retaliation and abuse that she instigated.

The PRs contain even more evidence of harassment, discrimination and retaliation, and I have in my possession additional evidence that I will be prepared to present at trial.

**Settlement Agreement**

a) In 2002, following months of harassment and abuse from my supervisor, I met with a counselor with the Employee Assistance Plan who then referred me to the UW Ombud. My supervisor wrote me that if I wanted to meet with the Ombud, it would have to be on my own time, so we met before work and discussed the situation. On July 12, 2002, we met together with my supervisor and her supervisor. I told him about incidents in the lab

where one person had gotten in my face and threatened me, and on another occasion had actually physically pushed me out of her way.  Later that same day, my supervisor compiled a nasty, misleading, untrue letter (*Dkt. 37 Exh. 4, under seal*) recommending that I be suspended for 8 specific days, from August 14-25.  This letter(*id*) has eight attachments full of misleading and untrue allegations, all of which I had refuted, in writing, at the times they were delivered to me.  None of my communications were preserved by UW as required.  My supervisor wrote me up for every absence or late arrival, even if it was due to meetings or appointments that UW required me to attend, even if the vacation or sick leave was pre-approved, even if her accusations weren't true (I was actually working in the lab one time and had date and time-stamped assay results to prove it), and even though she had told me that I was allowed to work a flexible schedule (like everyone else) and arrive between 9-9:30 and work until 5:30-6, and even if the arrival was only a few minutes after 9 am.  She wrote me up when, after an arduous root canal procedure, I reported that I didn't feel up to returning to work that day.  The final issue that led to the recommendation for suspension that she writes about in the letter, was that I misunderstood her email regarding the time of a meeting.(*id*) Subsequently, I was suspended for "creation of a hostile work environment."

    After 19 years working for my supervisor, Rhoda Ashley Morrow, Ph.D., following a year of harassment and abuse from her, I couldn't take it any more.  I requested mediation, because I wanted to get away from her.

    b)  On January 2, 2002, I attended mediation.(*Exh. 10*)  There was no hearing.  The mediator, UW Attorney General, Human Resources Personnel, and my supervisor met in

another building, while I was placed in an earthquake damaged auditorium, next to the Psychiatric Admissions office at Harborview Medical Center, where I waited for over an hour with my attorney.  The mediator then told me that if I didn't sign the Settlement Agreement, the UW would fire me the next day and make sure that I did not get unemployment, and that it would take at least a year to get a hearing (costing me more than I could afford for representation) where the best outcome would be reinstatement with my abusive Supervisor.  My attorney advised me that this was the best that someone at my level could get.  I couldn't bear the financial strain or the damage to my reputation.  But most of all, I couldn't bear the thought of reinstatement with my supervisor.

      The UW agreed to remove the damaging letters from their files, reinstate wages and benefits for the unpaid time off, pay my attorney costs and two weeks of wages, and to maintain confidentiality in exchange for signing away my rights to appeal, and my rights to complain about age and disability discrimination.(*Dkt 30-3*)

      At the time, I was over 40 years old, I was engaged in discussions with the Ombud regarding a hostile work environment, and I had a documented disability (The PRs contain ample evidence of this).

      I signed the agreement and went home and put all of my evidence of the abuse and discrimination in a box, and tried to move on with my life.  Gradually, the constant thoughts and agitation from the experience lessened.  I've had several nightmares where I dream that I went back to work for my supervisor and find myself in similar impossible situations and I wake up extremely agitated.

**Breach of Contract**

In 2016, with the PR releases, I discovered that UW had breached the Settlement agreement by:

a) **Publishing the Agreement in the PR to Betz** *(Dkt. 30-3)* **;**

b) Maintaining copies of this Agreement in these files;

c) **Failing to destroy the attachments to the July 12 letter (described above), as specified in the Agreement.(Dkt. 30-3 p.2 at #2).**

Not only did UW neglect to destroy the documents as they claimed (in a letter from UW Attorney General to my attorney in the matter, also published to Betz (*Dkt. 34 p. 97*)) but seven of the attachments became 37 documents interspersed in the PRs. (*See Exh. 5 to Plaintiff's Response listing file names and descriptions corresponding to the documents in Dkt. 38 under seal*)   Attachment #8 to the July 12 letter (*Dkt. 37 Exh. 4, under seal*) was not preserved in UW files (because it is proof of the unwarranted disciplinary action - evidence of the intentions of the UW to discredit me).

d) **Communicating with the Employment Security Department(ESD)** *(Dkt. 30-3 p.3 #6)*

In the Application for unemployment benefits that I submitted, I wrote that I resigned due to a "hostile work environment."*(Dkt 34 p 110)*  This was subsequently changed, not by me, to "I am unemployed because" of "Voluntary Separation"*(id p. 109)* then changed again to "discharged for not performing to your employer's standards" *(id p. 95) and* "Your employer advised you that your work was not being completed because of your many

absences. You were not cooperating . . . ." "You were creating difficulty by pointing out problems." *(id, p. 94 last paragraph)*. I did not ever say anything like that to ESD. Those statements are false, and defamatory. I don't believe that the ESD examiner came up with that story on his own, but that UW communicated this to him, in breach of the Agreement. And the UW preserved and published these ESD records to Betz, regardless of statutory exemptions.

**Defamation**

    a) At the time of my resignation, I had no idea that the UW was copying and distributing confidential records to unauthorized persons, that my supervisor was emailing others her opinions about my use of my body (*Dkt. 34 p.66*) that my supervisor was joking with coworkers regarding my accommodations requests (*Dkt. 38, 00463-A1510763.pdf*), that University employees were meeting and discussing my physical appearance and gossiping about my family and recording malicious, false accusations regarding my abilities (*Dkt. 38, 00362-A1510699.pdf*), and that notes from this meeting would be copied and placed in my personnel file, along with multiple copies of selected, misleading documents, including several in breach of the Settlement agreement and that these records would be copied and distributed as the public record. And, on top of that, UW shared my L&I claim information, derisive and defamatory emails from my supervisor containing unsolicited, unqualified opinions and directions about healthcare (*Dkt 34 pp. 71-73*) (my supervisor has a PhD in microbiology), and more to unauthorized persons.

b)  These documents were not compiled and kept for me, and it's unlikely that this misleading information was not disseminated within the UW, to NIH auditors, and to potential employers inside and outside the UW including affiliated institutions Harborview MC, Fred Hutch CRC and Children's Hospital RMC.  Even in the unlikely event that these records were only given to me and to Betz in PRs, this has caused substantial emotional distress.  Reading this again has brought back the nightmare of harassment and abuse that I suffered during employment with the UW.  Additionally, the documents currently exist in UW employee files, in the UW public records, and the UW published them again in court records (*Dkts. 30-1, 30-2, 30-3, 32, 33, 34*).  I Googled my name, and this lawsuit comes up on the first page, with several links to sites that provide the court records.

Retaliatory action includes denial of adequate help to perform duties, frequent and undesirable office changes, frequent job assignment and rule changes - change in the physical location of the workplace and a change in the basic nature of the job, in opposition to my expressed wishes, unequal treatment/rules for other coworkers, <u>unwarranted and unsubstantiated letters of reprimand and unsatisfactory performance evaluations</u>, demotion, reduction in pay, denial of promotion, suspension, threatened dismissal, denial of employment and unemployment security, supervisor behaving in and encouraging coworkers to behave in a hostile manner, <u>issuance of a nondisclosure agreement</u>, and all these actions that are inconsistent compared to actions taken compared to other employees who have not engaged in conduct that is protected, or <u>who is perceived by the employer as reporting, whether they did or not, alleged improper governmental</u> action or an employee who identifies rules warranting review and an employee who is believed to have identified rules warranting review but who, in fact has not done so.(RCW 42.40.050, 42.40.020; retaliatory action against whistleblower and definitions).  Retaliatory acton includes post-employment retaliation.

The PRs contain evidence of all of the above.  The UW forced my resignation, altered my personnel file to indicate that I had always been a problem and shared this libelous

information with third persons.

**Negligence**

a) Besides the UW's negligent release of my confidential information (including SSN and DOB) to unauthorized third persons, the PRs are evidence of the negligent practices of UW in preserving and maintaining employee records. The records are disorganized and incomplete.

b) I requested a copy of my Employee Health (*Dkt. 30, p.82*) and Employee Education Records and Performance evaluations (*Dkt. 30, p.84*), supposedly maintained in separate locations. I was told that all that UW have are contained in PR 16-00760 (*Dkt 38*). I was subjected to numerous Tuberculosis tests, baseline tests for viral antibodies(to viruses that I was working with) and vaccinations (including a Smallpox vaccination) as part of my employment, yet the University has no records of these (except for emails verifying that my supervisor requested that I get vaccinated for smallpox *(Dkt 38, Dkt. 38 , 01130-A1519994.pdf, p.11 and 14 )*). On numerous occasions, I had blood taken for scientific experiments in the lab, and was paid for my blood, but no records of this have been produced either.

c) Apparently some of my records were misdelivered (*Dkt. 30-7 p.4, middle of page "Per JM, they sent records . . . Resent . . ."*) UW has disclosed that some of the documents were found in the former office of a former employee. Apparently some of the files are stored in a hallway "between my cube and the cabinets" (Dkt. 38,  01022-A1519966).

**PLAINTIFF, Julie Dalessio's Declaration re: SUMMARY JUDGMENT -   Case 2:17-cv-00642-MJP                    12**

d) Dkt. 38 , 01130-A1519994.pdf was provided to me in response to my request for records.  It contains personal emails from my supervisor to students regarding illnesses.

e) Dkt. 34 p. 193, contains a list of clients if the UW Disability Services Office.  This was provided to Betz as well as to me, and the Counsel for UW have published it in the Court records.

f) I submitted a PR request for all records of these persons and obtained an unbelievable amount of personal, confidential information, as described in Dkt. 37 and shown in Dots. 37-5, 37-6, and 37-7.

**Conclusion**

It's highly offensive to me that the University of Washington released the multitude of personal, exempt information, not just once, but several times, even after I communicated my concerns to multiple departments at the University of Washington, and it is of legitimate concern to the public that these negligent practices are continuing.

The UW has expressed their willingness to also publish PR 16-00760 in the court records, with SSN and DOB redacted (Dkt. 27 p. 5, line 23).  Is that a threat?

I have suffered physical/emotional stress going through the same records multiple times, (as the UW has provided the same PR 15-00570 in five different file configurations, all with different page numbering) re-reading and writing about these distressing incidents.  I have suffered for a year and a half since I learned of the breaches.  I worry about ID theft and

revenge from Betz, and now that UW has published my personal information in the Court records, the whole world has access.  I'm concerned that anybody who checks my background will discover this defamatory history of my career, along with confidential employee id number, L&I claim number etc.

I can only assume that, without court intervention, UW will copy these records to anyone who asks (*Dkt. 39 p.5 line 4*), and that they will not notify me of any requests.(*Dkt. 39 p.15 line 14*).

I have suffered monetary, physical, and emotional damages as well as damage to my reputation due to these actions by UW.  This continuing abuse is an Invasion of my privacy and is highly offensive.

I Declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

DATED:  Sept 11, 2017            s/ julie dalessio
                                 Julie Dalessio
                                 1110 29th Ave.
                                 Seattle, WA 98122
                                 206 324 2590
                                 juliedalessio@msn.com