Washington State
Office of the Attorney General
Acknowledged Receipt, this **3rd** day
of **April**, 20 **17**, Time: **10:46 AM**
in __Seattle__, Washington.
Signature: _[signature]_
Print Name: __Michael A. Nicefaro Jr.__
Assistant __Seattle Torts Section Chief__

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

JULIE DALESSIO, an individual,

        Plaintiff,

v.

UNIVERSITY OF WASHINGTON,

        Defendant.

Case No. 17-2-07812-3

**SUMMONS**

**THE STATE OF WASHINGTON TO:** Defendant.

    Plaintiff has started a lawsuit against you in the above-entitled court. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

    To defend against this lawsuit, you must respond to the complaint by stating your defense in writing and serving a copy upon the undersigned attorney within twenty (20) days after the date of service on you of this summons if you were served within the state of Washington, or sixty days if you were served out-of-state, excluding the day of service. If you fail to do so, a default judgment may be entered against you without notice. A default judgment is one where plaintiff may be entitled to what is asked for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered. You may demand that the plaintiff file this

1  lawsuit with the court.  If you do so, the demand must be in writing and must be served upon

2  the person signing this summons.  Within fourteen (14) days after you serve the demand, the

3  plaintiff must file this lawsuit with the court, or the service on you of this summons and com-

4  plaint will be void.  If you wish to seek the advice of a lawyer in this matter, you should do so

5  promptly so that your written response, if any, may be served on time. This summons is issued

6  pursuant to Rule 4 of the Civil Rules for Superior Court of the State of Washington.

7      DATED: March 29, 2017.

8

9

Julie Dalessio, Pro Se

10  1110 29th Ave., Seattle, WA 98122
    206-324-2590

11  juliedalessio@msn.com

12

13

14

15

16

17

18

19

20

21

22

23



Washington State
Office of the Attorney General
Acknowledged Receipt, this **3rd** day
of April , 20 17 . Time: **10:45** AM
Seattle Washington
Signature:
Print Name:
**Michael A. Nicefaro Jr.**
Assistant
**Seattle Torts Section Chief**

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

JULIE DALESSIO, an individual

    Plaintiff

    v.

THE UNIVERSITY OF WASHINGTON

    Defendant

Cause No. 17-2-07812-3

COMPLAINT FOR

INVASION OF PRIVACY/ PUBLIC RECORDS VIOLATIONS; BREACH OF CONTRACT; DEFAMATION/LIBEL; DISCRIMINATION/ RETALIATION; NEGLIGENCE

COMES NOW Plaintiff, J  DALESSIO, FOR cause of action against the University of Washington, COMPLAINS, states and alleges as follows:

### Introduction

On or around April 9, 2016, Plaintiff discovered that The University of Washington was releasing exempt, confidential, identifying, personal, and libelous records relating to her employment with the University of Washington.  The Plaintiff has suffered great hardship due to the negligence of the University of Washington in

*COMPLAINT: J DALESSIO v. Univ. of WA*

improperly securing and recklessly releasing Plaintiff's employee records to the public.

## I. PARTIES

**1.1**    Plaintiff is an individual residing in King County, Washington, and a former employee of the  University of Washington, located in King County, Washington.

**1.2**    The University of Washington is located in King County, Washington.

## II. FACTS

**2.1**    In December 2015, April 2016, January 2017, and March 2017, the University of Washington, in response to requests for **public records**, published and provided **exempt and confidential** information relating to Plaintiff (PR-2015-00570, PR-2016-00218, PR-2016-00283 and PR-2016-00760), including Plaintiff's Social Security Number, date of birth, employee ID#, L&I claim#, Employment Security Information, confidential health information, and a list of others in the department with L&I claims.

**2.2**    These Public Records releases include other exempt, personal information, and libelous, offensive, defamatory documents that are not of legitimate concern to the public.

**2.3**    These Public Records releases include a confidential separation Agreement between Plaintiff and the University of Washington (PR-2015-00570, stage 2, p128-130), hereafter referred to as the Agreement.

**2.4**    The University of Washington has violated the terms of the Settlement Agreement.

COMPLAINT: J DALESSIO v. Univ. of WA                                    Page 2 of 27

**2.5**   The University of Washington negligently maintained Plaintiff's employee file, inserted false and misleading documents, removed several documents, and failed to keep records of persons or agencies accessing Plaintiff's file.

**2.6**   The University of Washington provided copies of this personal, confidential information to Plaintiff's next-door neighbor (PR-2015-00570), who presented this to impugn  Plaintiff's credibility in a civil action against Plaintiff. (Superior Court Records)   The University of Washington also provided all of the Plaintiff's identifying information to her spiteful neighbor, who ignored claw-back requests.

**2.7**   The University of Washington did not inform Plaintiff of any public records requests concerning her.

### III. BACKGROUND

**3.1**   Plaintiff was employed by the University of Washington, under the same supervisor for over 16 years, from 1987-2003 in the Department of Laboratory Medicine. She obtained a Master of Science degree from the University while working her way up to Clinical Technologist, with additional compensation "via a consulting arrangement with Children's Hospital" to "recognize"  the "added duties".  Since 1995, she was identified in organizational charts as supervisor of the Virology Research Lab.  She is credited with the development of methods used in the diagnosis and characterization of immune responses to viral pathogens.

**3.2**   In 1998, her supervisor reimbursed her costs for a home office, and directed her to work at home on data processing and analyses of several research projects, along with her other duties, hiring, training, evaluating,

supervising and helping other employees, training and working with students and visiting scientists, developing new analytical testing methods, and attending, presenting and reporting on research meetings.  She received excellent evaluations from her supervisor until  2002.

**3.3**　In December 2001 and February 2002,  Plaintiff first became aware that her supervisor was making false and misleading accusations pertaining to her work on a federally funded project.  When these accusations were copied and emailed to others, Plaintiff responded, diplomatically, in writing to these false accusations, and replied to all by email.  Subsequently, her supervisor's hostility increased, with multiple acts of retaliation and discrimination, and encouraging a hostile workplace.  Plaintiff made every attempt to report the misbehavior through the channels provided by the University of Washington, including the Office of the Ombud. This resulted in retaliation that escalated until January 2, 2003 when the Plaintiff was bullied into resigning and signing the Settlement Agreement, including a nondisclosure clause and other illegal terms.

**3.4**　Included in the Settlement Agreement, the University of Washington specifically agreed to remove all of the documents containing unsubstantiated, false accusations from their files.  On January 10, 2003, Assistant Attorney General Jeffrey W. Davis wrote, "The documents in question have been collected and sequestered . ."  In **March 2017**, Plaintiff discovered that the University of Washington had actually **added** more than **31** copies of these documents to her personnel file, along with additional libelous documents!

**3.5**　From 2003 to the present 2017, the Plaintiff's personal and private information from the University of Washington employee records has been

*COMPLAINT: J DALESSIO v. Univ. of WA*                    Page 4 of 27

available to anyone for inspection and for personal use. The fact that the information that is false and misleading was available to anyone for such a long time period (14 years) is offensive to the Plaintiff, and has caused irreparable damage to her good name, her career, and her well-being.

**3.6**    Plaintiff first knew of the public records violations in **April 2016 when,** in response to her neighbor's Public Records Request for all records pertaining to Plaintiff (PR-2016-00283, pg 3), the UW gave him copies of Plaintiff's private and personal employee records including social security number, date of birth and more. (PR-2015-00570)

   The University of Washington, delivered exempt, confidential and defamatory documents to unauthorized persons.

**3.7**    On April 17, 2016, Plaintiff informed the University of Washington Office of Public Records of this breach of confidentiality (PR-2016-00283).

**3.8**    Plaintiff contacted several other state and University offices to report the improper conduct, including:  Washington Human Rights Commission, the University Ombud, the University assistant attorney general Rob Kosin, the Office of Risk Management, and the Department of Enterprise Services.

**3.9**    The University of Washington continued to publish untrue, defamatory, libelous, confidential, and exempt documents even after Plaintiff contacted them regarding these issues. (PR-2016-00760)

**3.10**   Plaintiff first knew in **April 2016**, that her supervisor had altered her personnel file and misrepresented the work that Plaintiff was assigned, and that

Plaintiff's salary had been paid from government grants for work that had never been assigned to the Plaintiff, that was outside her unit.

**3.11**    The UW altered the Plaintiff's personnel file to present her in a false light, and left her file open for public inspection. The University of Washington failed to protect Plaintiff's personal information and preserve it in the manner required by the law.

## IV.  JURISDICTION AND VENUE

**4.1**    This Court has jurisdiction over the parties and subject matter of this lawsuit because the acts and transgressions giving rise to the claims occurred within King County Washington.

**4.2**    Venue is proper with this Court because this lawsuit involves residents of King County, Washington, and involves acts that occurred in King County, Washington.

**4.3**    The State of Washington, Human Rights Commission, has given permission to file a civil action, pursuant to RCW 49.60.030.

## V.  CAUSES OF ACTION

Plaintiff re-alleges and incorporates by reference all of the above, as though fully set forth herein.

**5.1**    **Claim for INVASION OF PRIVACY/Public Records Act Violations**

**a.**    In December 2015, April 2016, January 2017, and March 2017 the University of Washington released information that was not properly redacted,

*COMPLAINT: J DALESSIO v. Univ. of WA*                                    Page 6 of 27

exposing **exempt**, personal and confidential information about Plaintiff, including all of the following items that are *expressly* exempted from public inspection: Social Security Number, Date of birth, Residential address, residential telephone number, personal electronic mail address, identicard number (RCW 42.56.250 (3), RCW 42.56.230; RCW 42.56.070; RCW 42.56.590; and *Painting Indus., Preservation Fund,* and *Hopkins.* 90 Wn. App. 205; 951 P.2d 357; 1998 Wash. App.); Employment Security records (RCW 42.56.410); protected health information (RCW 42.56.070; 45 CFR Part 160 & 164); Educational records (RCW 42.56.070; 20 U.S.C. 1232g(a)(4); 34 CGR Part 99); Test Questions (RCW 42.56.250(1)); Performance Evaluations (RCW 42.56.230(3); RCW 42.56.050; as well as per Dawson v Daly, 120 Wn. 2d 782 (1993) and *Dawson*, 120 Wn.2d at 797); Information related to employee alleged misconduct (RCW 42.56.070(1); RCW 41.06.450, and RCW 42.56.110); Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed (RCW 42.56.280); Mediation communications (RCW 42.56.600, RCW 42.56.070(1); RCW 7.07 and RCW 7.07.070);    Medical Records (RCW 70.02.020; RCW 42.56.070(1)); Information contained in the claim files and records of injured workers (RCW 51.28.070; RCW 42.56.070(1)); Personnel files (RCW 42.56.230; 5 U.S.C. § 552(b)(6)); employee job classification, salary and benefits information, *coupled with the employee's name and address.* (RCW 42.56.230; 5 U.S.C. § 552(b)(6) and *Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force*, 26 F.3d 1479 (9th Cir. 1994)); Payroll records (RCW 42.56.230; *Hopkins v. Department of Hous. & Urban Dev.*, 929 F.2d 81 (2nd Cir. 1991))and Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt from disclosure (RCW 42.56.290).

**b.** According to RCW 42.52.050 "(3) No state officer or state employee may disclose confidential information to any person not entitled or authorized to receive the information."

**c.** http://www.washington.edu/publicrecords/request-a-public-record/ "the public records officer may also notify third parties who have an interest in the records that you have made a public records request." "your public records request is not a confidential record. Your request is itself a public record. It can be requested by others and the office forwards public records requests to the departments holding records and to third parties who have an interest in the records you have requested."

**d.** WAC 478-276-085  (2)Additional time for the office to respond to a request may be based upon the need to:
(c) Notify third persons or agencies affected by the request; or
(d) Determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request.

**e.** WAC 478-276-090  (1) Once records responsive to a request (or any installment thereof) have been located, assembled, reviewed, and prepared for release, and ***any affected third persons or agencies notified***, the public records office shall promptly notify the requestor that those records are available for inspection or copying. (emphasis added)

**f.** RCW 42.56.050 Intent - 1987 c 403 " . . . in responding to requests for disclosure not make any distinctions in releasing or not releasing records based upon the identity of the person or agency which requested the records, . ."

**g.** According to RCW 42.56.540, "The examination of any specific record may be enjoined if . . . would clearly not be in the public interest and would substantially and irreparably damage any person . . ." and " An agency has the option of notifying persons . . . that release of a record has been requested. However, this option does not exist where the agency is required by law to provide such notice."

**h. The University of Washington knew or should have known proper procedures for responding to public records requests, and for redacting exempt records. Had the University followed codes and policies, *and* notified Plaintiff before the records release, the court could have stopped the improper release!**

**i.** RCW 42.56.050  "A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.

**j.** The courts have found the release of exempt, personal, confidential information to be highly offensive, for example:

"disclosure of performance evaluations, which do not discuss specific instances of misconduct, is presumed to be highly offensive . . " *Dawson*, 120 Wn.2d at 797.

"release of employees' identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individuals concerning information

*COMPLAINT: J DALESSIO v. Univ. of WA*                                    Page 9 of 27

unrelated to any governmental operation and impermissible invasions of **privacy** as contemplated in *Painting Indus., Preservation Fund,* and *Hopkins.*90 Wn. App. 205; 951 P.2d 357; 1998 Wash. App. LEXIS 273"

      k.  **It's highly offensive to Plaintiff, as any reasonable person, that the University of Washington released the exempt, confidential, identifying, personal and defamatory information to her unethical, spiteful, neighbor, without informing her first and giving her the opportunity to stop it;**

It's highly offensive to Plaintiff, as any reasonable person, that the University of Washington released the multitude of exempt information, even after she reported the breaches to multiple departments at the University of Washington; It's highly offensive to Plaintiff that the University of Washington would not do anything to rectify these errors; It's highly offensive to Plaintiff, as any reasonable person, that these negligent practices by the University of Washington are continuing.

      **l.**  The courts have found the release of exempt, personal, confidential information is not of legitimate concern to the public, for example: "disclosure of identified employees' address, wage, and benefits information unwarranted because the public's interest did not meet FOIA's central purpose--"to open agency action to the light of public scrutiny." *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976).

      **m.**  Plaintiff's personal, identifying, exempt information is not of legitimate concern to the public.

.

**n.** Washington State law  (RCW 42.56.060) provides that state employees are immune from civil and criminal liability so long as the disclosed information was provided in a good faith effort to comply with public disclosure laws.

**o.** The University of Washington Office of Public Records and other offices that maintain and supplied records for public release should have known and followed applicable contractual obligations, laws, codes and policies.

**p.** This exempt information was provided as the result of negligence by the University of Washington.

**q.** The courts have found that "Government officials are protected from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Moran v. State*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))

The University of Washington Office of Public Records knew or *reasonably should have known that Plaintiff has the statutory and civil rights to privacy*, and should have made a better effort to redact exempt documents from the Public Record BEFORE the release.

**r. The University of Washington is liable for civil damages because their conduct violates Plaintiff's established statutory rights to privacy.**

**s.** RCW 42.56.590, (12)(a) Any individual injured by a violation of this section may institute a civil action to recover damages. (b) Any agency that violates, proposes to violate, or has violated this section may be enjoined. (c) The rights and remedies available under this section are cumulative to each other and to any other rights and remedies available under law.

**t.** RCW 9.73.060 Violating right of privacy—Civil action—Liability for damages. "A person so injured shall be entitled to actual damages, including mental pain and suffering . ."

**u.** As a private individual, Plaintiff need only prove that these documents were negligently produced (Hitter, 66 Wn. App. at 400); actual malice does not need to be proved.

**v..** The identifying information that was released puts Plaintiff at risk and worry for identity theft.

**w.** In addition, the release of this information caused financial damage as it was presented in a frivolous lawsuit against Plaintiff, who paid her attorney to review the records, request claw-back, and argue the admissibility (based on irrelevance) of this information when her neighbor submitted this as evidence in an unfounded adverse possession claim. (King County Superior Court Records).

**x.** In addition, the release of this information caused financial damage as it was compiled, preserved and presented in Plaintiff's personnel file, damaging her reputation and thus destroying her career.

.

*COMPLAINT: J DALESSIO v. Univ. of WA*                    Page 12 of 27

**y.** In addition, the release of this information caused mental pain and suffering and the recurrence of stress-related illness as Plaintiff has had to review the abusive treatment that she received from the University of Washington.

**5.2  Claim for Breach of Contract**

Plaintiff re-alleges and incorporates by reference all of the above, as though fully set forth herein.

**a.** Plaintiff and the University of Washington entered into a contract in 2003, the Settlement Agreement, which terms the University of Washington has violated on numerous occasions.  The Agreement specifies that we "agree not to publicize the terms of this Agreement, and to direct others to do the same . . ." (PR-2015-00570, stage 2, p.130, #16), and "any party that prevails in court in showing a violation of the terms of this Agreement will pay all reasonable attorney's fees and costs that are necessary to enforce the Agreement."

**b.** The University of Washington has made this Agreement part of the public records, and has publicized the terms of the Agreement, and multiple copies of the Agreement, in **breach of the contract.**(PR-2015-00570, PR-2016-00218, and PR-2016-00760).

**c.** In a written statement from Assistant Attorney General, Jeffrey Davis, dated January 10, 2003, The University of Washington claimed to have complied with the terms of the Separation Agreement (PR-2015-00570, stage 2, p 38), and to have removed specific documents from Plaintiff's Personnel file and all Department files.  In April 2016, Plaintiff discovered that, despite this, the University of Washington had **inserted** into the public records at least **31** copies of these documents that they specifically Agreed to remove from their files!

**d.** The University of Washington is liable for the actions of its employees.

**e.** The University of Washington reasonably ought to have known that they were providing exempt, frivolous, defamatory information in the Public Records Releases, in a serious breach of contract.  The University of Washington was not acting in good faith in this **negligent** public records release.

**f.** The reporting and release of this information caused **financial** damage as it was compiled, preserved and presented as the public record pertaining to the Plaintiff, damaging her reputation and destroying her career.

**g.** In addition, the release of this information caused **financial** damage as it was presented in a frivolous lawsuit against Plaintiff, who paid her attorney to request claw-back, then argue the admissibility (based on **irrelevance**) of this information. (Superior Court Records)

### 5.3  Claim for Defamation/Libel

Plaintiff re-alleges and incorporates by reference all of the above, as though fully set forth herein.

**a.** The University of Washington has altered Plaintiff's personnel file, without her knowledge or consent, in violation of state and University laws and policies and in breach of the Settlement Agreement, in a deliberate effort to defame her, removed commendatory documents that confirm her accomplishments and inserted **exempt** and **libelous**, irrelevant, and **misleading** documents (and multiple copies of such), and preserved, shared, distributed and provided deliberately misleading documents to anyone who asked.

**b.** These exempt and defamatory documents, include:  A confidential Settlement Agreement; numerous documents (and numerous copies of those documents) that should have been removed according to the Agreement; L&I claim information; Employment security information; financial information; multiple copies of a cognitive job analysis; confidential psychiatrist notes; personal **medical** information; derisive and defamatory documents containing unsolicited, unqualified opinions and directions about healthcare by her supervisor; **false** and irrelevant, derogatory and demeaning statements, misconstrued, fabricated hearsay of hearsay; Multiple copies of overpayment/ repayment option forms, in conjunction with multiple confirmations of fraud prevention training;  Paperwork detailing the **government grants that were improperly (and unknown to Plaintiff) used to pay Plaintiff's salary**; multiple copies of one request for a personal leave of absence in 1996; Multiple copies of one job performance evaluation; Multiple copies of other, selected educational records; and more.  All of these items are expressly exempted from public inspection, as noted above (5.1 a.).

**c.**  Under RCW 40.14, Records Management Services at the University of Washington has posted schedules for records retention, and WAC 478-276-095 protects public records from those who would "disassemble, deface, or cause the disorganization of any record for any reason whatsoever." **The University of Washington has violated their responsibilities for retention and for destruction of public records, improperly removing and inserting documents into Plaintiff's personnel file, and presenting a disorganized mess as her Public Record.**

**d.** University of Washington policy (http://hr.uw.edu/policies/providing-work-references-to-prospective-employers/) states : "The presumption of good faith can only be effectively challenged if a current or former employee can show by clear and convincing evidence that information the employer disclosed was knowingly false, deliberately misleading, or made with reckless disregard for the truth." and "the law states that a supervisor or manager who provides it should retain a written record in the employee's personnel file of the identity of the person or entity to which reference information is provided..." "Do not provide medical information even if an employee voluntarily disclosed it to you." "Do not provide information about an employee that is not directly work related."

The University of Washington provided all of the above and did not retain the required records.

**e.** "[I]f a supervisor performs an act motivated by ... animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub*, 562 U.S. at 422.

The University of Washington is liable for the actions of its employees.

**f.** RCW 42.40.020(3) "An individual who knowingly provides or reports, *or who reasonably ought to know* he or she is providing *or* reporting malicious, false, *or* frivolous information, *or* information that is provided with reckless disregard for the truth, *or* who knowingly omits relevant information is not acting in good faith." (emphasis added)

The University of Washington Office of Public Records reasonably ought to have known that they were providing exempt, frivolous, and defamatory

information that is all expressly exempted from public inspection (See 5.1 a., above) in the Public Records Releases. The University of Washington reasonably ought to have known that this unfounded, unsubstantiated, libelous, misleading, if not false, information was then provided with reckless disregard for the truth.

The University of Washington School of Medicine and Medical Centers Human Resources,  The Assistant Attorney General, Attorney for the University of Washington, and Plaintiff's supervisor knew or should have known that records of her supervisor's unsubstantiated, misleading, defamatory, accusations were not to be preserved, copied and publicized.

Plaintiff's supervisor and Human Resources knew or should have known that information not pertaining to work should not be included in an employee's personnel file;  that an employee's personnel file should not contain health or disability related information; that an employee's personnel file was not to be altered without her knowledge.

The University of Washington was not acting in good faith in the deliberate manipulation of Plaintiff's file to shine a false light on her character, her abilities and her accomplishments and in reporting exempt and defamatory information.

**g.**   RCW 7.96.040 (1)  A person may maintain an action for defamation or another claim covered by this chapter only if:  (a) The person has made a timely and adequate request for correction or clarification from the defendant; . . .

In the Settlement Agreement signed Jan. 2, 2003, the University of Washington agreed to remove letters containing her supervisor's unsubstantiated, misleading, libelous, accusations from their files.  The University

of Washington claimed that they removed these documents from their files on January 10, 2003.

In **April, 2016**, when Plaintiff first discovered that the University of Washington was distributing these, along with **additional** defamatory documents, she communicated her claims to the University of Washington Office of Public Records, the University ombud, the Public Records ombud, the University assistant attorney general, the Office of Risk Management, and the Department of Enterprise Services (DES).   The Plaintiff filed a claim, using their claim form, on October 21, 2016.  DES responded Feb. 2, 2017, "The University must respectfully deny your claim. . . "sorry that we cannot remedy this situation for you; the University is only able to resolve claims for which we have legal liability."

> **h.** *Doe v. Gonzaga Univ.*, 143 Wn.2d 687, 24 P.3d 390 (2001) (en banc), *portion rev'd on other grounds, Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) The court found that the university and its employees could be liable on defamation claim even though the statements in question were only made among university personnel and not among those outside the university's community.

**i.** The release of this information caused **financial** damage as it was presented in a frivolous lawsuit against Plaintiff, who paid her attorney to argue the admissibility (based on irrelevance) of this information. (King County Superior Court Records)

**j.** In addition, the release of this mis-information caused **financial** damage as it was compiled, preserved and presented as Plaintiff's personnel file,

damaging her reputation inside and outside the university community, and destroying her career.  In the best light, but for the defamation that continued after Plaintiff's resignation, she could've continued her career in a capacity that utilized her skills in the scientific development of laboratory medicine.

**k.** In addition, the release of this mis-information caused the recurrence of stress-related illness as Plaintiff has had to review the abusive treatment that she received from the University of Washington, along with the emotional distress from learning the even greater extent of the abuse from the scandalous and libelous documents added to her employee file after her resignation, along with the emotional distress from discovering that for over 14 years the UW has been presenting this false and misleading information to anyone who asks, including her vindictive, unethical neighbor.  (Damages for emotional distress are available in defamation suits. *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 915-18 & n.1, 726 P.2d 434 (1986).)

## 5.4  Claim for Civil Rights violations, Discrimination, Retaliation for whistleblower

Plaintiff re-alleges and incorporates by reference all of the above, as though fully set forth herein.

**a.** The University of Washington harassed, threatened and coerced Plaintiff into resigning and specifically signing away her rights to complain about age and disability discrimination.  The Agreement includes the following terms:

"By signing this Agreement Plaintiff is confirming that except for the claims filed in "statement of Dispute," she has not filed any complaint, appeal or other claim

which is waived in this paragraph with any agency or court.  Plaintiff further
agrees that she will never do so."
and
"This includes any actions under the Age Discrimination in Employment Act and/
or the American (sic) with Disabilities Act."  (PR-2015-00570, stage 2, p129, #7)

   **b.** "It is an unfair practice for any employer:"
"(4) **To print**, or circulate, or cause to be printed or circulated **any statement,**
advertisement, or publication," "**which expresses** any limitation, specification, or
**discrimination as to age**," "or **the presence of any** sensory, mental, or physical
**disability**" "or any intent to make any such limitation, specification, or
discrimination" (RCW 49.60.180)
and
"It shall be an unfair practice:  (1)For an employer or licensing agency, because
an individual is <u>forty years of age</u> or older, . . .  to <u>discriminate against such</u>
<u>individual</u> . . . "  (RCW 49.44.090)
and
"It is an unfair practice . . .**to attempt to obstruct or prevent any other person**
**from complying with the provisions** of this chapter (RCW 49.60.220)

   **c.**   But for Plaintiff's age and disability, the Settlement Agreement would
not have pointedly **prohibited any actions** under the Age Discrimination in
Employment Act and/or the Americans with Disabilities Act.

   **d.**   "Title VII of the Civil Rights Act specifies that discriminatory practices
include employment decisions based on stereotypes or assumptions about

abilities, traits or performance of a protected class. ***These could be intentional or practices that have the effect of discrimination.***

In addition, section 704(a) and RCW 49.60.210 provide that it is an unlawful employment practice to discriminate against an individual because she has opposed any of these unlawful, discriminatory practices, and section 503(b) of the ADA prohibits **coercion, intimidation, threats, or interference** with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act. The "Civil Rights Act of 1991 provides **substantial additional monetary provisions to remedy instances of retaliation or other discrimination**, including, for example, to remedy the emotional harm caused by on-the-job harassment." (enclosure with EEOC Form 131-A (11/09) emphasis added)

   **e.** The terms of the Agreement are clearly meant to obstruct and deprive the plaintiff of her clearly established rights to complain about discrimination and are included based on the perception of Plaintiff as a whistleblower. Retaliation, (42 USC sec 1981 includes post termination retaliation) including **interference with Plaintiff's rights** to file complaints of discrimination is **ongoing** until the illegal terms of that Agreement are changed, restoring Plaintiff's civil rights.

   **f.** "The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning that it would have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)

The University of Washington harassed, threatened and coerced Plaintiff to sign an Agreement that **specifically dissuades** the Plaintiff from making or supporting a charge of discrimination!

**g.** In addition to all of the retaliatory actions against Plaintiff while employed at the University of Washington, the **ONGOING Retaliatory actions** include **all** of the following:  "unequal treatment," "unwarranted and unsubstantiated letters of reprimand and unsatisfactory performance evaluations", "denial of employment and unemployment security, supervisor behaving in and encouraging coworkers to behave in a hostile manner, issuance of a nondisclosure agreement, and all these actions that are inconsistent compared to actions taken compared to other employees who have not engaged in conduct that is protected, or who is perceived by the employer as reporting, whether they did or not, alleged improper governmental action or an employee who identifies rules warranting review and an employee who is believed to have identified rules warranting review but who, in fact has not done so. (RCW 42.40.050, 42.40.020; retaliatory action against whistleblower and definitions, underlines added)

**h.** "two essential elements to a 42 U.S.C. sec. 1983 claim: (1) the conduct complained of must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right or privilege secured by the constitution or the laws of the United States. Turngren v. King County, 104 Wash. 2d 293, 311, 705 P.2d 258 (1985)."

**i.** The *assistant attorney general* at the University of Washington implemented and signed the Agreement, including a non-disclosure clause and

*COMPLAINT: J DALESSIO v. Univ. of WA*                          Page 22 of 27

other illegal terms, specifically resulting in discrimination, distinction, restriction, and unequal treatment based on age and disability. (RCW 9.91.010  Denial of civil rights, includes  ". . any educational institution wholly or partially supported by public funds,")

**j.** Claim Services at The University of Washington has responded to Plaintiff's complaint with a "Disclaimer of public liability" under RCW 42.56.060.

**k.** "Government officials are protected from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Moran v. State*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))"

The University of Washington is liable for civil damages because their conduct violates Plaintiff's established statutory and civil rights to privacy and rights to complain about discrimination.

Discrimination and retaliation, (42 USC sec 1981 includes post termination retaliation) is **ongoing** until Plaintiff's employee records are restored and maintained in a manner that is consistent with contractual obligations, University policy and state and federal laws.

**l.** In the best light, but for the retaliation that continued even after Plaintiff's resignation, barring Plaintiff from complaining of discrimination, she could have brought the facts of her unfair treatment to the attention of the public and the courts 15 years ago, and remedied the damage at that time.

**m.** In the best light, but for the harassment, discrimination, retaliation and defamation that continued even after Plaintiff's resignation, she could've continued her career in a capacity that utilized her skills in the scientific development of laboratory medicine.

**n.** In addition, the release of this information caused the recurrence of stress-related illness as Plaintiff has had to review the abusive treatment that she received from the University of Washington, and experience the retaliation that that continues.

**o.** "The intent of RCW 42.40 is to protect the rights of state employees making disclosures of improper governmental action, RCW 42.40.040(5)(c) "the identity or identifying characteristics of a whistleblower is confidential at all times."

Plaintiff has the right to privacy, to keep her name out of the public record of this civil action, to avoid further damages.

**5.5  Claim for Injunctive Relief**

**a.** On numerous occasions, the University of Washington has negligently released personal, confidential, exempt records concerning Plaintiff in response to requests for public records.

**b.** On numerous occasions, the University of Washington published defamatory, libelous, exempt documents concerning Plaintiff.

*COMPLAINT: J DALESSIO v. Univ. of WA*                                   Page 24 of 27

c.  On numerous occasions, the University of Washington has violated the terms of the Settlement Agreement with Plaintiff.

d.  The University of Washington threatened and coerced Plaintiff into agreeing to terms of the Agreement that are illegal and violate her civil rights.

e.  Plaintiff fears that the University of Washington will continue to violate federal  and state civil rights laws, state public records and employment laws, University policies, and the terms of the Settlement agreement.

f.  Plaintiff fears that without appropriate injunctive relief, she will suffer injury and damage so long as this matter is unresolved.

g.  These claims are all within the statute of limitations.  It has been less than one year since the first public records violation was discovered and only 2 weeks since the latest incident.  Discrimination, Retaliation, and Defamation is ongoing until the Settlement Agreement and Plaintiff's records are rectified.

## VI.  RESERVATION OF RIGHTS

Plaintiff reserves the right to add additional parties to this lawsuit as well as make further claims and/or amend claims set forth herein as may be warranted by discovery.

## VII.  PRAYER FOR RELIEF

Plaintiff re-alleges and incorporates by reference all of the above, as though fully set forth herein.  The Public Records include irrefutable evidence of these facts.

WHEREFORE, Plaintiff prays that the Court grant the following relief:

**7.1**   a. Entry of an Order compelling the University of Washington to *appropriately* redact the public records including PR-2015-00570, PR-2016-00218, PR-201600283, and PR-2016-00760, to obscure all exempt, personal and identifying information and

b. Stopping the University of Washington from publishing exempt, confidential, and false, misleading, unsubstantiated and defamatory information.

c. Compelling the University of Washington to appropriately maintain Plaintiff's records in accordance with all applicable laws and policies;

**7.2**   Entry of judgment against the University of Washington on Plaintiff's claims for  Public Records violations;

**7.3**   Entry of judgment against the University of Washington on Plaintiff's claims for Invasion of Privacy;

**7.4**   Entry of an Order compelling the University of Washington to apply the Public Records Act, WAC, and University policies equally, regardless of the identity of the person or organization, *and* to **notify** anyone who is the subject of a Public Records Request **before** any information is released;

**7.5**   Entry of a preliminary and permanent injunction precluding the University of Washington from discriminatory practices under Title VII and the Americans with Disabilities Act, and RCW 49.60.180, 49.44.090, 42.40.020, and 42.40.050, 42 U.S.C. sec. 1983;

**7.6**    Entry of a preliminary and permanent injunction compelling the abatement and removal of the illegal terms of the Settlement Agreement by the University of Washington;

**7.7**    Award of damages to Plaintiff for the above liabilities, including actual and punitive damages, compensation for lost employment opportunities and pension benefits, as well as substantial compensation for emotional harm and loss of enjoyment of life;

**7.8**    Award of attorney's fees and other costs incurred in this action to Plaintiff pursuant to statute, and to the fullest extent allowed by contract, law, and equity; and

**7.9**    Such other relief as the Court deems just and equitable.

DATED:  This 28TH day of March, 2017.

JULIE DALESSIO
1110 29th Ave.
Seattle, WA  98122
206-324-2590
juliedalessio@msn.com