# APPOINTMENT AS SPECIAL ASSISTANT ATTORNEY GENERAL
# KEATING BUCKLIN & MCCORMACK
# TERMS AND CONDITIONS

The University of Washington ("University") has requested that the Attorney General's Office appoint a Special Assistant Attorney General to provide legal service to the University of Washington and its Office of Risk Management ("Client Department") and the Attorney General's Office concurs with this request. Jayne Freeman with the law firm of Keating Bucklin & McCormack at 800 Fifth Avenue, Suite 4141, Seattle, WA 98104 has been selected as the lead attorney for this service and is hereby appointed Special Assistant Attorney General ("SAAG").

The University of Washington, the Washington State Attorney General's Office, 4333 Brooklyn Ave NE, Box 359475, Seattle, Washington 98195, and the SAAG hereby agree to the following terms and conditions regarding this appointment as a Special Assistant Attorney General:

1. **SERVICES PROVIDED**

    A.  **General Services.** The SAAG, and attorneys and paralegals working under his or her supervision, will provide legal services related to representing the University, its officers, employees, and other indemnitees, including health care providers, on matters that are the subject of tort claims. This work will be under the general direction of Karin L. Nyrop, chief of the UW Division of the Attorney General's Office. Karin L. Nyrop will manage and authorize delivery of the services described herein.

    B.  **Specific Assignments.** After consultation with the SAAG, the Attorney General's Office or the Client Department will confirm in writing (by letter or e-mail) the assignment of each new matter for which the SAAG will provide legal services.

2. **COMPENSATION AND PAYMENT**

    A.  **Amount of Compensation.** Compensation will be based on the following hourly rates:

    | | |
    |---|---|
    | Jayne Freeman | $295.00 per hour |
    | Shannon Ragonesi | $295.00 per hour |
    | Amanda Butler | $265.00 per hour |
    | Derek Chen | $265.00 per hour |
    | Brian Augenthaler | $265.00 per hour |
    | Jeremy Culumber | $265.00 per hour |

    Compensation is subject to the requirements of the attached Billing Requirements and Limitations. If the SAAG believes that it would be beneficial to use any other attorney in the firm for this work, the SAAG will notify the Client Department of the name and proposed rate in advance.

Invoices for legal services provided on behalf of the University should be sent to University of Washington Claim Services for review and payment. Payment shall be considered timely if made within 60 days after receipt of a properly completed invoice.

**B.** **No Advance Payment.** The University will not make payment in advance or in anticipation of services or supplies under this contract.

## 3. TERM

The term of this contract shall extend from July 1, 2017 through June 30, 2019. Either party may terminate this contract upon two weeks written notification. It is agreed that the SAAG will be compensated for services provided through the date of notification of termination at the hourly rate specified herein. Compensation for any services provided after notification of termination shall be pursuant to agreement of the parties. The Attorney General's Office may renew this appointment and extend the term as deemed necessary and appropriate, subject to renegotiation of hourly rates.

Unless expressly withdrawn by the Attorney General's Office or Client Department, any specific assignment made during the term of this contract shall remain effective and subject to the terms of this contract through the pendency of such assignment.

## 4. APPLICABLE LAW AND VENUE

This appointment as Special Assistant Attorney General and this contract shall be governed by the laws of the State of Washington. In the event of a lawsuit involving this contract, venue shall be proper only in King County Superior Court. The SAAG, by execution of this contract, acknowledges the jurisdiction of the courts of the State of Washington in this matter.

## 5. INDEPENDENT CAPACITY OF THE SAAG

The SAAG and his or her employees or agents performing under this contract are not employees or agents of the University. The SAAG will not hold himself or herself out as, nor claim to be, an officer or employee of the University or of the State of Washington by reason of this contract, nor will he or she make any claim of right, privilege, or benefit which would accrue to a civil service employee under RCW 41.06. The designation "Special Assistant Attorney General" may be used in correspondence or pleadings related to this matter, but no reference will be made to the SAAG or the law firm as representing any other agency or department of the State as a result of this appointment.

## 6. CONFLICT OF INTEREST

This appointment will be terminated if there is or has been a violation of the Ethics in Public Service Act during the performance of this appointment.

The parties recognize that the SAAG or the law firm may be asked to represent clients in cases or on matters adverse to the State of Washington. The SAAG shall notify the Attorney General's Office when personally participating in cases or matters adverse to the State of Washington by advising Senior Assistant Attorney General Bryce Brown (central AGO coordinator of attorney appointments, PO Box 40113, Olympia, WA 98504-0113) of the nature of the matter or the name of the case.

For purposes of this appointment, the client is the University. The SAAG and the law firm agree not to represent clients in any matter adverse to the University unless a waiver from the University and the Attorney General's Office is obtained. To seek a waiver, contact Karin L. Nyrop, UW Division Chief at knyrop@uw.edu.

## 7. UNIVERSITY RECORDS AND ASSETS

Title to all property or materials furnished by the University shall remain in the University. Any property of the University furnished to the SAAG shall, unless otherwise provided in this contract or approved by the University, be used only for the performance of this contract.

The SAAG shall be responsible for any loss or damage to property of the University which results from the negligence of the SAAG, or which results from the failure on the part of the SAAG to maintain and administer the property in accordance with sound management practices. If any University property is lost, destroyed, or damaged, the SAAG shall immediately so notify the University and shall take all reasonable steps to protect the property from further damage.

The SAAG shall send to the Attorney General's Office, in standard electronic format, copies of legal research memoranda or briefs created in the performance of this contract where the materials would have a general legal value to the University or as requested by the Attorney General's Office.

Upon completion, termination, or cancellation of this contract, the SAAG shall return to the University all property of the University, including any original University documents in the possession of the law firm. The SAAG shall retain copies of all records related to performance of this contract for at least six years after completion of the work, unless otherwise arranged with the Attorney General's Office.

## 8. CONFIDENTIALITY

The SAAG shall maintain as confidential all information concerning its services under this contract, as well as the business of the University, its financial affairs, and any other information which is clearly intended to be confidential or is specifically classified as confidential by the University. To the extent consistent with RCW 42.56 (Public Records Act), the University shall maintain as confidential all information which the SAAG specifies in writing as confidential.

J:\GROUPS\ATTYGEN\SAAGAPTS\STANDARD\BLANKET\FREEMAN2338.DOC
OUR FILE NO: UW92-0001(180)

## 9. COVENANT AGAINST CONTINGENT FEES

The SAAG agrees that no person or agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide employees or bona fide established commercial or selling agency maintained by the SAAG for the purpose of securing business. For breach of this guarantee, the University may terminate this contract and make no payment for services under the contract without liability, or otherwise recover the full amount of such commission, percentage, brokerage or contingent fee.

## 10. INSURANCE

The SAAG agrees to maintain professional liability insurance throughout the duration of this appointment, and with an extended reporting period of at least two years, in an amount sufficient to cover any loss that may be experienced by the University as a result of an error or omission by the SAAG or the law firm. Unless otherwise specified herein, such insurance shall have minimum limits of no less than $3,000,000 per occurrence. For medical malpractice defense, the limits shall be no less than $5,000,000 per occurrence. For patent work, the University will accept limits of $1,000,000. Upon request, the SAAG shall provide evidence of such coverage.

## 11. MODIFICATION TO CONTRACT

Modifications to the conditions of this appointment must be approved in advance by the Attorney General's Office. Any modifications shall be reduced to writing and signed by the authorized representatives of the respective parties.

## 12. EXECUTION OF AGREEMENT IN PARTS

This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all counterparts together shall constitute a single agreement. The parties may deliver signed agreements to the other in PDF form through email. The agreement shall be deemed to be fully executed and effective when all of the parties have signed the agreement in counterparts through this process, and each has received a PDF copy of the fully executed agreement bearing the signatures of all of the parties.

## 13. BUSINESS ASSOCIATE AGREEMENT

**A.** **Purpose of Activities.** The Office of the Attorney General is statutorily mandated to provide legal advice to the University of Washington. Pursuant to 45 CFR Parts 160 and 164, the University is a hybrid covered entity and the AGO is a business associate of the University when it provides legal services that require the use or disclosure of protected health information. When the AGO, in its role as business associate, contracts with another lawyer to provide legal services for the University as a Special Assistant Attorney General, the AGO is required to ensure that the SAAG maintains the security and confidentiality of protected health information.

I:\GROUPS\ATTYGEN\SAAGAPTS\STANDARD\BLANKET\FREEMAN2338.DOC
OUR FILE NO: UW92-0001(180)

B. **Use or Disclosure of Protected Health Information.** The SAAG shall not use or disclose Protected Health Information ("PHI") received from the University or AGO in any manner that would constitute a violation of federal law, the Health Insurance Portability and Accountability Act of 1996 and any regulations enacted pursuant to its provisions ("HIPAA Standards") and applicable provisions of Washington state law. The SAAG shall ensure that its employees, contractors, and agents use or disclose PHI received from, or created or received on behalf of the University or AGO in accordance with the provisions of this Agreement and federal and state law. The SAAG shall not use or disclose PHI in any manner other than that permitted or required by the University or AGO for the purpose of accomplishing services to or on behalf of the University or AGO as described in Section A herein.

C. **Safeguards Against Unauthorized Use or Disclosure of PHI.** The SAAG agrees that it will implement all appropriate safeguards to prevent the inappropriate use or disclosure of PHI pursuant to the terms and conditions of this Agreement. To the extent the SAAG carries out the University's obligations under the HIPAA Privacy, Breach Notification, Security, and Enforcement Rules and regulations, the SAAG shall comply with the requirements of such Rules and regulations that apply to the University in the performance of such obligations.

D. **Reporting Unauthorized Use or Disclosure of PHI.** If the SAAG has reason to believe that PHI may have been accessed, disclosed, or acquired without proper authorization, the SAAG shall, within five business days of discovery, notify the AGO and the University. If the unauthorized use or disclosure constitutes a Breach, as defined by 42 USC § 17921, the SAAG shall (a) provide all information necessary to enable the University to fully understand the nature and scope of the Breach, including identification of each individual whose unsecured PHI has been, or is reasonably believed to have been accessed, acquired, or disclosed (b) take action to preserve forensic evidence and to identify, mitigate and remediate the cause of the breach, and (c) take such other steps as needed to comply with 42 U.S.C. § 17932, and all applicable regulations adopted to implement that statute. The SAAG shall indemnify, hold harmless, and defend the AGO and the University from and against any penalties, claims, actions, loss, liability, damage, costs, or expenses, including but not limited to reasonable attorneys' fees, system remediation, or forensic analysis, arising from or pertaining to such a Breach, including any violation of state or federal laws applicable to the use, disclosure or protection of PHI. The indemnification provided hereunder includes the full costs of notice to impacted individuals, including the costs to retain an outside consulting form to undertake the notification effort.

E. **Agreements by Third Parties.** The SAAG shall enter into an agreement with any agent or subcontractor who will have access to PHI that is created or received on behalf of the University or the AGO, and shall ensure that the agent or subcontractor agrees to be bound by the same restrictions, terms and conditions that apply to the SAAG through this Agreement with respect to PHI. The SAAG shall require that any agent or subcontractor notify the SAAG of any instances in which PHI is used or disclosed in an unauthorized manner. The SAAG shall take steps to reasonably cure the breach of confidentiality and end the violation or shall terminate the agency agreement or subcontract.

I:\GROUPS\ATTYGEN\SAAGAPTS\STANDARD\BLANKET\FREEMAN2338.DOC
OUR FILE NO: UW92-0001(180)

F.  **Access to Information.** To the extent applicable, within five (5) working days of a request by the University for access to PHI about an individual contained in a Designated Record Set, the SAAG shall make available to the University such PHI for so long as the information is maintained in the Designated Record Set. If any individual requests access to PHI directly from the SAAG, the SAAG shall within two (2) working days forward such request to the University. The SAAG shall not deny any individual's request for access to the individual's PHI. Instead, any denials of access to PHI requested will be the responsibility of the University.

G.  **Availability of Protected Health Information (PHI) for Amendment.** To the extent applicable, within ten (10) working days of a request from the University for the amendment of an individual's PHI or a record regarding an individual contained in a Designated Record Set (for so long as the PHI is maintained in the Designated Record Set), the SAAG shall provide such information to the University for amendment and incorporate any such amendments in the PHI as required by 45 C.F.R. §164.526.

H.  **Accounting of Disclosures.** To the extent applicable, within ten (10) working days of notice by the University to the SAAG that it has received a request for an accounting of disclosures of PHI regarding an individual during the six (6) years prior to the date on which the accounting was requested, the SAAG shall make available to the University such information as in the SAAG's possession and is required for the University to make the accounting required by 45 C.F.R. §164.528. At a minimum, the SAAG shall provide the University with the following information: (i) the date of the disclosure, (ii) the name of the entity or person who received the PHI, and if known, the address of such entity or person, (iii) a brief description of the PHI disclosed, and (iv) a brief statement of the purpose of such disclosure which includes an explanation of the basis for such disclosure. If the request for an accounting is delivered directly to the SAAG, the SAAG shall within two (2) working days forward such request to the University. It shall be the University's responsibility to prepare and deliver any such accounting requested. The SAAG agrees to implement an appropriate record keeping process to enable it to comply with the requirements of this Section.

I.  **Electronic Protected Health Information.** If the SAAG creates, receives, maintains or transmits Electronic Protected Health Information ("ePHI") on behalf of the University, the SAAG agrees to (1) implement administrative, physical and technical safeguards and documentation requirements consistent with the standards and implementation specifications set forth in Sections 164.308, 164.310, 164.312, and 164.316 of title 45, Code of Federal Regulations; (2) ensure that any third party agent or subcontractor who receives such ePHI from the SAAG agrees to implement administrative, physical and technical safeguards and documentation requirements consistent with the standards and implementation specifications set forth in Sections 164.308, 164.310, 164.312, and 164.316 of title 45, Code of Federal Regulations; and (3) deploy appropriate safeguards to implement the Secretary of Health and Human Services' annual guidance on the most effective and appropriate technical safeguards for use in carrying out security standards.

J.  **Availability of Books and Records.** The SAAG agrees to make its internal practices, books and records relating to the use and disclosure of PHI received from the

University, or created or received on behalf of the University, available to the Secretary of the U.S. Department of Health and Human Services for purposes of determining the University's and the SAAG's compliance with the HIPAA Standards.

**K.    Return or Destruction of Information.** At the termination of this Agreement, the SAAG shall exercise discretion on whether it is appropriate to return or destroy all PHI received from, or created or received on behalf of the University that the SAAG still maintains in any form. If destruction or return of PHI is not feasible, the SAAG shall not use PHI received from, created or received on behalf of the University in a manner other than those permitted or required by state and federal laws or for the purposes described herein.

**L.    Immediate Termination.** The AGO may terminate its participation in this Agreement immediately upon written notice to the SAAG without liability for such termination, in the event that the AGO determines that the SAAG has violated a material provision of this Agreement.

**M.    Definitions.**

"**Business Associate**" means, with respect to a Covered Entity, a person to whom a Covered Entity discloses Protected Health Information so that the person can carry out, assist with the performance of, or perform on behalf of, a function or activity for the Covered Entity, including any agent, contractor or any other person who receives Protected Health Information from the Covered Entity (or from another Business Partner of the Covered Entity) for the purposes described herein.

"**Designated Record Set**" means a group of records maintained by or for the University that is (i) the medical records and billing records about individuals maintained by or for the University, (ii) the enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan, or (iii) used, in whole or in part, by or for the University to make decisions about individuals. As used herein the term "record" means any item, collection, or grouping of information that includes Protected Health Information and is maintained, collected, used, or disseminated by or for the University. 45 C.F.R. §164.501.

"**Disclosure**" means the release, transfer, provision of access to, or divulging in any other manner of information outside the entity holding the information.

"**Electronic Media**" shall mean the mode of electronic transmissions. It includes the Internet, extranet (using Internet technology to link a business with information only accessible to collaborating parties), leased lines, dial-up lines, private networks, and those transmissions that are physically moved from one location to another using magnetic tape, disk, or compact disk media.

"**Individually Identifiable Health Information**" means a subset of health information, including demographic information collected from an individual, and (i) is created or received by a health care provider, health plan, employer or health care clearinghouse and (ii) relates to the past, present or future physical or mental health or

condition of an individual; and (a) identifies the individual, or (b) with respect to which there is a reasonable basis to believe that the information can be used to identify an Individual.

"**Protected Health Information**" means Individually Identifiable Health Information that is (i) transmitted by electronic media, (ii) maintained in any medium constituting electronic media, or (iii) transmitted or maintained in any other form or medium. "Protected Health Information" shall not include education records covered by the Family Educational Right and Privacy Act, as amended, 20 U.S.C. §1232g(a)(4)(B)(iv).

"**Use**" means the sharing, employment, application, utilization, examination, analysis, canonization, or commingling with other information.

### 14. TRAINING

At least once a year SAAG will provide training to the Attorney General's Office and Client Department on an agreed upon topic without additional charge.

OFFICE OF ATTORNEY GENERAL
Appointment of Special Assistant
Attorney General and Approval of
Terms and Conditions

By: _Karin L. Nyrop_
Karin L. Nyrop
Division Chief

Date: _June 20, 2017_

Acknowledgment of Appointment and
Obligation to Reimburse for
Fees and Expenses

By: _Shari Spung_
Shari Spung
Director, Claim Services
Office of Risk Management
University of Washington

Date: _6/22/17_

KEATING BUCKLIN & MCCORMACK

By: _Jayne Freeman_
Jayne Freeman

Date: _June 21, 2017_

UW-AGO Contract No. 2338

## BILLING REQUIREMENTS AND LIMITATIONS

A.  Unless otherwise agreed upon in advance in writing, the University will be charged for services rendered on an hourly basis and billings will be reflected in increments of no greater than one-tenth of an hour.

B.  Each billing statement must set forth for each date services were performed:

   (1) A brief summary of the services provided;
   (2) The number of hours, or fractions of hours, spent by each provider;
   (3) The hourly rates of each of the providers;
   (4) Expenses and disbursements in detail.
   (5) UW-AGO Contract and Client Budget numbers as set forth on signature page of contract.
   (6) Other information, as required by the Client Department

C.  Where Section 2 of the Appointment Contract establishes a maximum contract amount, each invoice should include a summary showing: (1) the maximum contract amount, (2) the balance of that maximum amount remaining at the beginning of the billing period and (3) the balance of that maximum amount that will remain after payment of that invoice.

D.  Limitations on fees and expenses

   (1) Air travel must be approved by the University in advance and is reimbursable at coach rates;
   (2) The University must not be charged for courier service or other expedited mail delivery unless the urgency was caused by the University or the University requests the service, or it is absolutely necessary based on your professional judgment.
   (3) Photocopying charges must not exceed $.10 per page.
   (4) The SAAG and law firm have been retained because of their expertise. The University must not be billed for basic general legal or technical research necessary to educate staff or less experienced attorneys in the firm without advance approval.
   (5) The University must not be billed for time spent in preparing or reviewing the firm's billings to the University or in internal firm quality control procedures.
   (6) The University expects the SAAG to be economical in applying the legal resources of the law firm and not to bill for time spent training new attorneys or for carrying on general conversations among attorneys. Unless approved in advance, the University will not reimburse the SAAG for time spent by more than one attorney attending meetings, witness interviews, depositions, hearings, and the like.
   (7) Lodging and meal expenses shall be subject to the per diem limitations of State Office of Financial Management (see http://www.ofm.wa.gov/resources/travel.asp). The University will not reimburse costs of alcoholic beverages or entertainment.

E.  For at least two years following the conclusion of the services provided under this contract, the law firm shall retain for review by the University any documentation supporting its requests for payment.