The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIE DALESSIO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, a Washington Public Corporation; Eliza Saunders, Director of the Office of Public Records, in her personal and official capacity; Alison Swenson, Compliance Analyst, in her personal capacity; Perry Tapper, Public Records Compliance Officer, in his personal capacity; Andrew Palmer, Compliance Analyst, in his personal capacity; John or Jane Does 1-12, in his or her personal capacity,<br><br>Defendant. | No. 2:17-cv-00642-MJP<br><br>PLAINTIFF'S REPLY TO RULE 37(A)(3)(A) MOTION TO COMPEL INITIAL DISCLOSURES; AND RESPONSE TO REQUEST FOR PROTECTIVE ORDER STAYING PLAINTIFF'S PENDING DISCOVERY REQUESTS<br><br><br>**Note on Motion Calendar October 26, 2018** |

Reply to Motion to Compel Initial Disclosures
Response to Defendant's Request for Protective Order
Case 2:17-cv-00642

1

Law Office of Joseph Thomas
14625 SE 176th St., Apt. N101
Renton, Washington
Phone (206)390-8848

## I. REPLY TO MOTION TO COMPEL INITIAL DISCLOSURES

### 1. Statement of Facts

Ms. Dalessio filed a motion to compel initial disclosures pursuant to Rule 37(a)(3)(A), and only a motion to compel initial disclosures.

The rest of the facts are as stated in Docket 108. Both Ms. Dalessio and Mr. Joseph Thomas, pro bono Counsel for Plaintiff, have certified their good faith efforts to resolve these disagreements [Dkts. 110 and 109] prior to filing this motion to compel initial disclosures.

### 2. Legal Standard

"Rule 37(a)(5)(A) requires the court to award attorneys fees in most circumstances where 'the disclosure or requested discovery is provided after the motion was filed,' even though in such a circumstance, there would be no order compelling the party to do what it has already done." *Balla v. Idaho*, 677 F. 3d 910, 920 (9th Cir. 2012) (quoting Fed. R. Civ. P. 37(a)(5)(A)).

Rule 26(e) a party who "made a disclosure under Rule 26(a)" has a mandatory affirmative duty to "supplement or correct its disclosure or response."

### 3. Relief Requested

First, Plaintiff requests again that Defendants are barred from using any information not produced in the initial disclosures, first supplemental disclosures, and second supplemental disclosures pursuant to Rule 37(c)(1). *R & R SAILS v. Insurance Co. of Pa.*, 673 F. 3d 1240, 1246 (9th Cir. 2012). Second, Plaintiff requests reasonable expenses, including attorney's fees, pursuant to Rule 37(a)(5)(A) because partial supplemental disclosure was provided after filing the motion to compel initial disclosures. *Balla v. Idaho*, 677 F. 3d 910, 920 (9th Cir. 2012). Third, Plaintiff requests the court to order that defendants supplement and correct disclosures to provide complete identification and contact information of persons, and identify and produce relevant documents, pursuant to the strict requirements of Rule 26(a).

### 4. Argument

**1. Defendants have insufficiently identified persons likely to have discoverable information pursuant to Rule 26(a)(1)(A)(i)**

Defendants wrongfully argue that Shari Spung is not subject to initial disclosures because

"her only involvement stems from responding to Ms. Dalessio's tort claim." Dkt. 111 at 5. This is inaccurate representation made in bad faith to mislead both Plaintiff and this Court. The subject matter of Ms. Dalessio's tort claim only concerned Public Records Act request PR 2015-00570. Ms. Spung is identified in Defendants' own bates stamped documentation as actively participating in Public Records Act request PR 2016-00760. Dkt. 108-6 at 6 (stating "Shari Spung in Claim Services would like all records produced" before the request was closed three months later). Ms. Spung was also involved with Public Records Act request PR 2017-00357 where she requested a copy of the records more than a month before this request was closed out. Dkt. 108-7 at 2. Moreover, Ms. Spung was identified as generally providing responses on behalf of Defendant University of Washington to Ms. Dalessio's 2017 interrogatories requests in this above entitled lawsuit. Dkt. 56-2 at 4 (Defendant submitted this discovery to this Court).[1] Ms. Spung has first-hand knowledge of factual matters in this lawsuit because she is identified as a person responding to the interrogatories and prepared the initial disclosures which Defendants defenses are based upon. Dkt. 56-2 at 5 (stating "Ms. Spung reviewed some records related to the subject Public Records Requests in conjunction with processing Plaintiff's tort claim and collecting records to respond to Plaintiff's discovery requests and preparing Defendant's Initial Disclosures and other steps in this litigation"). Therefore, Defendants failed to disclose Ms. Spung in the initial disclosures violating Rule 26(a)(1)(A)(i) and additionally failed to supplement or correct this omission pursuant to Rule 26(e)(1).

Defendants wrongfully argue that Ana Marie Keeney has "no involvement or knowledge regarding the underlying facts of the case" and therefore is not subject to initial disclosures. Dkt. 111 at 6. This contradicts previous representations made by Defendants in both supplements to the initial disclosures and Defendants responses to Plaintiffs' interrogatory requests. After the amended complaint was filed with this court in Document 82 Defendants produced the supplemental initial disclosures and second supplemental initial disclosures which both name Ms.

---

[1] Defendants failed to sign this discovery response located in document 56-2 in this court's case file violating Federal Rule of Civil Procedure 26(g) (requiring an attorney's signature) and Rule 33(b)(5) (requiring interrogatories to be signed by the person answering and the attorney making the objections). There is no signature of any attorney on this document despite being represented by legal counsel at all pertinent times. Also, there is no signature to the interrogatories by any person answering it.

3

1  Keeney.  Dkt. 108-3 at 4;[2] Dkt. 108-5 at 4.[3]   Ms. Keeney was identified as generally providing

2  responses on behalf of Defendant University of Washington to Ms. Dalessio's 2017

3  interrogatories requests in this above entitled lawsuit. Dkt. 56-2 at 4 (Defendant submitted this

4  discovery to this Court).  Defendants contradictory assertion about Ms. Keeney that she does not

5  have any involvement or knowledge of the issues in this lawsuit is disingenuous at best, since Ms.

6  Keeney's name was supplemented twice to initial disclosures after the first amended complaint

7  was filed with this Court.

8      Defendants also argue that Barb Benson should not be subject to initial disclosures

9  because Ms. Benson is a "high-level University officials whose names appeared on 'case

10 summaries' of the PDA request, but turned out to have no direct involvement in processing the

11 PDA requests at all."  Dkt. 111 at 6.  This is inaccurate representation made in bad faith to

12 mislead both Plaintiff and this Court.  First, Ms. Benson is listed in Defendants initial disclosures,

13 first supplemental initial disclosures, and second supplemental initial disclosures as having

14 knowledge of the University of Washington's records retention policies.  Dkt. 108-1 at 3; Dkt.

15 108-3 at 3; Dkt. 108-5 at 3-4.  Second, Ms. Benson is listed in Defendants' disclosure of primary

16 witnesses, filed with this Court in this above entitled lawsuit, as possibly testifying about "records

17 retention policies at the University of Washington." Dkt. 54-1 at 3.

18     Defendants argue that Cynthia Dold, Lorie Oliver, and Mindy Kornberg should not be

19 subject to initial disclosures because each person is a "high-level University officials whose

20 names appeared on 'case summaries' of the PDA request but turned out to have no direct

21 involvement in processing the PDA requests."  Dkt. 111 at 6.  This is inaccurate representation

22 made in bad faith to mislead both Plaintiff and this Court.  There is no evidence in the record,

23 other than Defendants attorney's conclusory assertions in Document 111 at page 6, that Ms. Dold,

24 Ms. Oliver, and Ms. Kornberg have "no involvement or knowledge regarding the underlying facts

25 of the case."  This assertion does not cite to any evidence in the record.  Furthermore, there is no

26 evidence in the record to support this assertion.  There is not even a declaration or affidavit in the

---

[2] Defendants did not object or challenge the authenticity of this document.
[3] Defendants did not object or challenge the authenticity of this document.

4

1 record where Ms. Dold, Ms. Oliver, and Ms. Kornberg each assert for herself that each has no
2 knowledge of the facts of the case. The evidence that is in the record identifies that Ms. Dold,
3 Ms. Oliver, and Ms. Kornberg did have direct involvement in the production of the records in this
4 lawsuit. Even in Defendants' response to this motion to compel initial disclosures, it is admitted
5 that Ms. Dold, Ms. Oliver, and Ms. Kornberg names "names appeared on 'case summaries' of the
6 PDA request" and at least Public Records Act request concerning Plaintiff's records were sent to
7 their offices. Dkt. 111 at 6-7. Ms. Dold, Ms. Oliver, and Ms. Kornberg clearly have knowledge
8 of the facts of the case and may be used in Defendants defenses.

9 Defendants argue that Christine Taylor, Marcelo Collantes, and Daisy Rendario should
10 not be subject to initial disclosures because each person, while are University of Washington
11 employees, each "had no involvement or knowledge regarding the underlying facts of the case."
12 Dkt. 111 at 6. This is inaccurate representation made in bad faith to mislead both Plaintiff and
13 this Court. It is a fact fifteen months after this case started Ms. Taylor, Mr. Collantes, and Ms.
14 Rendario's name first appeared in Defendants second supplemental initial disclosures. Dkt. 108-5
15 at 9. Defendants in the supplemental initial disclosures state how Ms. Taylor, Mr. Collantes, and
16 Ms. Rendario may have knowledge of the underlying facts of the case based upon each
17 individual's respective job as a University of Washington employee. It is irreconcilable for
18 Defendants to name these three individuals in the second supplemental initial disclosures, served
19 less than two months before this motion was filed, and then without any evidence make the bald
20 assertion to this Court that these individuals do not have any knowledge of the case.

21 It is further unacceptable that Defendants list the contact information for the law firm of
22 Keating Bucklin & McCormack, Inc. P.S. ("KBM") for many of the persons listed in initial
23 disclosures. Dkt. 108-5 at 3-9. Except for the named parties in this above entitled lawsuit, there
24 is no evidence of an attorney-client relationship between any attorney at KBM other than it is the
25 law firm representing Defendants in this lawsuit. Defendants' attorneys Ms. Freeman and Mr.
26 Chen need to produce evidence of an attorney-client relationship with each person who has the
27 contact information listed as KBM in the second supplemental disclosure or this Court must order
28 Ms. Freeman and Mr. Chen to produce this contact information to Plaintiff immediately. If Ms.

5

1  Freeman and Mr. Chen are allowed to be the gatekeepers for many people listed on initial
2  disclosures, it will continue to frustrate Plaintiff's right to prosecute the case and deny her
3  meaningful access to the courts in violation of her First Amendment rights to the United States
4  Constitution.  Having KBM as the gatekeeper for many of the individuals listed on initial
5  disclosures flies in the face of Rule 1's construction that the Federal Rules of Civil Procedure are
6  meant to "just, speedy, and inexpensive determination of every action and proceeding." Rule 1.

**2.   Defendants failed to identify and produce documents related to its claimed defenses that must have been produced pursuant to Rule 26(a)(1)(A)(ii)**

Defendants argue that they do not have a duty to produce all Public Records Act policies and procedures to Plaintiff.  Specifically, Defendants did not produce any of the University of Washington's Public Records Act policies and procedures that are described in the Washington Administrative Code ("WAC"), Chapter 478-276 WAC.[4]  Defendants argue the University of Washington's Public Records Act policies and procedures are not "internal documents in the possession of the University." Dkt. 111 at 9.  Ms. Freeman's argument in this Court is not well-grounded in law or fact and is contravened by the Purpose section explaining the reasoning for the University of Washington's Public Records Act policies and procedures found in Chapter 478-276 WAC. The stated Purpose of Chapter 478-276 WAC in pertinent part is "[t]he university adopts these rules and regulations so as to provide fullest assistance to inquirers and full public access to the university's public records." WAC 478-276-010.[5]  In addition, Chapter 478-250 WAC[6] concerning the University of Washington's policies regarding the indexing of Public Records was never produced in initial disclosures or discovery.  The indexing of documents may be used in Defendants defenses of good faith immunity, discretionary immunity, and qualified immunity.

---

[4] Chapter 478-WAC is available at: http://apps.leg.wa.gov/wac/default.aspx?cite=478-276.
[5] WAC 478-276-010 reads in its entirety: "This chapter is enacted by the board of regents of the University of Washington in compliance with the Public Records Act. The university adopts these rules and regulations so as to provide fullest assistance to inquirers and full public access to the university's public records while protecting those records from damage or disorganization; preventing excessive interference with other essential university functions, including the university's core education and research missions; and not unreasonably disrupting university operations."
[6] Chapter 478-250 WAC is available at: http://apps.leg.wa.gov/wac/default.aspx?cite=478-250.

6

Defendants failed to address why it did not produce any documents concerning the job training, specifically for University of Washington Public Records Officers, in the response to the motion to compel initial disclosures. *See* Dkt. 111 7-9. Defendants argue that "[d]ocuments regarding training and job descriptions were never anticipated as necessary to support Defendants positions regarding immunity or other defenses based on public disclosure." This is inaccurate representation made in bad faith to mislead both Plaintiff and this Court. Defendant University of Washington has already argued, when previously arguing for summary judgment, "[a]n isolated administrative mistake by a University employee does not give rise to an actionable claim under Section 1983." Dkt. 45 at 7; *see also* Dkt. 75 at 5 (stating "that the inadvertent mistake in failing to redact her SSN. . . was clearly administrative error"). Knowing an individual's job training is essential to know if that person was competently performing his or her duties or acting outside the scope of their duties, in other words making an "inadvertent mistake."

**3. Defendants failed to identify and produce insurance agreements pursuant to Rule 26(a)(1)(A)(iv)**

Defendants argue that they fulfilled their duties in initial disclosures by producing the plain language of RCW 28B.20.250. There is no evidence in the record to support that there are not additional documents identifying details of the "insurance policy" in RCW 28B.20.250 or any other additional insurance policies.

Defendants do not provide any evidence to support their claims other than the conclusory statements made by defense counsel Jayne Freeman, seemingly acting as a spokesperson for the Defendants. Dkt. 111 at 9 (citing only to Ms. Freemna's declaration).

Defendants failed to respond to any of the arguments in Document 108 at page 8 and 9. Plaintiff argues using the plain language of the statute that there must be additional documents that would typically be used in an insurance agreement to identify liability and coverage, which are clearly indicated by the plain language of the statute. Dkt. 108 at 8-9.

**4. This Court must award Plaintiff reasonable expenses, including attorney's fees, pursuant to Rule 37(a)(5)(A) because supplemental disclosure was provided after filing the motion to compel initial disclosures**

1    When responding to the sufficiency of the identification of the persons likely to have
2    discoverable information, Defendants provided new and conflicting information concerning job
3    titles, job functions, and participation in the disclosure of the Public Records Act documents at
4    issue in this lawsuit. Dkt. 111 at 5-6.

5    Defendants identified job titles as "subject of that information" which are required to be
6    disclosed in initial disclosures pursuant to Rule 26(a)(1)(A)(i) because it is relevant to Defendants
7    claimed defenses. For the majority of the persons listed in the initial disclosures, first
8    supplemental disclosures, and second supplemental disclosures Defendants disclosed the job
9    titles.  Because defendants use defenses such as discretionary immunity which requires a
10   "decision must be a basic policy decision by a high-level executive," job titles and job
11   responsibilities are essential to defenses such as discretionary immunity. *Avellaneda v. State*, 273
12   P. 3d 477, 480 (Wash. Ct. App. 2012).

13   First, Defendants in the response to the motion to compel initial disclosures identified
14   Barb Benson as having the job title of "Director, Enterprise Services, University of Washington
15   Finance." Dkt. 111 at 6. Whereas in the initial disclosures produced in June 2017, the first
16   supplemental initial disclosures produced in May 2018, and the second supplemental initial
17   disclosures produced in July 2018, Ms. Benson is identified as having the job title of "Records
18   Management Services." Dkt. 108-1 at 3; Dkt. 108-3 at 3; Dkt. 108-5 at 3.  At no time prior to the
19   response to the motion to compel initial disclosures did Defendants identify Ms. Benson of
20   having the job title of "Director, Enterprise Services, University of Washington Finance."  Dkt.
21   111 at 6.  Second, Defendants in response to the motion to compel initial disclosures identified
22   Cynthia Dold as having the job title of "Director, Strategic Planning & Clinical Integration, UW
23   School of Medicine," Lori Oliver as having the job title of "UW Medicine Strategic Clinical
24   Business Officer, UW School of Medicine," and Mindy Kornberg as "Vice President, UW
25   Finance & Administration" and "all high-level University officials whose names appeared on
26   "case summaries" of the PDA request"  Dkt. 111 at 6. Whereas in the initial disclosures produced
27   in June 2017, Dold, Oliver and Kornberg were identified only as "c/o Keating, Bucklin &
28   McCormack." Dkt. 108-1 at 4.

8

These new and sometimes conflicting disclosures were made directly in response to Plaintiff's motion to compel initial disclosure. Pursuant to the plain language of Rule 37(a)(5)(A) Plaintiff is entitled to costs and reasonable attorney's fees for causing this disclosure based upon this motion to compel initial disclosures.

### 5. No evidence in the record to support Defendants satisfied the requirements of initial disclosures

Defendants are attempting to represent that they have satisfied disclosures through the production of initial disclosures and through written discovery. The record is absent of any evidence to support Defendants' claims that it produced sufficient initial disclosures through any means, other than defense counsel, seemingly acting as a spokesperson for the Defendants by testifying about which documents and information do and do not have to disclose. The facts detailing the insufficiencies in Defendants' initial disclosures as described in Plaintiff's arguments are all supported by evidence in the court record.

### 5. Conclusion

For Ms. Dalessio to be able to prosecute this case effectively this Court must order Defendants to produce all initial disclosures immediately. Discovery is not a game of "blind man's bluff," *Dollar v. Long Mfg. N.C., Inc.*, 561 F.2d 613, 616 (5th Cir.1977) (citation omitted), or "hide the ball," *Hosea v. Langley*, 2006 WL 314454, *5 (S.D.Ala.) (unpublished).

This Court must award attorney's fees for forcing the disclosure of new information Rule 37(a)(5)(A). This Court must award attorney's fees for the failure to disclose or supplement initial disclosures pursuant to Rule 37(c)(1)(A).

## II.   RESPONSE TO REQUEST FOR PROTECTIVE ORDER

### 1. Statement of Facts

Defendants filed Document 111 with this Court on October 15, 2018. Dkt. 111. Document 111 was submitted in writing. *Id.* The caption in Document 111 stated it was: 1. A response to Plaintiff's motion to compel initial disclosures; and 2. Defendants' separate request for a protective order. *Id.* at 1. Defendants requested a protective order from Plaintiff's second set of "Interrogatories and Requests for Production." *Id.* at 2.

1    The record is absent of Plaintiffs second set of second set of discovery requests that
2    Defendants are seeking a protective order from.
3    The record is absent of Defendants arguing that any specific discovery request or any
4    particular document should be subject to a protective order.  Instead, Defendants argue for a
5    blanket protective order from discovery.

6                                    **2.   Legal Standard**

7    Federal Rules of Civil Procedure 26(c) governs protective orders in discovery.  "Rule
8    26(c) authorizes" the court to protect a party from discovery "where good cause is shown."
9    *Phillips ex rel. Estates of Byrd v. GM Corp.*, 307 F. 3d 1206, 1210 (9th Cir. 2002) (internal
10   quotation marks omitted).
11   Federal Rules of Civil Procedure 7(b)(1) creates a standard defining what is a motion.
12   "Rule 7(b)(1) requires that motions must: (A) be in writing unless made during a hearing or trial;
13   (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."
14   *Elustra v. Mineo*, 595 F. 3d 699, 707 (7th Cir. 2010) (internal quotation marks omitted); *accord*
15   *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F. 2d 1240, 1248 (9th Cir. 1982).

16                                   **3.   Request for Relief**

17   First, Plaintiff requests Defendants request/motion for a protective order is denied.
18   Second, Plaintiff requests reasonable expenses, including attorney's fees, pursuant to Rule
19   37(a)(5)(B) because Defendants' motion for a protective order is frivolous on its face, as
20   explained below. Third, any other relief this court deems as just and equitable pursuant to its
21   inherent powers for this flagrant procedural abuse.

22                                         **4.   Argument**

23   **1.   Defendants moved this Court for a protective order from discovery**

24   When Defendants requested a protective order from discovery in Document 111 it was a
25   formal motion, even  though it was not titled as such.  Defendants request for a protective order
26   meets all of the elements of a motion pursuant to Federal Rules of Civil Procedure 7(b)(1).
27    "Rule 7(b)(1) requires that motions must: (A) be in writing unless made during a hearing
28   or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief

1  sought." *Elustra v. Mineo*, 595 F. 3d 699, 707 (7th Cir. 2010) (internal quotation marks omitted);
2  *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F. 2d 1240, 1248 (9th Cir. 1982)
3  (stating only Rule 7(b)(1) identifies "what is necessary to constitute a valid motion" in the Federal
4  Rules of Civil Procedure).

5  Defendants request for a protective order in Document 111 meets each and every element
6  of a motion pursuant to Rule 7(b)(1). The first element, Defendants request for a protective order
7  was made in writing to this Court, on pleading paper, and signed by defense counsel Jayne
8  Freeman. The second element, the request in Document 111 at page 2 states the grounds for
9  seeking the protective order as discovery should not be had during a motion for summary
10 judgment.[7] Another ground for the protective order is to act as a sanction because of the alleged
11 conduct of Plaintiff's attorney in filing a notice of unavailability and not accepting defense
12 counsel Jayne Freeman's explanations for initial disclosures. *See e.g.* Dkt. 111 at 10 (requesting
13 the protective order as a sanction). The third element, there was a request for relief in both the
14 motion and a proposed order of staying Plaintiff's second set of discovery until after Defendants'
15 future motion for summary judgment. Dkt. 111 at 2, 10. Defendants request for a protective order
16 clearly meets the requirements of a motion.

17  **2.  Defendants do not argue good cause for a protective order**

18  Defendants failed to argue good cause for its motion for a protective order. *See generally*
19 Dkt. 111. In fact, the phrase 'good cause' does not appear once in its motion for a protective order
20 or its proposed order granting a protective order. *See generally* Dkt. 111; Dkt. 112. Because
21 Defendants failed to argue good cause it failed to meet its burden for this court to grant it a
22 protective order.

23  "A party asserting good cause bears the burden, for each particular document it seeks to
24 protect, of showing that specific prejudice or harm will result if no protective order is granted."
25 *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1130 (9th Cir. 2003); *Phillips ex rel.*
26 *Estates of Byrd v. GM Corp.*, 307 F. 3d 1206, 1210-11 (9th Cir. 2002). "[B]lanket protective

---

[7] Defendants admitted Document 111 that they do not have a currently filed motion for summary judgment in this above entitled lawsuit. Dkt. 111 at 2; *see generally* Docket.

order often covers materials that would not qualify for protection if subjected to an individualized analysis." *Perry v. Brown*, 667 F. 3d 1078, 1086 (9th Cir. 2012). "[A] party seeking the protection of the court via a blanket protective order typically does not make the 'good cause' showing required by Rule 26(c) with respect to any particular document." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1133 (9th Cir. 2003).

When seeking a protective order Defendants did not identify any specific discovery requests or any specific documents that should be protected from discovery. *See generally* Dkt. 111; Dkt. 112. Defendants did not identify any particular harm that would arise if the protective order is not granted. *See generally* Dkt. 111; Dkt. 112. For some unknown reason, defense counsel Jayne Freeman[8] did not perform any substantive analysis at all why a protective order should be granted.

### 3. Defendants Admitted to Not Meeting and Conferring Before Seeking a Protective Order

Defendants admitted to not meeting and conferring before seeking a protective order. It is not known why Defendants made the strategic decision to seek a protective order without meeting and conferring with Plaintiff's attorney as Federal Rule of Civil Procedure 26(c) requires.

A party seeking a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected pfarties in an effort to resolve the dispute without court action." Rule 26(c).

Defendants admitted in the document seeking the protective order: "Defendants are unable to confer with Mr. Thomas to request that he withdraw the second set of discovery requests that he served during his period of unavailability because he is still purportedly out of the country." Dkt. 111 at 2 n. 1. Defendants had an option to try to confer with Mr. Thomas when he returned to the county on either October 17 or 18, 2018 and still meet their noting date of October 26, 2018 pursuant to this Court's local rules. For some unknown reason, Defendants chose to neither contact Mr. Thomas during his period of unavailable and ask him to contact them when he

---

[8] Special Assistant Attorney General Jayne Freeman "and law firm have been retained" by the University of Washington and the Washington State Attorney General "because of their expertise." Dkt. 74-2 at 9.

1  returned, nor did they contact him after he returned.  Mr. Thomas returned on October 17, 2018

2  and Defendants sought a protective order from this Court on October 15, 2018.

3        "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,

4  do not satisfy the Rule 26(c) test." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1130

5  (9th Cir. 2003); *Beckman Industries, Inc. v. International Ins. Co.*, 966 F. 2d 470, 476 (9th Cir.

6  1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986).

7        Because Defendants do not even explain why they could not have waited to try to contact

8  Mr. Thomas when returned and the seek a protective order from this court, their broad allegations

9  of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule

10  26(c) test.

11  **4.  Conclusion**

12        Defendants seek a protective order from this court in bad faith.  Defendants do not fully

13  brief the argument for why a protective order should be granted by this Court.  Defendants to not

14  even attempt to argue their mandatory burden of good cause.  Defendants by their own admission

15  did not confer or even attempt to confer in good faith about Plaintiff's second set of discovery

16  before seeking this protective order.[9]  Defendants did not even both to describe or identify

17  specific documents that would be subject to a protective order.

18        Instead Defendants impermissibly seek a protective order from this court as a sanction[10]

19  against Plaintiff and Plaintiff's pro bono counsel.

20        This Court must award sanctions pursuant to Rule 37(a)(5)(B) if this Court denies

21  Defendants' application for a protective order.

22        This Court must also order Defendants to immediately produce all responses to Plaintiff's

23  second set of discovery requests.

---

[9] Defendants admitted in Document 111 that "Defendants are unable to confer with Mr. Thomas to request that he withdraw the second set of discovery requests that he served during his period of unavailability because he is still purportedly out of the country." Dkt. 111 at 2 n. 1.

[10] "Defendants request the court deny Plaintiff's Motion to Compel Initial Disclosures and request for fees and/or sanctions and enter a Protective Order staying pending discovery issued by Plaintiff pending resolution of Defendants' Motion for Summary Judgment." Dkt. 111 at 10.

Respectfully submitted this 22 day of October 2018

               Law Office of Joseph Thomas

                /s/ Joseph Thomas
               Joseph Thomas, WSBA 49532

**Certificate of Service**

  I hereby certify that on 22 of October 2018, I filed the foregoing with the Clerk of the Court through the CM/ECF system which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Email Notice List.

                /s/ Joseph Thomas
               Joseph Thomas, WSBA 49532
               14625 SE 176th St., Apt. N101
               Renton, WA 98058
               (206) 390-8848