The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JULIE DALESSIO, an individual,

Plaintiff,

v.

UNIVERSITY OF WASHINGTON, a
Washington Public Corporation; ELIZA
SAUNDERS, Director of the Office of
Public Records, in her personal and official
capacity; ALISON SWENSON, Compliance
Analyst, in her personal capacity; PERRY
TAPPER Public Records Compliance
Officer, in his personal capacity; ANDREW
PALMER, Compliance Analyst, in his
personal capacity; JOHN or JANES DOES
1-12, in his or her personal capacity,

Defendants.

No. 2:17-cv-00642-MJP

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S FIRST AMENDED
COMPLAINT

**NOTED FOR HEARING:**
**Friday, November 16, 2018**

## I.    INTRODUCTION

Plaintiff Julie Dalessio is a former University of Washington ("University") employee who separated from employment in 2003.  Nearly 15 years later, Ms. Dalessio filed this civil rights lawsuit after a public records analyst missed redacting her Social Security Number ("SSN") – labeled "Employee ID" – on two out of hundreds of pages produced in response to a lawful Public Records Act ("PRA") (RCW 42.56) request. These facts do not give rise to a cause of action under State or Federal law and her claims against sixteen individual employees and the University should be dismissed.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

## II.    RELIEF REQUESTED

Pursuant to FRCP 56, Defendants request the court enter an order dismissing Plaintiff's claims as a matter of law with prejudice.

## III.    STATEMENT OF FACTS

**A.    In 2015, the University Received a Public Records Request from a Citizen Seeking Documents Related to Former Employee Julie Dalessio and Produced Heavily-Redacted Portions of Responsive Records (PR-2015-00570) ("Betz Request").**

On September 16, 2015, the University's Office of Public Records and Open Meetings ("OPR") received a public records request from David Betz, identified by the University for tracking purposes as PR-15-00570. Dkt. 82, ¶29 (Plaintiff's First Amended Complaint).    Pursuant to RCW 42.56, Washington's Public Records Act ("PRA"), he requested "all records maintained by the University of Washington relating or pertaining to Julie Dalessio." *Id.*[1]    In response, OPR Compliance Analyst Alison Swenson released two installments of redacted records responsive to the request. *Id.*, ¶30-31.    The released documents consisted only of public records stored on the University (a public agency)'s server, all  of which were created and/or maintained in performance of the University's proprietary functions.  Ms. Dalessio alleges some of the information in the records released to Mr. Betz was private and should have been further withheld. *Id.* ¶36.

When she learned of Betz's PRA request, Ms. Dalessio submitted her own PRA request to the University—identified by the University for tracking purposes as PR-2016-00218—asking for copies of the documents released to Betz. Dkt. 82, ¶33. When she received responsive documents in 2016, she learned that Ms. Swenson had been the OPR analyst who processed and produced the redacted records to Mr. Betz. *Id.*, ¶34-35, 39. Ms. Dalessio claims Ms. Swenson failed to completely redact personal information about her that Ms. Dalessio deems to be private. *Id.* ¶36. It is undisputed that Ms. Swenson missed redacting Ms. Dalessio's Social Security number on two pages out of 370 produced.  *Swenson Dec.*, Dkt.

---

[1] Mr. Betz's request itself included references to Ms. Dalessio's UW email address and home address. Dkt. 82, ¶ 29.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

30; Dkt. 33, p. 47, Dkt. 34, p. 162 (illegible and unreadable).[2] It is also undisputed that Ms. Swenson withheld 101 pages of responsive documents from Mr. Betz based on allowable PRA exemptions (Dkt. 30-6) and heavily redacted the 370 pages of documents produced—including numerous locations where SSNs were apparent.  Dkt. 30, 32-34.

**B.    In 2016, Plaintiff Julie Dalessio Submitted a Public Records Request for Records Related to Her Own Employment, and the University Produced Unredacted Documents Directly to Her Only (PR-2016-760) ("Dalessio Request").**

On November 9, 2016, Ms. Dalessio submitted another PRA request for "*a digital copy of my departmental personnel file, along with any other computer or paper files that might contain records of inquiries concerning my employment at the uw, since my resignation in January 2003.*" Dkt. 82, ¶47; Dkt. 29 (Palmer Dec.).  OPR analyst Andrew Palmer produced responsive documents to Ms. Dalessio on January 26 and February 15, 2017. Dkt. 29-1, p. 3-4.  Both letters stated, "This letter is provided in response to your public records request <u>for your own personnel file and other related records</u>."  *Id.* (emphasis added). Dalessio concedes this set of unredacted documents produced by Defendant Palmer was never produced to anyone else.  Dkt. 81, ¶47, ¶49-52; *see also, Palmer Dec*.  Ms. Dalessio subsequently filed a tort claim with the University in 2016 regarding the release of records to Mr. Betz, then filed a lawsuit in March of 2017 against the University. *Id*., ¶44; Dkt. 1.1.

**C.    Ms. Dalessio's First Amended Complaint Now Names Sixteen Individual Defendant Employees, Most of Whom Never Released Documents or Information About Her to Any Third Party. [3]**

1.    <u>Claims Added Against Alison Swenson related to the 2015-00570 PRA Production.</u>

On April 12, 2018, Ms. Dalessio filed an First Amended Complaint, dropping all but a breach of contract claim against the University of Washington, but adding Ms. Swenson as

---

[2] The block redaction of "SSN" on Dkt. 33, p. 47 was added by defense counsel for purposes of filing the documents necessary to create the underlying record for Defendants' Summary Judgment Motion.  In the exercise of caution, defense counsel also "over-redacted" entries at Dkt. 34, pp. 16,19, 20 that appear in a box labeled SSN but which does not actually contain Ms. Dalessio's SSN, Dkt. 34, p. 162 where an illegible and unreadable SSN appears to be, and Dkt. 33, p. 9-10, 165 to redact date of birth pursuant to court rules. *See*, Dkt. 76 (Freeman Dec. in Opp. To Plaintiff's Motion to Amend).
[3] The only claim remaining against the University itself as a defendant is a breach of contract claim based on a 2003 Settlement Agreement. *Id*. ¶183-190.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 3
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

an individual Defendant and alleging civil rights and invasion of privacy tort claims against her, seeking compensatory and punitive damages, declaratory action, and injunctive relief pursuant to 42. U.S.C. §1983 and Washington Constitution, Art. I, Section 7.  These claims are **all** based on Ms. Swenson's production of records to Mr. Betz in response to PR-2015-00570.  Dkt. 82.

2.   <u>Claims Added Against Defendant Andrew Palmer & Unidentified University Employees Related to University Documents Collected and Released Only to Ms. Dalessio Herself ("Dalessio Request").</u>

As noted above, Ms. Dalessio submitted a PRA request for copies of *her own* personnel file and a broad scope of other documents related to her former employment at the University (PR 2016-760), which were provided to her in two installments in January and February of 2017, respectively. Dkt. 82, ¶47, ¶49. It is undisputed "Defendant Palmer was the person who produced both installments of records to Dalessio." Dkt. 82, ¶49. Ms. Dalessio alleges Mr. Palmer released personal and private information about her to her, not to any third party. *Id*., ¶49-50 (emphasis added):

47. On November 09, 2016, **Dalessio submitted a PRA request** to Defendant UW's Office of Public Records and Open Public Meetings. Defendant UW designated this request as **PR-2016-00760**. This request sought "a digital copy of [Dalessio's] departmental personnel file, along with any other computer or paper files that might contain records of inquiries concerning [Dalessio's] employment at the UW since [Dalessio's] resignation in 2003[.]

…

49. On or about February 2017, **Dalessio received** the final of two installments of documents responsive to her request PR-2016-00760. **Defendant Palmer** was the person who produced both installments of records **to Dalessio**. It believed that the persons involved in assisting Defendant UW's Office of Public Records and Public Meetings Act include: Doe 1; Doe 2; Doe 3; Doe 4; Doe 5; Doe 6; Doe 7; Doe 8; Doe 9; Doe 10; Doe 11; Doe 12.

In her First Amended Complaint, Ms. Dalessio also bases her claims against several other individual Defendants on the release of documents only to her, including Tapper, Saunders, and Jane/John Does 1-12. *Id*.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 4
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

3.   Claims Added Against OPR Supervisors and Employees Who Did Not Release Documents to Anyone.

Ms. Dalessio also added the same civil rights and state law claims against Defendants Perry Tapper (an OPR supervisor) (¶¶8, 40, 41, and Eliza Saunders - Director of the OPR) (¶ ¶ 7, 42), neither of whom ever released records to anyone. Dkt. 82, pp. 17-82, ¶ 42; *Decs. Saunders, Tapper*.

Ms. Dalessio also added Defendants "John or Jane Does 1-12," identified as various University staff who may have worked in departments throughout the University and who located and forwarded records to OPR pursuant to job duties and obligations under the PRA. *Id.* ¶14-25.[4]

> 39. A request summary report, generated on April 10, 2017, appears **to identify persons employed by Defendant UW who searched for and transmitted documents to Defendant UW's Office of Public Records** and Open Public Meetings that were produced in response to request **PR 2015-00570 submitted by Betz...** It believed that the persons who were involved in assisting Defendant UW's Office of Public Records and Public Meetings Act: Doe 1; Doe 2; Doe 3; Doe 4; Doe 5; Doe 6; Doe 7; Doe 8; Doe 9; Doe 10; Doe 11; Doe 12.

*First Amended Complaint., Dkt. 82, at p. 7 (emphasis added).* It is undisputed that none of the John or Jane Does 1-12 are alleged to have personally or directly released any records to the public or anyone outside the University. *See*, Dkt. 82. Ms. Dalessio seeks to pursue claims against them solely based on their administrative involvement in searching their requisite department files to locate and identify documents responsive to the Betz PRA request (PR-2015-570), and to forward them to the OPR to determine responsiveness, exemptions, redactions, and release of documents. *Id*.

## IV.   EVIDENCE RELIED UPON

- Plaintiff's Amended Complaint, Dkt. 82

---

[4] The "Does" include individual employees working in UW's Department of Laboratory Medicine, Upper Campus Human Resources, Human Resources for UW Medicine, Department of Payroll Services, Office of Finance and Administration, Office of Records Management Services, Office of Disability Services, Department of Legal and Business Affairs, Office of Chief Health System Officer of UW Medicine, Department of Records and Management Services at UW Medicine. Dkt. 82, ¶14-25.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 5
2:17-cv-00642-MJP

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

- Pleadings in Court File, Referenced by Dkt. Numbers
- Declaration of Alison Swenson, Dkt. 30, 30-1, 30-2
- Declaration of Andrew Palmer, Dkt. 29, 29-1
- Declaration of Perry Tapper
- Declaration of Eliza Saunders

## V.     ARGUMENT

A motion for summary judgment should be granted if there is no genuine issue of material fact. Fed.R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "[T]he moving party must … show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the non-moving party to produce *evidence* supporting its claims or defenses.  *Id*.  A party opposing summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.  FRCP 56(c); *Anderson, supra*.

**A.     Ms. Dalessio's Amended Complaint Does Not Allege Facts Rising to the Level of a Constitutional Violation; Even if They Did, Recovery is Barred by Qualified Immunity.**

1.     <u>Ms. Dalessio Cannot Establish Any Intentional Conduct By an Individual Defendant That Violates a Constitutional Right.</u>

Ms. Dalessio's 42 U.S.C. §1983 claims against Defendants are based on allegations that each of them violated: (1) the Fourth Amendment by unreasonably "searching and seizing" documents she deemed "private" under color of state law (Dkt. 82, ¶151), and (2) the Fifth and Fourteenth Amendments by disclosing highly personal and private information to the public (Dkt. 82, ¶108).

To prevail on federal claims under 42 U.S.C. §1983 against an individual defendant, a plaintiff must prove *that individual directly and intentionally* violated her rights under the U.S. Constitution—allegations of negligence do not suffice. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986) (rejecting 14th Amendment due

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 6
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

process claim based on negligence); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's personal mail did not rise to the level of a constitutional violation cognizable under §1983).

In a substantively similar case, the Third Circuit confirmed this principle applies to the inadvertent disclosure of private records—even clearly protected health information. *Weisberg v. Riverside Twp. Bd. of Educ.*, 180 F. App'x 357, 365 (3d Cir. 2006) ("Medical information ... is entitled to privacy protection against disclosure. The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.") In *Weisberg*, an employee's Fourteenth Amendment claim for violation of informational privacy was properly dismissed where his medical report was accidentally put into an envelope with another teacher's contract, thus releasing sensitive information. *Id*. at 360. *Id*. at 365; *See also, Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 739-40 (D.N.J. 2012 (negligent disclosure does not violate a constitutionally-protected privacy right.").

Ms. Dalessio's constitutional claims necessarily fail because none of the alleged unconstitutional acts were intentional. *At most*, Defendant Swenson's actions could potentially be construed as negligent, which cannot establish a basis for recovery under § 1983, and any recovery on Federal claims would also be barred by qualified immunity. Nor did Defendants violate any clearly-established Constitutional rights.

> a.   *Claims Against Alison Swenson.*

Defendant Swenson's sole involvement was to collect documents from other University departments, determine which should be withheld or produced pursuant to the PRA, and redact documents in accordance with RCW Ch. 42.56 (PRA). *Swenson Decl.*, *Dkt. 30*, at ¶¶ 5-7. Ms. Swenson has confirmed that, prior to this request, she did not know who either Ms. Dalessio or Mr. Betz were. *Id.* at ¶ 4. Ms. Swenson withheld 101 pages from disclosure pursuant to identified exemptions allowed under the PRA (Dkt. 30-6)), and made significant redactions to 370 pages of documents produced. *Id.* at ¶ 6; *Dkts. 32-34.* There is

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

1   simply no evidence to support the contention that the release of allegedly improper

2   information was intentional as required to find a constitutional violation.

3                  b.      *Claims Against Palmer, Saunders, and Tapper.*

4          It is undisputed Defendant Andrew Palmer had no involvement in the PR-15-00570

5   production to Mr. Betz.  His only actions related to Ms. Dalessio were responding to requests

6   from Ms. Dalessio herself for *her own* records.  Mr. Palmer could not have *intentionally*

7   violated any alleged privacy right because he only produced information about her to her.

8   *See, Palmer Dec*, Dkt. 29; Dkt. 82, ¶ 47, ¶ 49.

9          Defendant Eliza Saunders, OPR Director, was not directly involved in any PRA

10  production regarding Ms. Dalessio. *See, Saunders Dec.* at ¶ 8; *Dkt. 82* at ¶ 152.  Nor does

11  Ms. Dalessio allege she was.  Dkt. 82, ¶42. Defendant Perry Tapper, OPR Compliance

12  Officer did not prepare the response to the PR-15-00570 request either.  Although he is Alison

13  Swenson's direct supervisor, he did not prepare redactions for PR-2015-00570, and at most

14  would have advised Ms. Swenson if she had questions.  *Tapper Dec.*

15                 c.      *Claims Against John and Jane Does - No Federal Law Suggests That*
                           *Collecting Documents Potentially Responsive to a Public Records*
16                         *Request From Internal Agency Departments and Transmitting Intra-*
                           *Corporately Could Violate a Constitutional Right.*

17

18         Ms. Dalessio asserts two constitutional claims against "Does 1-12": a substantive due

19  process claim under the Fourteenth Amendment (Claim 1) and a Fourth Amendment claim

20  (Claim 3).  The very essence of Ms. Dalessio's claims are based on the concept that

21  information about her was *released to a member of the public*. She alleges the information

22  was private and that publicly disseminating it was so offensive that it constitutes a violation

23  of her substantive due process "right to privacy" under the U.S. Constitution. With the

24  exception of Defendant Swenson, it is undisputed that no other Defendant *released* any

25  documents or information to a member of the public in response to either PR-2015-570 or

26  PR-2016-760.  Even Plaintiff's Amended Complaint alleges only Defendants Does 1-12 may

27  have *transmitted* University documents internally among University departments, that

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 8
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

1   Defendant Palmer released documents to Ms. Dalessio herself, and that Defendants Saunders

2   and Tapper generally supervised staff in the OPR. Dkt. 82. Nor does any Federal law suggest

3   that such a process to comply with Washington PRA could violate an individual's Fourth

4   Amendment rights against "unreasonable search and seizure."

5          2.      Even if A Question Remained About a Potential Constitutional Violation,
                   Plaintiff's Section 1983 Claims are Barred by Qualified Immunity.

6          Ms. Dalessio's allegations here do not state a Federal cause of action entitling her to

7   relief against any Defendant based on any standard of law; however, as her pending

8   allegations are alleged solely against individual defendants, the substantive law will be set

9   forth in the context of the qualified immunity standard applicable to these individual

10  Defendants.[5]

11         Defendants are entitled to qualified immunity from lawsuits absent evidence they

12  intentionally and directly violated a "clearly established" Constitutional right that was so

13  "clearly established" that they would have known they were violating Constitutional rights

14  at the time they acted. *See, Jones v. State Dep't of Health,* 170 Wash.2d 338, 349, 242 P.3d

15  825 (2010). Questions of immunity should be resolved at the earliest opportunity in litigation.

16  *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017). The University first filed a Motion for

17  Summary Judgment in August of 2017, which would have resolved Plaintiff's claims on the

18  merits. *See*, Dkt. 27. The University eventually struck the motion only for the purposes of

19  refiling a new motion to more directly address new claims as replead by Ms. Dalessio's

20  appointed counsel in April of 2018. Dkt. 90. Six months later, the sixteen individual

21  Defendant employees added to the lawsuit are entitled to a prompt ruling on immunities that

22  preclude these claims against them under Federal or State law.

23         To determine whether qualified immunity can be overcome, the court first looks at

24  whether "the plaintiff's allegations establish a connection between the defendant's conduct

25  and the violation of a constitutional right"—*i.e.*, whether the defendant committed the alleged

26

27  [5] Plaintiff is not pursuing any Federal claims against the University. Dkt. 82.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 9
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

acts." *Id*. (*citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  Second, the court determines "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Jones*, at 349 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  "These are both 'essentially legal question[s]' for the court to decide." *Id.* (*quoting Mitchell*, 472 U.S. at 526).

> a.   *Federal Law Does Not "Clearly Establish" That Inadvertent Disclosure of Information to A Single Individual Pursuant to Statutorily-Mandated Public Records Laws Violates a Constitutional Right.*

By its plain language, the PRA applies "when an 'agency' is requested to disclose 'public records.'" *Dawson v. Daly,* 120 Wash.2d 782, 788, 845 P.2d 995 (1993).   The University is a public agency subject to the PRA. RCW 42.56.010(1).

Under the PRA, a "public record" is

> any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

RCW 42.56.010(3).   The PRA subjects "virtually any record related to the conduct of government" to public disclosure.  *Nissen v. Pierce Cty.*, 183 Wash. 2d 863, 874, 357 P.3d 45, 51 (2015).  (*citing O'Neill, 170 Wash.2d at 147, 240 P.3d 1149)*. This broad construction is deliberate and meant to give the public access to information about every aspect of state and local government. *Id.*[6]

One characteristic of a public record is that it is "prepared, owned, used, or retained by any state or local agency." RCW 42.56.010(3). *Nissen*, at 875. Information qualifies as a public record "regardless of [its] physical form or characteristics[,]" and includes a broad variety of documents. RCW 42.56.010(3); *Nissen*, at 877 (finding public employee's text

---

[6] Disclosing that a public record exists in response to a request does not mean the record will ultimately be produced. Agencies must consider whether any applicable exemption precludes production of part or all of a record. *Nissen*, at 874. (citing *Sanders v. State,* 169 Wash.2d 827, 836, 240 P.3d 120 (2010).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 10
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

messages on a personally-owned cell phone may be public records); *O'Neill v. City of Shoreline*, 170 Wash. 2d 138, 150, 240 P.3d 1149, 1155 (2010) (records related to public employee's employment stored on personally-owned home computer still public records); *Oliver v. Harborview Med. Ctr.*, 94 Wash.2d 559, 618 P.2d 76 (1980) (even hospital records at state run hospital to "public records" because the public could learn about the "administration of health care services, facility availability, use and care, methods of diagnosis, analysis, treatment and costs, all of which are carried out or relate to the performance of a governmental or proprietary function").

An individual typically has no Constitutional privacy interest in a *public* record. *Nissen, at* 883; *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (noting public officials only have "constitutionally protected privacy rights in matters of personal life *unrelated to any acts done by them in their public capacity*" (emphasis added)). See also, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (Privacy interests rise to the level of Constitutional protection *only* when they "implicate a fundamental liberty interest, specifically [the individual's] interest in preserving their lives and the lives of… family members…preserving their personal security and bodily integrity") (protecting from disclosure personal identifying information of undercover police officers testifying against gang members, based on a demonstrated constitutional right to be free from "unjustified intrusions on personal security.").

        b.     *Federal Law Does Not "Clearly Establish" That Limited Release of Information Implicates a Constitutional Right under the Fourteenth Amendment of the Federal Constitution*

Ms. Dalessio cannot establish that inadvertent disclosure of her SSN or partial disclosure of personnel records of a public agency from 15 years ago amounts to a violation of Constitutional magnitude.  In 1999, *In Re Crawford,* 194 F.3d 954 (9th Cir. 1999), cited by Plaintiff at Dkt. 82, ¶ 99, ¶ 102, ¶ 109, recognized a certain right to "informational privacy," but maintained that the right is not absolute. In fact, in *Crawford*, the court rejected a paralegal's request to avoid compliance with a bankruptcy court's mandate that he provide

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 11
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

his SSN on documents he filed in the public bankruptcy court record—despite his concerns it would become part of the unrestricted public record and potentially subject him to identity theft. *Id*., at 959.  The court stated that "the *indiscriminate* public disclosure of SSNs, especially when accompanied by names and addresses, *may* implicate the constitutional right to informational privacy" (emphasis added); however, the court distinguished this from mandated disclosure of detailed private medical information because "a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma," and noted the alleged harm was speculative. *Id*., at 960; *see also Wampler v. Carson City Sher.*, 2012 WL 3205943, at *4 (D. Nev. Aug. 3, 2012) (rejecting privacy claim arising out of dissemination of SSNs on an "exclusion list" issued to pawn shops to fight trafficking of stolen goods.)

Although the Supreme Court has never so held, the Ninth Circuit has also recognized a constitutionally-protected privacy interest in avoiding disclosure of personal matters such as patient medical records. *Padron v. Lara,* 2018 WL 2213462, at *5–6 (E.D. Cal. May 11, 2018), *citing Norman–Bloodsaw v. Lawrence Berkeley Lab*., 135 F.3d 1260, 1269 (9th Cir. 1998); *Seaton v. Mayberg*, 610 F.3d 530, 537 (9th Cir. 2010).  However, even in *Padron*, the court declined to extend Constitutional protection to release of information in a claim filed by the plaintiff and a related denial despite alleged reputational impairment. *Id*. The Ninth Circuit has also noted that not every exposure raises privacy concerns that would be protected under the U.S. Constitution, *People of State of Cal. v. F.C.C. ("F.C.C."),* 75 F.3d 1350, 1361 (9th Cir. 1996) (noting the Supreme Court has limited Constitutional privacy rights to interferences with "a person's most basic decisions about family and parenthood…as well as bodily integrity.").

Most cases addressing the scope of privacy interests arise in the context of the scope of the government's authority to *mandate* private citizens to disclose personal information to the government agencies, balancing the interests involved. The Ninth Circuit has never ruled that release of a Social Security Number in response to a specific public records request

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 12
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

necessarily establishes a violation of the Fourteenth Amendment.  In fact, the majority of Circuit courts have specifically underlined rejected that such a claim is actionable under the U.S. Constitution.  And none have suggested that the potential existence of a Constitutional right to privacy, in any event, overrides the requirement that a Constitutional violation must be intentional and knowing to subject an individual to liability under 42. U.S.C. § 1983.

For example, the Sixth Circuit has repeatedly—and recently—continued to reject claims asserting a constitutional right to nondisclosure of personal information**.** *See, e.g., Annabel, v. Michigan Dept. of Corr. 2018 WL 3455407, at \*22–23 (W.D. Mich. July 18, 2018), citing, Summe v. Kenton Cty.*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights).

Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom,* 136 F.3d at 1061 (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch v. Ribar*, 156 F.3d 673,  684 (6th Cir. 1998) (nonconsensual disclosure at press conference of details of plaintiff's rape).

*In Mallak v. Aitkin Cty.*, 9 F. Supp. 3d 1046, 1062 (D. Minn. 2014), the court confirmed "[t]he question of whether there is a constitutional right to privacy in SSNs is unsettled." (noting no case has yet found that a constitutional right to privacy exists under the Fourth or Fourteenth Amendment for the type of information typically found in driver's licenses—address, color photograph, date of birth, weight, height, and eye color, or even SSN

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 13
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

or medical restrictions—even if protected by state law.) While noting *In re Crawford's* 1999 recognition of SSNs as "sensitive and highly confidential," the *Mallak* court nevertheless ruled "[E]ven so, a privacy interest and a sensitive or highly confidential designation are not the same as having *a constitutional right to privacy,"* going on to outline the Seventh, Eighth, and Sixth Circuits' rejection of such federally-protected constitutional right. *Id., at 1062-1063. See, Cassano v. Carb,* 436 F.3d 74, 75 (2d Cir.2006) (holding that "the Constitution does not provide a right to privacy in one's SSN"); *McElrath v. Califano,* 615 F.2d 434, 441 (7th Cir.1980) (holding that disclosure of social security number as a condition of eligibility for government financial assistance did not violate plaintiff's right to privacy); *See also, Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (disclosure must be "either a shocking degradation or an egregious humiliation of [the plaintiff]").

   c.   *Even if the Court Finds a Defendant's Conduct Could Violate a Constitutional Right, the Court Should Dismiss Claims Against Individuals Because They Reasonably Believed Their Actions Complied With the Law At the Time.*

Defendants assert the law overwhelmingly confirms Defendants actions were *at least* permissible.  However, even if the Court finds a connection between the Defendants' conduct and a potential Constitutional violation, the standard for determining application of qualified immunity is "whether the [individual] <u>could have believed, reasonably but mistakenly</u>… that his or her conduct did not violate a clearly established constitutional right." *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (Emphasis added.)  This inquiry must be particularized based on the circumstances the official is confronted with at the time. *See*, *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039 (1987); *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("[A] district court must decide whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights.").

Under RCW 42.56 (PRA), the individuals Ms. Dalessio is suing are required by State law to make a good faith search for documents related to public records requests.  Agency

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

staff then proceed by reviewing each record, determining if some or all of the record is exempted from production, and disclosing the record to the requester.  *Nissen*, at 886, *citing*, *Resident Action Coun. v. Seattle Hous. Auth.*, 177 Wash.2d 417, 436–37, 327 P.3d 600 (2013). State law requires that the disclosure provisions are liberally construed, and its exemptions narrowly construed. RCW 42.56.030, *see also Koenig v. City of Des Moines*, 158 Wash.2d 173, 180, 142 P.3d 162 (2006).

Further, while Washington courts recognize a Constitutional right may still arise even where there is no specific exemption under the PRA that mentions the protection of an individual's constitutional rights, interpretation and application of the parameters of any such rights is far from clear. *Does 1-10 v. Univ. of Washington*, at *5 (W.D. Wash. Nov. 15, 2016), overruled on other grounds, 695 F. App'x 265 (9th Cir. 2017) (Unpublished.)  For example, even Constitutional mandates such as the right to a fair criminal trial require specific judicial findings of probability that unfair prejudice will result from pre-trial disclosure and that alternatives to withholding records are futile—a standard that even experienced trial judges in Washington have had trouble defining.  *See, e.g.*, *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 595, 243 P.3d 919 (2010) (reversing Judge Serko's order denying PRA access to criminal investigative records during pendency of felony trial out of concern for criminal defendant's right to a fair trial).

Defendants Swenson, Palmer, Tapper, and Saunders performed their jobs in the OPR in an effort to carry out the mandates of the PRA.  *Decs. Swenson, Palmer, Tapper, Saunders*. Despite Ms. Dalessio's disagreement and unsupported interpretation of the scope of the PRA, the individual Defendants acted reasonably in performing their part in collecting, redacting, withholding, and producing documents, or *at least **could have reasonably believed*** their actions complied with the law.  The public documents released by Ms. Swenson here—in a heavily redacted form—to one member of the public do not rise to a level implicating clearly established constitutional rights.  She clearly took great pains to redact hundreds of pages of documents and applied numerous exemptions where she felt they were warranted.  Dkt. 30-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 15
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

34.

There is no "one size fits all" response to PRA requests for literally millions of different types of documents maintained by public agencies throughout the State. Public employees necessarily must make decisions daily depending on specific records they review—thus, the reason the Washington State legislature recognized the need to establish immunity from State law claims (RCW 42.56.060). For the same reasons, qualified immunity should shield University employees from § 1983 claims based on the same efforts.

Similarly, Does 1-12 are **required** to perform the searches Ms. Dalessio has now sued them for. If individual agency staff were not allowed to search various department records and archives to produce responsive documents, the PRA would have no meaning and no use. There is simply no legal authority suggesting UW staff cannot search the University's own files for responsive records to respond to a PRA request; in fact, state law requires it.

**B.    Defendants are entitled to RCW 42.56.060 Good Faith Immunity from State Law Claims Based on Responses to PRA Requests.**

Plaintiff's Seventh Cause of Action alleges a common law tort claim of "public disclosure of private facts" against all individual Defendants. Dkt. 82, ¶191-201.

1.    RCW 42.56.060 Immunity Bars All State Causes of Action Based on public employees' good faith attempt to comply with the Public Records Act, RCW 42.56.

The Washington State Legislature chose to create the following immunity from liability or lawsuits arising from administration of the Public Records Act (PRA):

> No **public agency**, public official, public employee, or custodian shall be liable, **nor shall a cause of action exist**, for any loss or damage based upon the release of a public record if the public agency, public official, public employee, or custodian acted in good faith in attempting to comply with the provisions of this chapter.

RCW 42.56.060 (emphasis added). This immunity acts as a **complete bar** to all state law claims in PRA cases. There is no dispute the documents at issue were held by a *public agency*, and  were created and/or maintained as a result of Ms. Dalessio's prior employment with the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 16
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

University in accordance with the normal business practices of the relevant department of the University.

This court has already acknowledged this good faith immunity has been applied in many cases against a number of different causes of action. *See*, Dkt. 106 (Order on Motion to Amend), *citing*, *Nicholas v. Wallenstein*, 266 F.3d 1083, 1087 (9th Cir.2001) ("Under the PDA, good faith was a complete defense… As Graber had consulted county counsel, there was no doubt that he had acted in good faith. None of the plaintiffs' state law claims survived this conclusion."); *Levine v. City of Bothell*, No. 2:11-CV-1280-MJP, 2012 WL 2567095, at *3 (W.D. Wash. July 2, 2012) (PUD records were responsive to a PRA request and, therefore, immunity applied). "The standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose." *Whaley v. DSHS*, 90 Wash.App. 658, 669 (1998). There is absolutely no evidence that Ms. Swenson or any other University employee did not act in good faith when responding to the **Betz** request (PR-2015-570) or any other PRA request.

Prior to the Betz request, Defendant Swenson had no idea who either Ms. Dalessio or Mr. Betz were. *Swenson Dec.*, at ¶ 5. The requests were one among hundreds the OPR receives each year. She is also not aware, even to this day, of anyone adding, deleting, or altering files in Ms. Dalessio's personnel file. *Id.* at ¶ 3. Thus, Plaintiff's Seventh Claim for "Common Law Tort Public Disclosure of Private Facts" should be dismissed on summary judgment. *See*, *Marthaller v. King Cty. Hosp. Dist. No. 2*, 94 Wash. App. 911, 916, 973 P.2d 1098, 1101 (1999) ("Although good faith is usually a question of fact, it may be resolved on summary judgment where no reasonable minds could differ on the question.")

Additionally, Defendants acted with a lawful purpose. "The PRA is a strongly worded mandate for broad disclosure of public records. Passed by popular initiative, it stands for the proposition that 'full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.'" *Neighborhood All.*, 172 Wash.2d at 714–15. Neither

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 17
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

Ms. Swenson nor any other University employee had any other purpose to request and release any records but in an effort to comply with the law as part of her job duties.[7]

2.    Public Disclosure of Private Facts Requires Publication to a Third Party.

The tort of invasion of privacy requires evidence that the matter publicized (1) would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. *Reid v. Pierce County,* 136 Wash.2d 195, 205, 961 P.2d 333 (1998) (citing Restatement (Second) of Torts, § 652D (1977)); *Levine, supra.*  "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *K.S. v. City of Puyallup*, No. 13-5926 RJB, 2014 WL 3056817, at *3–5 (W.D. Wash. July 7, 2014), citing *Restatement, supra.*  Further, the nature of "private facts" that must be disclosed to give rise to such a claim are limited.  *See, e.g.*, *Hearst Corp. v. Hoppe*, 90 Wash. 2d 123, 136, 580 P.2d 246, 253 (1978) (highly private information generally protected includes sexual relations, humiliating illness, intimate letters, etc.); *Predisik v. Spokane Sch. Dist. No. 81*, 182 Wn.2d 896 (2015) (PRA permits withholding only of deeply personal facts).  State law requires the PRA provisions to be interpreted broadly and exemptions narrowly. *Koenig v. Thurston Cty.*, 175 Wn.2d 837, 842 (2012).

It is undisputed that Defendant Swenson was the only individual who released documents to any third party outside the University (Betz). Thus, even absent immunity, all claims for invasion of privacy against the remaining Defendants are simply not actionable. *See, K.S.*, 2014 WL 3056817 at 4 (nor does the act of employee's screening allegedly "private" information for purpose of responding to public records requests constitute an invasion of privacy).[8]  Even Ms. Swenson's accidental disclosure to Mr. Betz of Ms.

---

[7] The Public Records Act does place obligations on public agencies to promptly and thoroughly provide responses to all public records requests under threat and assessment of penalties for failure to meet the standards. *See, e.g.*, RCW 42.56.550.

[8] "Intracorporate communications, made in the ordinary course of business, are not published for the purposes of defamation. *Scheidler v. Ellerby*, 169 Wash. App. 1020 (2012) (intra-corporate communication in the ordinary course of business were not publicated), citing *Pate*, 77 Wash.2d at 821, 467 P.2d 301; *Prins v. Holland–N. Am. Mortg. Co.*, 107 Wash. 206, 208, 181 P. 680 (1919).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 18
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

Dalessio's SSN does not meet the threshold of disclosing private information about Plaintiff to "the public at large" in a manner that establishes an actionable invasion of privacy. *Id.* There is no evidence her SSN was ever posted publicly or otherwise disseminated.

**C.  Discretionary Immunity Bars State Law Claims Based on Development of the PRA Process Itself.**

Although Ms. Dalessio fails to specifically identify any allegedly improper actions by Ms. Saunders, her  allegations against Saunders appear to stem from her involvement in developing systems or procedures  for processing and tracking PRA requests, including locating and collecting records from other departments throughout the extensive  University system. *Dkt. 82* at ¶ 152.  Such claims are barred by discretionary immunity.  Washington courts have repeatedly found that "in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability. In other words, it is not a tort for government to govern." *Avellaneda v. State*, 167 Wash. App. 474, 480, 273 P.3d 477, 480 (2012) *(citing Evangelical Un. Breth. Ch. of Adna v. State*, 67 Wash.2d 246, 407 P.2d 440 (1965)).

The PRA requires that public agencies search all places reasonably calculated to locate where responsive documents may be located. *Neighborhood All.,* 172 Wash.2d at 720. Any acts or decisions by OPR Director Eliza Saunders or OPR Compliance Officer Perry Tapper, regarding, for example, developing a system for OPR to coordinate with the vast array of University departments to identify, locate, and collect documents pursuant to the requirements of the Public Records Act, as well as how to track requests, evaluate for potential exemptions, and prepare redactions involves the exercise of basic policy evaluation, judgment, and expertise necessary to implement programs to meet the statutory requirements of the PRA with available resources and infrastructure in an enormous public agency like the University of Washington.  Public officials necessarily weigh the risks, benefits, logistics and resources when developing such a system for responding to PRA requests based on the public official's knowledge and expertise with the goal of complying with the PRA. *See, Saunders*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 19
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

1   *Dec.;* Dkt. 106 *(Order).*

2   **D.    Ms. Dalessio's Request for Injunctive Relief against Individual Defendants Should be Dismissed.**

3       Ms. Dalessio's eighth cause of action seeks an order enjoining the sixteen individual

4   Defendant employees from "the release of public records" disclosing "Dalessio's identifying

5   information" based on Article 1, Section 7 of the Washington State Constitution. Dkt. 81,

6   ¶201-203.  To receive an injunction, Ms. Dalessio must show "(1) that she has a clear legal

7   or equitable right, (2) that she has a well-grounded fear of immediate invasion of that right,

8   and (3) that the acts complained of are either resulting in or will result in actual and substantial

9   injury to him." *WFSE, et. al.  v. State*, 99 Wash. 2d 878, 888, 665 P.2d 1337, 1343 (1983).  It

10  is not clear exactly what injunctive relief Ms. Dalessio seeks, but she is not entitled to further

11  redaction than the PRA permits.[9]  Not only does she not have a legal or equitable right, but

12  the University has an obligation to redact or omit only as required or permitted by law.  In

13  addition, Ms. Dalessio has no "well-grounded fear" of immediate invasion of her right to

14  privacy or substantial injury.  One person has requested her records in almost 15 years—the

15  rest of the requests for her records have been by Ms. Dalessio herself, and unredacted records

16  were released to her because there are no privacy rights at issue to release information about

17  one's self to one's self.

18      Ms. Dalessio also may not request prospective injunctive relief broadly requesting

19  Defendant to "follow the law." *See Stetson v. Washington Dep't of Corr.*, No. C15-5524 BHS-

20  KLS, 2017 WL 2485198, at *6 (W.D. Wash. Apr. 7, 2017), *report and rec. adopted*, No.

21  C15-5524 BHS, 2017 WL 2483528 (W.D. Wash. June 8, 2017) ("The scope of the remedy

22  requested is so broad—it amounts to a decree that all of the defendants " follow the law"—

23  that it renders itself meaningless and unenforceable.").  Plaintiffs are also precluded from

24  requesting injunctive relief in a federal court to compel state officials to follow state law.

---

[9] The University would certainly voluntarily agree to redact the SSN that was unintentionally missed if another third-party request for her records was made, and clearly attempted to do so here.  Dkt. 30, 30-1, 30-2.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 20
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*Oregonians for Account. v. Bradbury*, No. 04-1170-KI, 2004 WL 1969405, at *2 (D. Or. Sept. 2, 2004) (citing *Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984)). Therefore, injunctive relief is not appropriate here.

**E.      Ms. Dalessio's Request for Declaratory Relief Against Individuals Should be Dismissed.**

Ms. Dalessio seeks declaratory relief under 28 U.S.C. § 2201 against individual Defendants on the theory that they each violated her Fourteenth and Fourth amendment rights. Dkt. 81, ¶167-170.[10]  Federal courts should consider "whether a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations between the parties, and whether it will terminate the controversy." *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) (declaration action must be discrete and separate from underlying claims and of "vital importance").

Relief under the Declaratory Judgment Act is discretionary and claims for declaratory relief should be dismissed when they are substantively duplicative of existing claims or affirmative defenses. *Englewood Ldg. Inc. v. G & G Coachella Inv., LLC*, 651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (Dismissing counterclaims for declaratory relief that requested same relief as affirmative defenses).  Put otherwise, a "[d]eclaratory judgment's purpose is to declare future rights of a party and not to remedy past harms." *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-CV-00513-LRH, 2013 WL 4520855, at *1 (D. Nev. Aug. 26, 2013) (Unpublished).

Ms. Dalessio's requests for declaratory relief seeks only to remedy alleged *past* harms by requesting (1) an order stating Defendants violated her Fourteenth/Fourth Amendment rights, (2) equitable relief in the form of having her records deleted from her "file", (3) training/accountability for University employees, and (4) attorney fees. *Dkt. 82*, at ¶¶ 166-174.  These requests are redundant, and duplicate the relief sought in claims 1, 3, 6, 7 and 8.

---

[10] She also seeks a court order to "hav[e] her records deleted from her file" and to require training of University staff. Dkt. 81, ¶171-173.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 21
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1   Dkt. 82. Nor is declaratory relief warranted on the merits, and 42 U.S.C. 1988 or 28 U.S.C.

2   1927 do not provide for attorney fees.

3   **F.    All Claims Against Eliza Saunders in Her Official Capacity Should be Dismissed as Well.**

4       For the substantive reasons discussed above, all claims against Eliza Saunders in her

5   official capacity should similarly be dismissed as they are unsupported by law and fact.  Even

6   if Plaintiff's allegations could establish a potential claim, Ms. Saunders is entitled to

7   discretionary immunity.   Finally, there is no evidence to support the "intentional act"

8   requirement to establish a constitutional violation.   Ms. Saunders should be dismissed

9   entirely.

10  **G.    Ms. Dalessio's Breach of Contract Claim Against the University of Washington Should be Dismissed as a Matter of Law.**

11

12      The only claim against the University itself is for breach of a 2003 settlement

13  agreement related to Ms. Dalessio's separation from her employment 15 years ago.  Dkt. 81,

14  ¶¶ 184-190; Dkt. 30-2, p. 112-114 (Agreement).  Ms. Dalessio claims the University failed

15  to "remove certain documents" from her 1) official personnel file and from 2) all Department

16  of Laboratory Medicine files." *Id.*, ¶185. She claims she found said documents contained in

17  documents produced <u>to her</u> (not Betz) in response to PR-2016-000760 in February of 2017.

18  *Id.*, ¶187, ¶47-52.  Her contract claim is barred by the statute of limitations and otherwise not

19  actionable.

20      1.    <u>The Breach of Contract Claim is Barred by the Statute of Limitations.</u>

21      "The statute of limitations for an action upon a written contract is six years… Statutes

22  of limitations do not begin to run until a cause of action accrues." *Kinney v. Cook*, 150 Wash.

23  App. 187, 192–93, 208 P.3d 1, 4 (2009) (citing *1000 Virginia Ltd. P'ship v. Vertecs Corp.*,

24  158 Wash.2d 566, 575, 146 P.3d 423 (2006); RCW 4.16.005).   Both *Kinney* and *1000*

25  *Virginia Ltd.* declined to expand any sort of "discovery rule" to contract claims beyond

26  construction industry. *Id*. The contract at issue was executed in 2003 (Dkt. 81, ¶91-92), and

27  thus claims arising after 2009 are barred by RCW 4.16.005. This action was filed eight years

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 22
2:17-cv-00642-MJP

Keating, Bucklin & McCormack, Inc., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE: (206) 623-8861
FAX: (206) 223-9423

1  after the statute ran and thus should be dismissed. Dkt. 1.1.

2       2.    <u>Ms. Dalessio Cannot Establish an Actionable Breach or Damages.</u>

3       Ms. Dalessio does not state which, if any, documents were produced to Mr. Betz that

4  allegedly should have been removed in 2003.  Plaintiff has had copies of the Betz request

5  production, responses to her PRA requests, and transmittal documents demonstrating where

6  certain files and documents were located in 2015-2017 for production. *See*, Dkt.113, 113-12,

7  p. 8-17 (discovery responses); Dkt. 108-3 (Supp. Initial Disclosures).  She bears the burden

8  of proving which documents were not removed from which files in a manner that breaches

9  the contract and caused recoverable damages.[11]

10       Ms. Dalessio asserts she suffered "actual and foreseeable damages" as a result of a

11  breach, but provides no evidence of such. Dkt. 81, ¶189-190. Non-economic or emotional

12  distress damages are not recoverable on a contract claim. *Gagliardi v. Denny's Rest., Inc*.,

13  117 Wn.2d 426, 815 P.2d 1362 (1991); *Repin v. State*, 198 Wash. App. 243, 392 P.3d 1174,

14  *rev. den*.  188 Wn.d 1023 (2017).  "A verdict in favor of a plaintiff cannot be made to rest

15  upon mere speculation or conjecture, and the evidence must present something more than a

16  mere possibility that an injury may have occurred." *Geisness v. Scow Bay Pkg. Co.*, 16 Wash.

17  2d 1, 14, 132 P.2d 740, 746 (1942).  No such evidence exists, and thus the breach of contract

18  claim fails.[12]

                    **VI.**     **CONCLUSION**

19

20       In summary, all of Ms. Dalessio's claims should be dismissed for the following

21  reasons:

22

23

24  [11] FRCP mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

25  [12] To the extent Ms. Dalessio's breach of contract claim against the University is based on "any loss or damage based up the release of a public record," it would also be barred in its entirety by the immunity provided to both

26  employees <u>and</u> "public agenc[ies]" in RCW 42.56.060.  *See*, Dkt. 81, ¶94-97 (Ms. Dalessio alleges her privacy was harmed by the production of certain documents in response to PRA request that she alleges should not have

27  been in her files based on 2003 contract).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 23
2:17-cv-00642-MJP

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

| Claims[13] | Reason for Dismissal |
|---|---|
| Claim 1: § 1983 Substantive Due Process; Claim 3: § 1983 Fourth Amendment Against Defendants Saunders, Swenson, Tapper, Palmer, and Does 1-12 | Plaintiff is unable to prove any defendant directly and intentionally acted in a manner that violated Plaintiff's constitutional rights.  Plaintiff also cannot establish a constitutional right to the privacy regarding the information she alleges should be protected.  Even if she could meet those requirements, Plaintiff's claims against defendants in their individual capacity are barred by qualified immunity. |
| Claim 4: Declaratory Judgment Pursuant to 28 U.S.C. § 2201 Against Defendants Saunders, Swenson, Tapper, Palmer, and Does 1-12 | Plaintiff's request for declaratory relief is improper in that it is duplicative of Plaintiff's substantive claims.  In addition, Plaintiff's requested relief seeks to remedy past harms, not establish future rights.  Finally, Plaintiff cannot prove any constitutional violation, and therefore declaratory relief is unwarranted on the merits. |
| Claim 6: Breach of Contract Against Defendant University of Washington | Plaintiff's breach of contract claim is barred by the statute of limitations.  In addition, Plaintiff cannot prove she suffered any actual (as opposed to speculative) damages as a result of the alleged breach. |
| Claim 7: Common Law Tort for Public Disclosure of Private Facts Against Defendants Saunders, Swenson, Tapper, Palmer, and Does 1-12 | This claim against all individual defendants is barred by the "Good Faith Immunity" doctrine, RCW 42.56.060.  Any claim against the individual defendants, including Eliza Saunders in particular, for creating the University's PRA response structure, is also barred by the discretionary immunity doctrine.  Finally, Plaintiff cannot meet the publication requirement. |
| Claim 8: Injunctive Relief Against Defendants Saunders, Swenson, Tapper, Palmer, and Does 1-12 | Plaintiff cannot show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of her alleged right, or (3) that the acts complained of are either resulting in or will result in actual and substantial injury to her.  In addition, Plaintiff cannot ask for broad prospective relief that Defendants "follow the law," and cannot ask a federal court to instruct a state agency to follow state law. |

DATED:  October 25, 2018

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: /s/ Jayne L. Freeman
Jayne L. Freeman, WSBA #24318
Special Assistant Attorney General for Defendant

801 Second Avenue, Suite 1210

---

[13] Claims 2 and 5 in the First Amended Complaint, *Dkt. 82*, were stricken pursuant to this Court's order.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 24
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Seattle, WA  98104-1518
Phone: (206) 623-8861
Fax:     (206) 223-9423
Email: jfreeman@kbmlawyers.com

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 25
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following:

**Attorneys for Plaintiff**

Mr. Joseph Thomas
14625 SE 176th Street, Apt. N-101
Renton, WA 98058-8994
Telephone:  (206) 390-8848
Email:  joe@joethomas.org

DATED:  October 25, 2018

/s/ LaHoma Walker
LaHoma Walker, Legal Assistant
801 Second Avenue, Suite 1210
Seattle, WA  98104-1518
Phone: (206) 623-8861
Fax:    (206) 223-9423
Email: lwalker@kbmlawyers.com

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DISMISSAL OF PLAINTIFF'S FIRST AMENDED
COMPLAINT - 26
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104-1518
PHONE:  (206) 623-8861
FAX:  (206) 223-9423