1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       WESTERN DISTRICT OF WASHINGTON

10

11    JULIE DALESSIO, an individual,              No.  2:17-cv-00642-MJP

12                   Plaintiff,                    PLAINTIFF'S RESPONSE TO
                                                   DEFENDANTS' MOTION FOR SUMMARY
13           v.                                    JUDGMENT

14    UNIVERSITY OF WASHINGTON, a
      Washington Public Corporation; Eliza
15    Saunders, Director of the Office of Public
      Records, in her personal and official
16    capacity; Alison Swenson, Compliance
      Analyst, in her personal capacity; Perry
17    Tapper, Public Records Compliance          **Note on Motion Calendar November 16, 2018**
      Officer, in his personal capacity; Andrew
18    Palmer, Compliance Analyst, in his
      personal capacity; John or Jane Does 1-12,
19    in his or her personal capacity,

20                   Defendant.

21

22

23

24

25

26

27

28    Response to Motion for Summary Judgment            1              Law Office of Joseph Thomas
      Case 2:17-cv-00642                                                14625 SE 176th St., Apt. N101
                                                                        Renton, Washington
                                                                        Phone (206)390-8848

Ms. Dalessio responds to Defendants' Rule 56 motion for summary judgment.

## I.        INTRODUCTION

This case is about the unauthorized release of personally identifiable private documents including protected health information, by the Defendants University of Washington et al., acting under color of state law, in a continuing practice in violation of constitutional privacy rights.

Many of Defendants arguments for this motion for summary judgment are not supported by any evidence in the record.  As the movant in this motion for summary judgment, Defendants have the burden pursuant to Local Court Rule 7(b)(1) "i[f] the motion requires consideration of facts not appearing of record, the movant shall" present evidence in "support of the motion." LCR 7(b)(1).  *Rocafort v. IBM Corp.*, 334 F. 3d 115, 122 (1st Cir. 2003) (stating "a party has a duty to incorporate all relevant arguments in the papers that directly address a pending motion" and this duty "includes explaining arguments squarely and distinctly").

## II.       FACTUAL BACKGROUND

The University of Washington's ("UW") Office Public Records and Open Public Meetings ("OPR") oversees UW's compliance with the Washington Public Records Act ("PRA"), Chapter 42.56 RCW.  Dkt. 120 at 1-2 ¶ 3; Dkt. 82 at 5 ¶ 26.  Defendant Eliza Saunders is the Director of UW's OPR.  Dkt. 120 at 1-2 ¶¶ 2-3.  UW's Public Records Officer ("PRO") is the director of the OPR at UW.  WAC 478-276-060.

Plaintiff, Dalessio was employed by the UW as a Clinical Technologist in the Department of Laboratory Medicine from 1987 until her resignation in 2003.  Dkt. 119 at 1.

**David Betz's Public Records Act Request**

On September 16, 2015, Plaintiff Julie Dalessio's neighbor Davis Betz made a request under the PRA to Defendant UW's OPR for "all records maintained by the University of Washington relating or pertaining to Julie Dalessio." Dkt. 82 at 5, ¶ 29.

On or about November or December 2015, UW OPR employee Defendant Alison Swenson mailed compact discs containing electronic copies of responsive records to Mr. Betz. Dkt. 30 at 2-3.

The responsive documents produced to Mr. Betz by Ms. Swenson are already filed in the

2

record.  Dkt. 30-1; *Id.* 30-2; *Id.* 30-3; *Id.* 30-4; *Id.* 30-5; *Id.* 30-6.  These documents contain unredacted information concerning Plaintiff's protected health information under the Health Information Portability and Accountability Act ("HIPAA"), protected health information protected under the Americans with Disabilites Act ("ADA"), and her social security number ("SSN") among other private and personal information that exempt from production under the PRA.

**Eliza Saunders**

Defendant Eliza Saunders is the PRO for UW because she is the Director of the OPR at UW.  Dkt. 120 at 1-2, ¶¶ 2-3; WAC 478-276-060.  As the PRO, Ms. Saunders oversees UW's compliance with the PRA.  RCW 42.56.580(1).

**Perry Tapper**

In the request summary report for PR 2015-00570, it identifies PMT as reviewing the first and second stages of the production of documents.  Dkt.  30-7 at 3 (stating "sent stage 2 to PMT for review").  Defendant Tapper consulted with Defendant Swenson "regarding some of the issues related to [PR 2015-00570] as is typical with many requests."  Dkt. 113-12 at 11.

**Alison Swenson**

Defendant Swenson served as the point of contact for producing documents in PR 2015-00570 to Mr. Betz [Dkt. 30-5 at 2-3], and PR 2016-00218 to Ms. Dalessio [Dkt. 30-8 at 3].  Ms. Swenson reviewed documents for exemption concerning PR 2015-00570.  Dkt. 30 at 2-3.

**Andrew Palmer**

Defendant Palmer served as the point of contact in producing PR 2016-00760 to Ms. Dalessio. Dkt. 29-1 at 3-4.

### III.      LEGAL STANDARD

"In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F. 3d 1099, 1102 (9th Cir. 2000).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden

3

1  of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F. 3d 1099, 1102-

2  03 (9th Cir. 2000).

3       Although both the "clearly established right" and "reasonableness" inquiries are questions

4  of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be

5  resolved at summary judgment on qualified immunity grounds.  *See Lolli v. County of Orange*,

6  351 F.3d 410, 421 (9th Cir. 2003); *Wilkins v. City of Oakland*, 350 F.3d 949, 955-56 (9th Cir.

7  2003); *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d

8  1178, 1183-85 (9th Cir. 2003).

9                    **IV.    ARGUMENT**

10      **1.   As a matter of law, this Court cannot grant summary judgment because there are**

11           **many disputed issues of material fact**

12      All material facts alleged by the nonmoving party are assumed to be true, and all

13  inferences must be drawn in that party's favor. *Humann v. City of Edmonds*, C13-101 MJP, at *3

14  (W.D. Wash. Aug. 19, 2014) (Pechman, J.) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088

15  (9th Cir. 2008)).

16      "[A]" party seeking summary judgment" has the burden to "demonstrate the absence of a

17  genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  "If a genuine

18  issue of material fact exists that prevents a determination of qualified immunity at summary

19  judgment, the case must proceed to trial."  *Serrano v. Francis*, 345 F. 3d 1071, 1077 (9th Cir.

20  2003).

21      First, it is a disputed issue of material fact that Defendant Saunders is the PRO for UW

22  pursuant to RCW 42.56.580(1).  Defendants do not identify who is the PRO for UW pursuant to

23  RCW 42.56.580(1).  Defendants identify in its documentation provided in initial disclosures that

24  Defendant Saunders is the statutorily mandated PRO because she is the Director of the OPR.  Ex.

25  A at 7.  The plain language of the PRA mandates that each agency have its own PRO, pursuant to

26  RCW 42.56.580(1).  UW's self-created policies, codified in the Washington Administrative

27  Code, unequivocally states that UW's Public Records Officer ("PRO") is the director of the OPR

28  at UW.  WAC 478-276-060. Ex. B. This is an issue of material fact in this case because there is

1    evidence that Defendant Saunders is the PRO and it would implicate Defendant Saunders in her

2    official capacity for every claim except for the breach of contract.

3         Second, there are disputed issues of material fact whether Defendants produced protected

4    health information,[1] as defined by the HIPAA, about Plaintiff in response to David Betz' PRA

5    request.   Dkt. 82 at 6-7, ¶ 36; Dkt. 107 at 4, ¶ 36.  The evidence is already in the record

6    identifying Plaintiff's protected health information that was produced pursuant to the PRA to

7    David Betz. Dkt. 34 at 69-77 (identifying Plaintiff's request for accommodations under the ADA

8    health care provider document, and temporary accommodations letter).  Defendants argue as a

9    matter of fact in their summary judgment motion that only Plaintiff's SSN was wrongfully

10   produced by Defendants.  Dkt. 119 at 2; *Id.* at 3.  This is a material fact because it goes to whether

11   these documents are private constitutionally, whether the Defendants acted lawfully, reasonably,

12   or outside the scope of their duties in releasing these records.

13        Third, there are disputed issues of material fact whether Defendants produced protected

14   health information,[2] as defined by the HIPAA, about third parties in response to Plaintiff's PRA

15   request PR 2017-00359 as alleged in the complaint.[3]   Dkt. 82 at 14-15, ¶ 83; Dkt. 107 at 10, ¶ 83.

16   The evidence is already in the record identifying third parties' protected health information that

17   was produced pursuant to the PRA to Plaintiff. Dkt. 37-5 at 3 (identifying an Activity Prescription

18   Form under the ADA with the worker's name, doctor's name, L&I claims number, and

19   diagnosis); *Id.* at 20 (identifying a recommendation for an accommodation under the ADA from

20   the UW Disabilities Services Office and is prohibited from "disclosure, copying, distribution");

21   *Id.* at 22 (identifying a document marked confidential that is an Activity's Prescription Form

22   made under the ADA with the requestor's name, doctor's name, and prescription un-redacted).

23   Defendants do not address in their motion for summary judgement that protected health

24   information about third parties was produced to Plaintiff.  This is a material fact because it goes

25

26   [1] 45 CFR § 160.103 (defining protected health information).
     [2] 45 CFR § 160.103 (defining protected health information).

27   [3] These documents were submitted into the record by Plaintiff when she was acting as her own attorney in this
     lawsuit.  Out of an abundance of caution Plaintiff personally redacted the names of clients of UW's Disability
     Services Office.  Anything scribbled out in pencil, and not a neat computerized block, was redacted by Plaintiff and
28   not Defendants.

to whether these documents are private constitutionally, whether the Defendants acted lawfully,
reasonably, or outside the scope of their duties in releasing these records.

Fourth, it is a disputed issue of material whether Defendants have a pattern and practice of
disclosing documents containing individuals' private information such as: individuals' protected
health information under both HIPAA and ADA, as well as individuals' SSNs.  Defendants only
state as a matter of fact of producing Plaintiff's SSN a single time.  Defendants fail to address the
fact that it on multiple occasions that constitute a pattern and practice released to unauthorized
third parts, under the PRA, individuals' private information such as: individuals' protected health
information under both HIPAA and ADA, as well as individuals' SSNs.  Dkt. 34 at 69-77
(identifying ADA protected health information about Plaintiff); Dkt. 37-5 at 3 (identifying ADA
protected health information about a third party); *Id.* at 20 (identifying ADA protected health
information about a third party); *Id.* at 22 (identifying ADA protected health information about a
third party); Dkt. 38 at 22-25 (filed under seal as "00021-A1496195") (identifying ADA
protected health information about Plaintiff); *Id.* at 4-13 (filed under seal as "00004-A1496190")
(identifying ADA protected health information about Plaintiff); *Id.* at 28 (filed under seal as
"00028-A1496199") (identifying ADA protected health information about Plaintiff).  *See
generally* Julie Dalessio Declaration.  Establishing a pattern and practice of unlawful disclosure
of private information is a material fact at issue in this case as contravenes Defendants' defense
that the wrongful disclosure was negligent because it was a one-time issue and isolated acts of
negligence do not rise to a cause of action under the Due Process Clause of the United States
Constitution.

Fifth, it is a disputed issue of material fact whether there are policies and procedures
specifically adopted by UW that would prohibit the private information in the production of
documents, specifically: personally identifiable medical information, personally identifiable
SSNs, personally identifiable employee personnel files.   Defendants do not identify any policies
or procedures in the answer to the complaint or in their motion for summary judgment that restrict
the disclosure of private information.  It is fact UW has policies and procedures that restrict the
production of private information.  Exhibit C to this response to the motion for summary

judgment is a document produced by Defendants to Plaintiff's first set of discovery requests. The document is UW's administrative policy statement regarding the departmental guidelines for the release of records.  This document identifies restrictions on employee personnel files and student records governed by the Family Education Rights and Privacy Act ("FERPA").  Ex. C.  This is an issue of material fact in this case because it goes to whether Defendants were acting as reasonable officials within the scope of their job.

Sixth, it is a disputed issue of material fact what each of the Defendants state of minds were at the time Defendants produced documents responsive to each of the Public Records Act requests alleged in the complaint.  Defendant Saunders' job description, produced by Defendants in initial disclosures, identifies that one of her main job functions is to avoid lawsuits.  Ex. A at 9 (identifying the Public Records Officer must have background in "risk management").  Under the PRA there is only liability for wrongfully withhold records under the PRA.  There is no penalty under the PRA for over-disclosure of records, including unauthorized disclosures of personal information.  Therefore, a mind set on avoiding penalties for wrongful withholding of public records, focusing only on timely production of documents, might put in motion actions that lead to constitutional violations.  Subordinate employees might participate in these actions, or even develop their own procedures (such as cutting corners to meet the goals and handle their workload), even if they have reason to believe that these actions could lead to privacy violations.  This mindset would likely manifest a deliberate indifference to employee privacy rights.  Defendant Saunders' mindset is a deliberate indifference to privacy because an over-disclosure of private records does not violate the PRA to trigger the statutory penalty and attorney's fees.  This is an issue of material fact in this case because it goes to whether Defendants Saunders' actions were reasonable to protect Ms. Dalessio's constitutional privacy rights.

Seventh, it is a disputed issue of material fact whether Defendants are qualified and well-trained for their jobs.  Defendants argue that each individually named Defendant performed his or her job "in an effort to carry out the mandates of the PRA."  Dkt. 119 at 15.  The PRA mandates designated PROs go through training within ninety days of assuming PRO responsibilities and within every four years thereafter. RCW 42.56.152.  There is no evidence in the record

identifying any of the individually named Defendants job training as PROs, pursuant to RCW 42.56.152.  This is an issue of material fact in this case because for PROs actions to be reasonable, the PRO must be trained pursuant to the mandates of the PRA in RCW 42.56.152.

Eighth, it is a disputed issue of material fact whether Defendants Swenson and Palmer are designated PRO and have the authority to act as a PRO in responding to PRA requests. Defendant Swenson served as the point of contact for the response for PR 2015-00570 [Dkt. 30-5 at 2-3] and PR 2016-00218 [Dkt. 30-8 at 3].  Defendants argue Ms. Swenson also oversaw UW's compliance with the PRA's disclosure requirements by withholding "101 pages of responsive documents from Mr. Betz based on allowable PRA exemptions [Dkt. 30-6] and heavily redacted the 370 pages of documents produced."  Dkt. 119 at 3.  Defendants argue Mr. Palmer "was the person who produced both installments of records to Dalessio" for PR 2016-00760.  Dkt. 119 at 4.  This is an issue of material fact in this case because the plain language of the PRA requires only publicly identified PROs to oversee agency compliance and here neither Ms. Swenson nor Mr. Palmer are publicly identified as PROs pursuant to RCW 42.56.580(1).  *See* WAC 478-276-060 (stating "[t]he university's public records officer is the director of the public records office").  Ms. Swenson's and Mr. Palmer's titles identify them only as Public Records Analysts and neither are publicly identified in the Washington Administrative Code as mandated by RCW 42.56.580(2).

Ninth, it is a disputed issue of material fact whether Defendant Tapper supervised Defendant Swenson in responding to request PR 2015-00570.  Mr. Tapper swears in a declaration to this Court that he did not "personally prepare or process the PR-2015-00570 public records request from Mr. Betz in 2015."  Dkt. at 2, ¶ 6.  In the request summary report for PR 2015-00570, it identifies PMT as reviewing the first and second stages of the production of documents. Dkt. 30-7 at 3 (stating "sent stage 2 to PMT for review").  Defendants argue Ms. Swenson consulted with her supervisor Mr. Tapper Mr. Tapper "regarding some of the issues related to [PR 2015-00570] as is typical with many requests."  Dkt. 113-12 at 11.  This is an issue of material fact because if Mr. Tapper was involved in the production of PR 2015-00570 to Mr. Betz and is part of causation.

Tenth, it is a disputed issue of material fact whether Defendants Swenson's, Palmer's, Tapper's and Saunders' actions were advised or directed by others.  Defendants are silent on the issue of whether Ms. Swenson's, Mr. Palmer's, Mr. Tappers' and Ms. Saunders' actions were advised or directed by others.  Each of the individually named Defendants in this lawsuit are identified in Defendants' "Privilege Log" as parties to communications regarding Ms. Dalessio's public records requests. 133-12 at 34-36, 38. "Defendants' privilege log" supplemented on August 31, 2018 to Plaintiff's First discovery requests (served June 6, 2018) identifies numerous communications regarding Dalessio's public records requests, before the records were produced as PR 2016-00760, and before this lawsuit was filed. Dkt. 113-12 at 34-36, 38.  This is an issue of material fact because it identifies that individuals other than the named Defendants in this lawsuit participated in the private information unlawfully and unconstitutionally produced about Ms. Dalessio and others through the PRA, as alleged in the complaint.

Eleventh, it is a disputed issue of material fact whether Defendants John and Jane Does 1-12 participated in the PRA responses to any of the PRA requests listed in the complaint. Defendants argue that the John or Jane Does 1-12 did not release any of the documents to the public. Dkt. 119 at 8.  The disclosure of protected health information under HIPAA and the ADA is likely to be overseen by the UW Medicine Chief Privacy Officer.  Ex. D at 4.  UW considers SSNs as private information and the wrongful disclosure of SSNs "may result in disciplinary action up to and including termination." Ex. D at 4.  There is nothing known about the John or Jane Does 1-12.  It is unknown what John or Jane Does 1-12 job responsibilities are.  It is unknown whether the John or Jane Does 1-12 were acting outside the scope of their jobs.  It is unknown whether the John or Jane does 1-12 were involved in causation of the records being unlawfully and unconstitutionally produced.  Plaintiff is filing a Rule 56(d) motion to address this issue of disputed material fact.

Twelfth, it is a disputed issue of material fact the harm that can arise from the disclosure of protected health information under either HIPAA or the ADA.  Defendants are silent on whether protected health information under either HIPAA or the ADA was disclosed, even though it was specifically identified in the complaint.  Therefore, Defendants are also silent on the

9

1   harms of the disclosure of health information. The state of Washington specifically finds that

2   "[h]ealth care information is personal and sensitive information that if improperly used or

3   released may do significant harm to a patient's interests in privacy, health care, or other interests."

4   RCW 70.02.005(1).[4]  There are instances where the documents should be withheld or redacted

5   before they leave that particular UW department to the UW OPR.  HIPAA it is a violation for a

6   person to knowingly "disclose[ ] individually identifiable health information to another person."

7   42 U.S.C. § 1320d–6(a)(3).  The ADA requires that medical records be kept separately from

8   nonconfidential information, and that access to confidential files be limited.  42 U.S.C. §

9   12112(d)(3)(B); 42 U.S.C. § 12112(d)(4)(C).  "One can think of few subject areas more personal

10  and more likely to implicate privacy interests than that of one's health or genetic make-up."

11  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F. 3d 1260, 1269 (9th Cir. 1998).  This

12  is an issue of material fact because the harm from the disclosure of the health information creates

13  the constitutional violations of the Fourth and Fourteenth Amendments to the United States

14  Constitution.

15          Thirteenth, it is a disputed issue of material fact whether Defendant UW breached the

16  Settlement Agreement.  Defendants argue that Ms. Dalessio cannot prove a breach of contract.

17  Dkt. 119 at 22-23.  However, but for the breach of contract, the documents listed in the

18  Settlement Agreement [Dkt. 30-3 at 2, ¶ 2] would not have existed to be produced in response to

19  PRA requests.  Dkt. 30-2 at 91, 93 (PR 2015-00570).  Dkt. 37-4 (PR 2016-00760).   Documents

20  30-2 at 91 and 93 were attachments to the letter from Defendant UW recommending Ms.

21  Dalessio's suspension without pay.   Dkt. 30-3 at 2, ¶ 2.  If Defendant UW had performed its

22  contractual duty under the Settlement Agreement these documents would have been removed

23  from all UW files and would not have been able to be produced under the PRA because they

24  would not have existed.  This is an issue of material fact because since these documents exist in

25  the public record it is prima facie evidence that Defendant UW breached its contractual duty to

26  remove these documents from all UW files.

27  _____

[4] Statutes are important to this Court's determination of what privacy Ms. Dalessio is expected to have.  "But the
28  statute is of relevance in determining what privacy. . . public personnel expected to have."  *Nicholas v. Wallenstein*,
266 F. 3d 1083, 1088 (9th Cir. 2001).

**2.   Plaintiff properly pled the elements of a 42 U.S.C. § 1983 lawsuit**

Defendants wrongfully argue that under 42 U.S.C. § 1983 a "a plaintiff must prove that individual directly and intentionally violated her rights." Dkt. 119 at 6.  This is a material misrepresentation to this court about the elements of a 42 U.S.C. § 1983 lawsuit and is not well-grounded in law or fact as Rule 11 requires.

To make the prima facie case in a 42 U.S.C. § 1983 lawsuit courts require plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see also Pistor v. Garcia*, 791 F. 3d 1104, 1114 (9th Cir. 2015).  Additionally, 42 U.S.C. § 1983 lawsuits "contain[ ] no independent state-of-mind requirement." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (citing *Parratt v. Taylor*, 451 U. S. 527 (1981)).

Plaintiff meets the first element because Defendants have admitted they acted under the color of state law.  Plaintiff pled in the complaint in numerous areas that Defendants were acting under the color of state law and Defendants without qualification admitted these allegations.  *See* Dkt. 82 at 18, ¶ 100; Dkt. 107 at 12, ¶ 100; Dkt. 82 at 22, ¶ 149; Dkt. 107 at 14, ¶ 149.

Plaintiff meets the second element because Plaintiff properly alleged that specifically named Defendants deprived her of her right to information privacy under the Fourteenth Amendment and her right to privacy by an unconstitutional search and seizure under the Fourth Amendment. Dkt. 82 at 17-20 (stating First Cause of Action Fourteenth Amendment); Dkt. 82 at 21-23 (stating Third Cause of Action Fourth Amendment).

There is no pleading requirement as to intent.  Defendants cites to *Daniels v. Williams* to establish the pleading standard for a 42 U.S.C. § 1983 lawsuit.  But the second sentence of the *Daniels* case states that there is no state of mind requirement in 42 U.S.C. § 1983 lawsuits. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (citing *Parratt v. Taylor*, 451 U. S. 527 (1981)). Defendants make a material misrepresentation and mislead this tribunal by stating Ms. Dalessio had to plead a state of mine, such as intent, to make a prima facie case under 42 U.S.C. § 1983. Even this Court's own precedent identifies to establish personal liability under a section 1983 action "simply by showing that the official acted under color of state law in deprivation of a

1    federal right." *Eden v. Washington State Patrol*, No. 05-1091 MJP (W.D. Wash. January 03,

2    2006) (quoting *Romano v. Bible*, 169 F.3d 1182, 1185-86 (9th Cir. 1999)).

3        As a matter of law, Plaintiff properly pled the required elements of a 42 U.S.C. § 1983

4    claim.  This court's analysis need not go any further on the issue of the pleading standards.

5        **3.  Qualified Immunity Fails on the Merits**

6            **A.      There is a Clearly Established Right to Privacy Protecting the**

7                      **Disclosure of Medical Information and Social Security Numbers**

8        The rights to privacy asserted by Ms. Dalessio in this lawsuit under the Fourth and

9    Fourteenth Amendments to the United States Constitution are clearly established by the United

10   States Supreme Court.  As the privacy rights asserted by Ms. Dalessio are clearly established,

11   Defendants claim to qualified immunity fails and this Court must deny Defendants motion for

12   summary judgment.

13       For a right to be clearly established in terms of qualified immunity "[t]he contours of the

14   right must be sufficiently clear that a reasonable official would understand that what [the official]

15   is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Hope v.*

16   *Pelzer*, 536 U.S. 730, 739 (2002).

17       Once a court determines that "the law was clearly established, the immunity defense

18   ordinarily should fail, since a reasonably competent public official should know the law

19   governing [the official's] conduct." *Harlow v. Fitzgerald*, 457 US 800, 818-19 (1982).

20       As shown below, the rights to privacy, as alleged in this complaint, is clearly established

21   by both the Fourth and Fourteenth Amendments to the United States Constitutions.

22               **i.      Information Privacy – Fourteenth Amendment**

23       The Substantive Due Process of the Fourteenth Amendment has for more than forty (40)

24   years been construed to protect against the disclosure of personal matters.  Due to the lengthy

25   construction of the right to Informational Privacy protecting against the disclosure of medical

26   information and SSNs, the rights were clearly established at the time of the violation.

27       "We have observed that the relevant Supreme Court precedents delineate at least two

28   distinct kinds of constitutionally-protected privacy interests" including "'the individual interest in

1   avoiding disclosure of personal matters.'" *In re Crawford*, 194 F. 3d 954, 958 (9th Cir. 1999)

2   (quoting *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir.1991) (quoting *Whalen v. Roe*, 429

3   U.S. 589, 599-600 (1977))). "One element of privacy has been characterized as "the individual

4   interest in avoiding disclosure of personal matters. . . ." *Nixon v. Administrator of General*

5   *Services*, 433 US 425, 457 (1977) (quoting *Whalen v. Roe*, 429 U. S. 589, 599 (1977)).

6        The dissemination of private information through the PRA or even the Freedom of

7   Information Act ("FOIA") creates a unique situation because as the United States Supreme Court

8   has identified "once there is disclosure, the information belongs to the general public." *Nat'l*

9   *Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  There is no way to un-ring the

10  disclosure bell of the PRA or similarly FOIA.  As stated previously, the harm is already done

11  once the documents become public that is why Washington Legislature a provision of the PRA,

12  RCW 42.56.540, which allows a person or entity to sue to enjoin the release of records under the

13  PRA.  This is likely because the Washington State Legislature recognized the well-established

14  principle in both PRA and FOIA: "An individual's interest in controlling the dissemination of

15  information regarding personal matters does not dissolve simply because that information may be

16  available to the public in some form." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510

17  U.S. 487, 500 (1994).

18       Defendants employ a fundamental misconstruction of how public records work under both

19  the PRA and FOIA when arguing that the disclosure of Ms. Dalessio's personal and private

20  information through the PRA is some sort of de minis violation because only her hostile neighbor

21  Mr. Betz saw the records.  Dkt. 119 at 10-11.

22       As a matter of law this construction of the production of records is wrong.  Once the

23  records were disclosed under the PRA or FOIA "the information belongs to the general public."

24  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  As a matter of law

25  Defendants disclosed Ms. Dalessio's personal and private information to the general public

26  regardless of who the documents were produced to.  Therefore, Defendants produced Ms.

27  Dalessio's medical information and SSN to the general public.

28       Then as a matter of fact, it is unknown whether more people than Mr. Betz requested and

13

received under the PRA the personal and private information about Ms. Dalessio. The record is absent of any evidence proving that Mr. Betz was the only person to ever receive personal and private information about Ms. Dalessio through PRA requests to the UW OPR.

### (a).   Medical Information

There is a clearly established right to privacy in an individual's medical records because of the inherently private nature of medical information, and as stated above, once the documents become public the documents remain public documents.

"The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality." *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F. 3d 1260, 1269 (9th Cir. 1998); *Doe v. Attorney General of US*, 941 F. 2d 780, 795-96 (9th Cir. 1991) (stating "that medical information was encompassed within the first privacy interest related to disclosure of personal matters"); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir.1980) (stating "[t]here can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection"); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n. 9 (9th Cir.1976) (right to privacy encompasses doctor-patient relationship)).

Defendants even admit there is a right to privacy in medical information because the disclosure was as "inadvertent mistake." Dkt. 119 at 11. The record is absent of Defendants providing any evidence that this an inadvertent mistake. In her declaration in Dkt. 30 in the record, Defendant Swenson does not admit that she made a mistake or anything that resembles a mistake when producing documents for PR 2015-00570 to Mr. Betz about Ms. Dalessio. The same holds true for Defendant Tapper in his declaration in Dkt. 121. Mr. Tapper does not mention that he has ever made a mistake on the job, or in supervising Ms. Swenson or Defendant Palmer that either of them ever made a mistake. Lastly, it is the same of Defendant Saunders who in her declaration, in Dkt. 120, does not identify either she or any of the employees in UW OPR have ever made a mistake.

Defendants should have known not to produce Ms. Dalessio's medical information. In addition to the case law creating a constitutional right of privacy to medical information, there are

14

a myriad of federal and state laws expressly prohibiting the disclosure of medical information. Medical information is exempted from production by several different statutes as well as binding case law. "Any health care information obtained under this subsection is exempt from public inspection and copying pursuant to chapter 42.56 RCW."  RCW 70.02.050(2)(a).[5]  Also, the federal statute HIPAA, 42 U.S.C. § 1320d–6(a)(3) is violated when a person knowingly "discloses individually identifiable health information to another person."  *See also* 45 CFR § 164.512(a) (stating a covered entity under HIPAA may only disclose protected health information "to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law").  Additionally, the ADA 42 U.S.C. § 12112(d)(3)(B) and 42 U.S.C. § 12112(d)(4)(C) requires that medical records be kept separately from nonconfidential information, and that access to confidential files be limited.

Likewise, Washington State PRA case law clearly identifies that health information is exempt from production under the PRA.  "Even if health care information is held by a public agency (such as a prosecutor's office), the patient does not lose his or her privacy interest in the medical information therein."  *Koenig v. Thurston County*, 287 P. 3d 523, 537 (Wash. 2012).

Any reasonable official would have known that producing an individual's private medical information would violate the individual's right to privacy.

### (b).    Social Security Number

The right to privacy in an individual's social security number is also a clearly established right because of the inherently private nature of SSNs, and as stated above, once SSNs become public the documents remain public documents.

"[T]he indiscriminate public disclosure of SSNs, especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy."  *In re Crawford*, 194 F. 3d 954, 958 (9th Cir. 1999).

Even the Social Security Administration issues a pamphlet on "Identity Theft and Your

---

[5] Health care information is defined as "any information, whether oral or recorded in any form or medium, that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care, including a patient's deoxyribonucleic acid and identified sequence of chemical base pairs. The term includes any required accounting of disclosures of health care information."  RCW 70.02.010(17).

Social Security Number." Ex. E at 1.  The first sentence in the pamphlet unequivocally states "Identity theft is one of the fastest growing crimes in America. A dishonest person who has your Social Security number can use it to get other personal information about you." *Id.* at 2.  The pamphlet goes on to say in enlarged type "Your [SSN] is confidential." *Id.* at 2.   This is the reason why states and local governments protect against the disclosure of SSNs a multitude of laws.

Social security numbers are exempted from production by several different statutes as well as binding case law.[6]  RCW 42.56.230(5) (stating personal information in the context of finances including specifically social security numbers); RCW 42.56.230(7)(a) (stating personal information in the context of identity specifically social security numbers); RCW 42.56.250(4) (stating employment and licensing information held by a public agency, including social security numbers).  There are similar protections on the federal level against the disclosure of SSNs. The Privacy Act of 1974 includes a provision meant to control the collection and dissemination of SSNs by government agencies. *See* 5 U.S.C. § 552a.  The Driver Privacy Protection Act, 18 U.S.C. §§ 2721-23 bars states from disclosing "personal information," including SSNs, contained in motor vehicle licensing records.

Several published PRA appellate cases in Washington State make it abundantly clear that SSNs are not to be disclosed in response to PRA requests.  "It is true that the disclosure of a public employee's Social Security number would be highly offensive to a reasonable person and not of legitimate concern to the public." *PAWS v. UW*, 125 Wn.2d 243, 254 (1994); *Tacoma Public Library v. Woessner*, 951 P. 2d 357, 365 (Wash. Ct. App. 1998) (stating "Washington cases have already recognized that a public employee's social security number, residential address, and telephone number are exempt from disclosure"); *King County v. Sheehan*, 57 P. 3d 307, 319 (Wash. Ct. App. 2002) (stating disclosing "information that would violate the officers' rights of privacy, such as their home addresses, home telephone numbers, social security numbers and similar private information").

---

[6] As this Court's precedence states: "the statute is of relevance in determining what privacy. . . public personnel expected to have."  Nicholas v. Wallenstein, 266 F. 3d 1083, 1088 (9th Cir. 2001).

1    Any reasonable official would have known that producing an individual's SSN would

2  violate the individual's right to privacy.

3                    **ii.      Fourth Amendment Privacy**

4    The same analysis as above holds true for a Fourth Amendment privacy claim.

5    Defendants only argue against the Fourth Amendment by making a conclusory statement

6  that "Nor does any Federal law suggest that such a process to comply with Washington PRA

7  could violate an individual's Fourth Amendment rights against 'unreasonable search and

8  seizure.'" Dkt. 119 at 8.

9    "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

10 Government." *United States v. Arvizu*, 534 US 266, 273 (2002).

11    As a matter of law, the agency must conduct an "adequate search" before producing

12 responsive records to a PRA request.  *Neighborhood Alliance of Spokane Cty. v. Cty. of Spokane*,

13 261 P. 3d 119, 128-29 (detailing the legal standard for an adequate search under the PRA).  As a

14 matter of fact, it begs the question of how documents can be produced to a PRA request if there

15 are is not some kind of a search for documents responsive to the PRA request.

16    The only question that remains is whether the search is reasonable.  A search should not

17 even include any documents that fall under the purview of the either HIPAA or the ADA.  Both

18 HIPAA and the ADA requires documents that are governed by the respective laws to be

19 segregated out from all other documents. The ADA requires in 42 U.S.C. § 12112(d)(3)(B) and

20 42 U.S.C. § 12112(d)(4)(C) that medical records be kept separately from nonconfidential

21 information, and that access to confidential files be limited.  Similarly, HIPAA 42 U.S.C. §

22 1320d–6(a)(3) is violated when a person knowingly "discloses individually identifiable health

23 information to another person."  Also, for HIPAA in 45 CFR § 164.512(a) a covered entity may

24 only disclose protected health information "to the extent that such use or disclosure is required by

25 law and the use or disclosure complies with and is limited to the relevant requirements of such

26 law."  Because the UW is subject to both the ADA and HIPAA concerning Ms. Dalessio records

27 identified in this response to the motion for summary judgment, it is inherently unreasonable to

28 search in an area that is prohibited by law or is precluded to be disclosed by law. No reasonable

1  PRA official would search in a place prohibited by law.

2  Defendants do not argue that the search was reasonable or sanctioned by some type of

3  law.

4  The search was inherently unreasonable as it is prohibited by both the ADA and HIPAA.

5  It is too late for Defendants to argue that it is a reasonable search.

6  **B. Facts Taken in Light Most Favorable to Ms. Dalessio Show a Pattern and**

7  **Practice of Violations of Constitutionally Protected Privacy Rights**

8  The facts show the conduct of Ms. Saunders, Ms. Swenson, Mr. Tapper, and Mr. Palmer

9  violated the constitutionally protected privacy rights of Ms. Dalessio and countless others.

10  When considering whether the facts for constitutional privacy violations this court

11  considers: "the type of record requested, the information it does or might contain, the potential for

12  harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in

13  which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure,

14  the degree of need for access, and whether there is an express statutory mandate, articulated

15  public policy, or other recognizable public interest militating toward access." *In re Crawford*,

16  194 F. 3d 954, 959 (9th Cir. 1999) (citing *Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir.

17  1991) (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3rd Cir.1980))).

18  First, the request was for "all records maintained by the University of Washington

19  relating or pertaining to Julie Dalessio." *C.f.* Dkt. 82 at 5, ¶ 29; Dkt. 107 at 4, ¶ 29.  This is as

20  broad a request as can be made about a subject matter. There is no limitation on the scope and all

21  records means all records.  Mr. Betz requested the kitchen sink on Ms. Dalessio.  Second, there is

22  a big potential for harm in any subsequent nonconsensual disclosure.  Exhibit E to this response

23  to the motion for summary judgment identifies even the Social Security Administration itself

24  identifies the disclosure of a SSN is a gateway to identity theft.  Exhibit F to this motion in

25  response to the motion for summary judgment identifies the Federal Trade Commission states that

26  one of the ways to prevent identity theft is to keep your social security number secure.  Ex. F at 3.

27  Moreover, medical information is inherently private because it leads to injury, embarrassment or

28  stigma.  Ms. Dalessio may be discriminated against because of her now public medical

1   information or may be the cause of embarrassment because of social stigmas.  Third, Ms.

2   Dalessio has already realized the potential for harm in subsequent initial disclosure.  Opposing

3   counsel Ms. Jayne Freeman publicly disclosed all of Ms. Dalessio's private and confidential

4   documents in this lawsuit when she uploaded them via CM/ECF to PACER.  Then anyone with

5   an internet connection could have downloaded the documents.  Defendants' disclosure under the

6   PRA is the proximate cause of Ms. Freeman's subsequent disclosure. Dkt. 36 (motion to seal);

7   Dkt. 51 (order sealing Ms. Dalessio's records).   As for the medical information, as the *Crawford*

8   court identifies that producing private medical information is itself a harm. *In re Crawford*, 194 F.

9   3d 954, 960 (9th Cir. 1999).  Fourth, the harm is done with the disclosure of the SSN.  SSNs are

10  inherently private and confidential information as identified by both the Social Security

11  Administration in Exhibit E and the Federal Trade Commission in Exhibit F directly leading to

12  identity theft.  Fifth, there is no statute that permits the disclosure of Ms. Dalessio's SSN or

13  medical information.  To the contrary, there are many federal and state statutes prohibiting the

14  disclosure of both Ms. Dalessio's medical information and SSN.

15          This Court should take into consideration an additional factor of pattern and practice of

16  the UW OPR disclosing private and confidential about Ms. Dalessio and others.  *In re Crawford*,

17  194 F. 3d 954, 959 (9th Cir. 1999) (identifying the court's list of factors "is not exhaustive" and

18  depends on the circumstances of the case).  The fact is that there is a pattern and practice of

19  Defendants disclosing medical information and social security numbers about Ms. Dalessio and

20  others, despite having no legal authority to produce this extremely private and personal

21  information.  As a disputed issue of material fact, Ms. Dalessio identifies on page six (6) of this

22  response to the motion for summary judgment (the fourth disputed issue of material fact) a

23  mountain of medical information that was disclosed about her and third parties by the UW OPR.

24  PR. Dkt. 34 at 69-77 (identifying ADA protected health information about Plaintiff); Dkt. 37-5 at

25  3 (identifying ADA protected health information about a third party); *Id.* at 20 (identifying ADA

26  protected health information about a third party); *Id.* at 22 (identifying ADA protected health

27  information about a third party); Dkt. 38 at 22-25 (filed under seal as "00021-A1496195")

28  (identifying ADA protected health information about Plaintiff); *Id.* at 4-13 (filed under seal as

1   "00004-A1496190") (identifying ADA protected health information about Plaintiff); *Id*. at 28

2   (filed under seal as "00028-A1496199") (identifying ADA protected health information about

3   Plaintiff).

4        On balance, the facts show the conduct of Ms. Saunders, Ms. Swenson, Mr. Tapper, and

5   Mr. Palmer violated the constitutionally protected privacy rights of Ms. Dalessio and countless

6   others.

7        **C.   Defendants Failed to Meet its Burden of Showing of a Legitimate State**

8        **Interest in favor of Disclosure of Ms. Dalessio's Private Information**

9        Defendants do not argue and cannot establish a compelling state interest in disclosure of

10  Ms. Dalessio's medical information or SSN.  This is a mandatory burden that Defendants had to

11  prove in its motion for summary judgment. Defendants cannot address this argument now for the

12  first time because Ms. Dalessio will not have an opportunity to respond and thus have waived this

13  argument.  LCR 7(b)(1).  *Rocafort v. IBM Corp.*, 334 F. 3d 115, 122 (1st Cir. 2003) (stating "a

14  party has a duty to incorporate all relevant arguments in the papers that directly address a pending

15  motion" and this duty "includes explaining arguments squarely and distinctly").

16       "[T]he government has the burden of showing that 'its use of the information would

17  advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate

18  interest." *In re Crawford*, 194 F. 3d 954, 959 (9th Cir. 1999); *Mangels v. Pena*, 789 F. 2d 836, 839

19  (10th Cir. 1988) (stating "Due process thus implies an assurance of confidentiality with respect to

20  certain forms of personal information possessed by the state. Disclosure of such information must

21  advance a compelling state interest which, in addition, must be accomplished in the least intrusive

22  manner").

23       Here, there is no conceivable government interest in the disclosure of Ms. Dalessio's

24  private medical information or SSNs.  First, there are the statutes and case law above prohibiting

25  the disclosure of private medical information and SSNs.  Second, there are Washignton State

26  statutes expressly stating the government's interest in protecting against the disclosure of both

27  health information and SSNs.  RCW 70.02.005 states that "[h]ealth care information is personal

28  and sensitive information that if improperly used or released may do significant harm to a

1   patient's interests in privacy, health care, or other interests."  And RCW 9.35.001 states "[t]he

2   legislature finds that means of identification and financial information are personal and sensitive

3   information such that if unlawfully obtained, possessed, used, or transferred by others may result

4   in significant harm to a person's privacy, financial security, and other interests."

5        In fact, the Washington State Supreme Court expressly stated that the disclosure of SSNs

6   in response to PRA requests is not a legitimate government interest.  "It is true that the disclosure

7   of a public employee's Social Security number would be highly offensive to a reasonable person

8   and not of legitimate concern to the public."  *PAWS v. UW*, 125 Wn.2d 243, 254 (1994).

9        Because Defendants failed to argue their mandatory burden, this Court must find there is

10  not a legitimate state interest for disclosure.

11                        **D.   Causation**

12        "The requisite causal connection may be established when an official sets in motion a

13  'series of acts by others which the actor knows or reasonably should know would cause others to

14  inflict' constitutional harms."  *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183

15  (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

16             **4.   Good Faith Immunity Defense Fails**

17        As a matter of law, Defendants cannot establish good faith immunity because there is no

18  evidence identify Defendants motive, intent, and state of mind.

19        When raising an immunity defense, Defendants have the burden to establish "facts

20  peculiarly within the knowledge and control of the defendant."  *Gomez v. Toldo*, 446 US 635, 641

21  (1980).  These facts include motive, intent, and state of mind because "[t]here may be no way for

22  a plaintiff to know in advance whether the official has such a belief or, indeed, whether he will

23  even claim that he does. The existence of a subjective belief will frequently turn on factors which

24  a plaintiff cannot reasonably be expected to know."  *Id.*

25        Defendants do not establish any evidence that would identify good faith.  A common

26  definition of the word dishonesty is "honesty or lawfulness of purpose."  Good Faith, Merriam

27  Webster Dictionary (November 12, 2018, 11:25 AM), https://www.merriam-

28  webster.com/dictionary/good%20faith.  There is no evidence in the record that Defendants acted

honestly or had a lawful purpose.  First, none of the declarations submitted in the record (Ms. Swenson Dkt. 30, Ms. Saunders Dkt. 120, and Mr. Tapper Dkt. 121) identify a state of mind or intent.  A state of mind or intent cannot be read into the declarations either because not one of the declarations actually describes written procedures for fulfilling his or her job duties.  How can this Court make a determination if any of the Defendants were acting in good faith when none of the Defendants actually identifies their job duties?  It is a fact that there are written policies and procedures for the UW OPR that were created by UW in the Washington Administrative Code.  *See generally* WAC 478-276-010, *et. seq*. Furthermore, Ms. Dalessio, in this response to the motion for summary judgment, has outlined a litany of federal and state statutes prohibiting the disclosure of SSNs and health and medical information.

Because Defendants did not act in accordance with the law Defendants did not act in good faith.

Defendants argue that the public disclosure of private information requires the publication to a third party.  First, as a matter of fact the Defendants produced this information to Mr. Betz which is a third party, by definition.  Second, as a matter of law, once the records were disclosed under the PRA or FOIA "the information belongs to the general public." under the PRA or FOIA "the information belongs to the general public."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  The documents are now a matter of the public record and produced to the general public at large.  Third, Defendants production of responsive documents to Mr. Betz was the proximate cause of Defendants' attorney Ms. Freeman uploading the documents unredacted via CM/ECF to PACER in this lawsuit.  If Defendants never had produced the documents to Mr. Betz then Ms. Freeman would have never had an opportunity to re-violate Ms. Dalessio by publishing them on PACER. *See* Dkt. 36 (motion to seal); Dkt. 51 (order sealing Ms. Dalessio's records).

There is no evidence that Defendants did act in good faith.  This was Defendants burden in order to establish in the motion for summary judgment. It is too late for Defendants to establish evidence now because Ms. Dalessio will not be able to respond to it.

**5.  Discretionary Immunity Defense Fails**

1    This Court must reject Defendants claim of discretionary immunity because there is not

2    any evidence in the record that Defendants have any discretion in his or her job functions, also

3    there is not any evidence that any of the Defendants are a high ranking executive to be afforded

4    the immunity.

5    Discretionary immunity is narrowly applied, if only if, the State can prove "that the

6    decision was the outcome of a conscious balancing of risks and advantages." *Taggart v. State*,

7    118 Wn.2d 195, 214-15 (1992) (citing King v. Seattle, 84 Wn.2d 239, 246 (1974)).  "[T]he

8    decision must be a basic policy decision by a high level executive."  *Avellaneda v. State*, 273 P.

9    3d 477, 481 (Wash. Ct. App. 2012); *Taggart*, 118 Wash.2d at 215.

10    First, Defendants do not even identify a single decision that Defendant Saunders is

11    seeking discretionary immunity for.  As the case law in the previous paragraph identifies,

12    discretionary immunity is only granted in narrow circumstances based upon a decision that was

13    the conscious balancing of risks and advantages.  Defendant Saunders' declaration in Dkt. 120

14    does not identify a single decision that she has made for which discretionary immunity can be

15    granted.  Defendant Saunders does not identify whether she was involved in the crafting of PRA

16    policies and procedures for UW OPR listed in the WAC.  *See* WAC 478-276-010, *et. seq*.  There

17    are no other policies and procedures for the PRA given by Defendants other than a glossary.  A

18    glossary does not state substantive policies or procedures for the PRA.  Instead a glossary is

19    merely a collection of specialized terms and their meanings.  Glossary, Merriam Webster

20    Dictionary (November 12, 2018, 11:28 AM), https://www.merriam-

21    webster.com/dictionary/glossary.

22    Second, Defendant Saunders identifies that she does not have discretion in her job. "The

23    PRA mandates that an agency disclose public records responsive to a request unless an exemption

24    supports redaction or withholding of that record." Dkt. 120 at 2, ¶ 5.  This is a matter of merely

25    calling balls and strikes, and not describing any decision making.

26    **6.  Ms. Dalessio Properly Argues for Injunctive Relief**

27    Ms. Dalessio's claim for injunctive relief is proper.  Defendants mistakenly argue that "is

28    not entitled to further redaction than the PRA permits." Dkt. 119 at 20.  Defendants do not realize

1   that constitutional rights supersede the PRA in determining what is withheld and redacted before

2   being responsive documents are produced.  "[I]f a constitutional right is denied, a state statute

3   cannot excuse the denial." *Nicholas v. Wallenstein*, 266 F. 3d 1083, 1088 (9th Cir. 2001). The

4   Washington State Court of Appeals has put this theory in to practice holding the Washington

5   State Constitution "[A]rticle 1, Section 7 protects from public disclosure" under the PRA "state

6   employees' full names associated with their corresponding birthdates." *WPEA v. Wash. State*

7   *Center*, 404 P. 3d 111, 114 (Wash. Ct. App. 2017).

8        As is identified by the *WPEA* court, Ms. Dalessio does have an equitable right to pursue

9   an injunction because Article 1, Section 7 of the Washington State Constitution acts as its own

10   exemption to the Public Records Act.  *WPEA*, 404 P. 3d at 114.

11        As stated in Ms. Dalessio's declaration, filed along with this response to the motion for

12   summary judgment, Ms. Dalessio has a credible fear of her medical and health information being

13   produced again by Defendants to other PRA requests to other third parties.  It is well-established

14   that medical and health information is private because its disclosure can lead "directly to injury,

15   embarrassment or stigma." *In re Crawford*, 194 F. 3d 954, 960 (9th Cir. 1999).   As a matter of

16   fact, this information as been produced to a third party, and a matter of law to the public at-large.

17   There is a very real danger of this happening again because according to Defendants, there are no

18   privacy rights at stake.

19        **7.  Declaratory Judgment is Proper**

20        Declaratory judgment is proper here because a disclosure violating the privacy rights of

21   either Ms. Dalessio or another individual is likely to occur until this Court puts Defendants on

22   notice their actions are unconstitutional.

23        These are not past harms.  Defendant Saunders testifies the UW OPR receives "800 PRA

24   requests and reviews approximately 4 million pages of records each year prior to disclosure."

25   Dkt. 120 at 3, ¶ 7.  At no time have Defendants stated they would stop producing Ms. Dalessio's

26   private health and medical information to others.  Without any evidence that this will not occur in

27   the future, this Court can only assume that it is likely to reoccur with Ms. Dalessio, especially

28   since Defendants pursuant to the Settlement Agreement should have taken these documents out of

1   the UW's files in 2003.

2       **8.  Eliza Saunders**

3       Defendants do not raise any new arguments in this section that have not been raised

4   elsewhere.  First, there are disputed issues of material fact argued in this response to the motion

5   for summary judgment about Ms. Saunders' involvement in the production of records to any and

6   all PRA responses identified in the First Amended Complaint. Second, as a matter of law and as

7   argued above, this Court cannot grant Ms. Saunders discretionary immunity because Defendants

8   do not identify decisions made by Ms. Saunders or her job functions that would entail discretion.

9   Defendants argue that there is no intentional act made by Ms. Saunders.  However, there is

10  nothing at law requiring an intentional act to be made.  Furthermore, Defendants have never even

11  argued Ms. Saunders' intentions, and that is Defendants burden to argue pursuant to binding

12  United States Supreme Court case law.  *Gomez v. Toldo*, 446 US 635, 641 (1980).

13      **9.  Breach of Contract**

14      There is a disputed issue of material fact whether the contract is breached. *See* page 10

15  above.  It is a fact that Defendants contracted to take documents concerning Ms. Dalessio out of

16  UW's files pursuant to the 2003 Settlement Agreement.  Dkt. 30-3.  It is an issue of fact whether

17  Defendants actually removed those documents from UW's files as they contracted to in the 2003

18  Settlement Agreement.

19      "Generally, a statute of limitation runs from the time a claim accrues; a claim accrues

20  when a party has the right to apply to a court for relief, which may be at the time the claim is

21  discovered." *Cambridge Townhomes, LLC v. Pacific Star Roofing, Inc.*, 209 P. 3d 863, 870

22  (Wash. 2009).

23      Here Ms. Dalessio filed a lawsuit approximately one year after she discovered the breach

24  of contract when her neighbor Mr, Betz was produced documents responsive to his PRA request

25  by UW OPR that should have been removed from the UW files pursuant to the 2003 Settlement

26  Agreement.  Until Mr. Betz was given the files that should have been removed pursuant to the

27  Settlement Agreement, Ms. Dalessio did not have any knowledge that UW breached the contract.

28  Therefore, the pursuant to binding case law, the statute does not start to toll until Ms. Dalessio

1  discovered the breach in April 2016.

2          The evidence is that a breach of contract did occur. If these files were removed from

3  UW's file system as contracted to in the 2003 Settlement Agreement it would have been

4  impossible to produce under the PRA because they would not have exited in the UW system to

5  produce. It is Defendants now to explain how these documents were indeed removed pursuant to

6  the contract.

7          Ms. Dalessio does have recovery under the breach of contact through the equitable

8  remedy of specific performance.  Ms. Dalessio also has recovery through attorney's fees which

9  are expressly provided for in the 2003 Settlement Agreement.

10          Respectfully submitted this 13 day of November 2018

11                                      Law Office of Joseph Thomas

12                                      ____/s/ Joseph Thomas_____
                                         Joseph Thomas, WSBA 49532
13

14

15                          **Certificate of Service**

16          I hereby certify that on 13 of November 2018, I filed the foregoing with the Clerk of the

17  Court through the CM/ECF system which will automatically send electronic mail notification of

18  such filing to the CM/ECF registered participants as identified on the Electronic Email Notice

19  List.

20                                      ____/s/ Joseph Thomas_____
                                         Joseph Thomas, WSBA 49532
21                                       14625 SE 176th St., Apt. N101
                                         Renton, WA 98058
22                                       (206) 390-8848

23

24

25

26

27

28