UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE DALESSIO,

               Plaintiff,

   v.

UNIVERSITY OF WASHINGTON, et al.,

               Defendants.

CASE NO. C17-642 MJP

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendants' Motion for Summary Judgment Dismissal of Plaintiff's First Amended Complaint (Dkt. No. 119),

2. Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. No. 130),

3. Defendants' Reply re Motion for Summary Judgment (Dkt. No. 132),

4. Plaintiff's Objection to New Argument in Defendant's Reply to Summary Judgment (Dkt. No. 134),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

IT IS ORDERED that Defendants' motion is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's § 1983 claims against all Defendants regarding the publication of her Social Security number and other personal data (date of birth, telephone number, address, e-mail address) are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's cause of action for breach of contract is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's claims for injunctive and declaratory relief are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's claims against the Doe defendants are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the remainder of Defendants' motion is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to strike the new arguments asserted in Defendants' reply brief is GRANTED.

**Background**

The following facts are undisputed: Plaintiff was employed by Defendant University of Washington ("UW") as a Clinical Technologist in the Department of Laboratory Medicine from 1987 until her resignation in 2003. On September 16, 2015, UW's Office of Public Records ("OPR") received a records request from an individual named David Betz under the Public Records Act (RCW 42.56 et seq.; "PRA") for "all records maintained by the University of Washington relating or pertaining to Julie Dalessio." (Dkt. No. 82 at 5, ¶ 29.)

In response, Defendant and OPR Compliance Analyst Alison Swenson produced two installments of redacted records to Betz. UW released 370 pages of documents to Betz; although there were many redactions (and over 100 pages of documents exempted under the PRA which

were not provided at all), Plaintiff's Social Security number ("SSN") was not redacted from two of the pages; Plaintiff further alleges (and Defendants do not deny) that personal information such as her date of birth, telephone number, home address, and email address were not completely redacted. Additionally, there was information in the documents which Plaintiff alleges was personal medical information protected under the Health Information Portability and Accountability Act ("HIPAA") and the Americans with Disabilities Act ("ADA").[1] (Dkt. Nos. 30-1, 30-2.)

Following Betz's request, Plaintiff submitted her own PRA request to UW for the information which was released to Betz. (Id. at ¶ 33.) On April 16, 2016, upon receipt of the documents released to Betz under the PRA, Plaintiff became aware of the unredacted information of which she now complains.

On November 9, 2016, Plaintiff submitted a second PRA request for "a digital copy of my departmental personnel file, along with any other computer or paper files that might contain records of inquiries concerning my employment at the uw [*sic*], since my resignation in January 2003." (Dkt. No. 29, Decl. of Palmer, Ex. A.) Those documents were provided (to Plaintiff only) in two installments on January 26 and February 15, 2017. (Id. at 3-4.)

Plaintiff's amended complaint, filed by her appointed counsel, names as defendants:

- University of Washington (breach of contract claim only)
- Alison Swenson, OPR Compliance Analyst (§ 1983 claims for violation of Plaintiff's 4th and 14th Amendment rights, and the tort of public disclosure of private facts)

---

[1] UW disputes that (1) the information Plaintiff claims was "protected health information" was protected under HIPAA or the ADA, or that (2) releasing it creates a § 1983 cause of action for Plaintiff. This argument appeared for the first time in Defendants' reply brief. See discussion of "Plaintiff's medical information claims" *infra*.

- Eliza Saunders, Director of UW Office of Public Records; Perry Tapper, UW Public Records Compliance Officer; and Andrew Palmer, OPR Compliance Analyst (§ 1983 claims for violation of Plaintiff's 4th and 14th Amendment rights, and the tort of public disclosure of private facts)[2]
- Does 1 – 12, unnamed officials in various UW departments (§ 1983 claims for violation of Plaintiff's Fourth and Fourteenth Amendment rights, and the tort of public disclosure of private facts)[3]

(Dkt. No. 82, ¶¶ 98-203.) In addition to economic, compensatory, and punitive damages, Plaintiff also seeks declaratory, equitable, and injunctive relief, as well as attorney's fees and costs.

## Discussion

The legal issues presented and properly briefed by this motion are:

1. Did the disclosure of Plaintiff's SSN and personal information[4] in response to Betz's PRA request amount to a violation of Plaintiff's constitutional rights? NO.
2. Even if the answer to #1 were "YES," are Defendants entitled to immunity from liability under federal and state law? YES.

**I.  Standard of review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2] Defendants argue (and Plaintiff does not dispute) that Plaintiff's claims against all individual Defendants but Swenson are based on the UW's production of documents to her personally, or for failures to adequately supervise Swenson's production of documents to Betz. (*See* Dkt. No. 82, ¶¶ 47, 49.)

[3] The Does have been named based on allegations that they collected the documents which were assembled and redacted by Swenson and transmitted to Betz and to Plaintiff. (Id. at ¶ 39.)

[4] The Court refers here to the information concerning Plaintiff's DOB, home address, etc; not the disclosure of "medical and health information" of which Plaintiff also complains.

Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

## II. Constitutional privacy rights

A violation of 42 U.S.C. § 1983 requires proof that "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). It is undisputed that Defendants, employees of a state university releasing documents pursuant to the PRA, were acting under color of state law. Plaintiff bases her "deprivation of rights" claims on purported violations of the U.S. Constitution: specifically, the Fourth Amendment (Dkt. No. 82, ¶¶ 98-119) and Fourteenth Amendments. (Id., ¶¶ 147-165.)

### a. *Inadvertence and constitutional rights*

The Court has no doubt that Defendant Swenson's failure to delete some references to Plaintiff's SSN and other personal data in the 370 pages of documents was inadvertent; at worst,

an act of negligence. Plaintiff does not attempt to ascribe or prove malicious intent on Defendants' part; in fact, she acknowledges that the release of any private information to Betz was accidental. (See Dkt. No. 37, Decl. of Dalessio at 2.[5])

The Supreme Court has made it clear that "negligent conduct by a state official, even though causing injury," is not grounds for finding a deprivation of a constitutional right. Daniels v. Williams, 474 U.S. 327, 31 (1986). The Daniels court ruled that the Constitution is intended as a bulwark against abuses of power, governmental power "used for purposes of oppression," and that

> [f]ar from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

Id. at 332. The Constitution was not intended "to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Id.

Regarding the remaining named Defendants (other than Swenson), there is no proof that any of them had any involvement with the production of Plaintiff's records to Betz, beyond (1) supervisory responsibility over Swenson or (2) general managerial responsibility for the policies and procedures concerning production of records and files pursuant to document requests. Their immunity from liability derives from (1) the general absence of a violation of a "constitutional"

---

[5] "I first contacted UW Office of Public Records (*Dkt. 30-9 p.2*) expecting that the UW would want to mitigate damages, to at least assure me that this would not be repeated, that these PRs containing my Social Security Number, Date of birth, Name change information, Employee Id #, health related information, financial information, and a selection of defamatory documents would be properly redacted, and hoped that UW would request that my neighbor, Betz (who is an attorney) destroy all copies of personal, confidential information that he was mistakenly provided." (Dkt. No. 37, Decl. of Dalessio at 2; emphasis supplied.)

right (as discussed *supra*) and (2) the lack of any proximate causation traceable to them which resulted in an injury to Plaintiff.[6]

The Doe Defendants, who apparently are named because they were in the chain of production of the documents eventually delivered to Betz, are even further insulated from liability. These unnamed defendants were acting in response to appropriate requests from a university official who was in turn responding to a legitimate PRA request. Again, Plaintiff produces no evidence that any of the unnamed Defendants had either an intention to violate her constitutional rights, nor any knowledge or reason to know that protected information contained in the documents they were producing would inadvertently be disclosed to an improper recipient.

    **b.** *The "constitutional right to privacy"*

The Court agrees with Defendants that Plaintiff has confused her privacy interests with her constitutional rights.

> It is not in dispute that a person has a privacy interest in avoiding the public disclosure of personal matters, and that SSNs [*sic*] are recognized as sensitive and highly confidential. *See* In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999); *see generally* Doyle v. Wilson, 529 F. Supp. 1343, 1348 (D. Del. 1982). Even so, a privacy interest and a sensitive or highly confidential designation are not the same as having *a constitutional right to privacy.*

Mallak v. Aitkin County, 9 F. Supp. 3d 1046, 1063 (D. Minn. 2014)(emphasis in original). To be fair, this is a fluid and not entirely well-defined area of the law, but the Court has no difficulty

---

[6] Contrary to what Defendants argue, it is not necessary to prove "personal participation" by a defendant to establish the required causation. "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). The actor's (Swenson's) conduct was negligent at most, and there is no proof offered that she was habitually derelict in her duties, so it is not surprising that Plaintiff offers no proof that the other named Defendants "knew or should have known" that the information would be inadvertently disclosed.

finding that the conduct of which Plaintiff complains falls well outside of any violation of privacy rights that rise to the level of a constitutional infringement.

Privacy interests, the right of citizens to not have certain kinds of personal information involuntarily disseminated to the public, overlap to a limited extent with the protections of the Constitution. The Ninth Circuit has held that "the indiscriminate public disclosure of SSNs, especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy." Ferm v. United States Trustee (In re Crawford), 194 F.3d 954, 958 (9th Cir. 1999)(emphasis supplied). "The right to informational privacy, however, is not absolute; rather, it is a conditional right..." Id. (*citing Doe v. Attorney General,* 941 F.2d 780, 796 (9th Cir. 1991)).[7]

Plaintiff has offered no evidence that the dissemination of her SSN was "indiscriminate"[8] (and even if she had, the most the Ninth Circuit would concede is that such a practice "may" implicate a constitutional right). The inadvertence of the disclosure, coupled with the many examples of redaction in the materials which were produced, further compels a ruling that whatever incursion into Plaintiff's privacy may have occurred here, it does not rise to the level of the violation of a constitutional right.

---

[7] Other circuits draw the distinction between privacy interests and constitutional rights even more tightly. The Sixth Circuit holds that the constitutional protection afforded the disclosure of personal information is a "narrowly tailored right, limited to circumstances where the information disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous *vis-à-vis the plaintiffs.* We cannot conclude the social security numbers and birth dates are tantamount to the sensitive information" previously held entitled to constitutional protection. Barber v. Overton, 496 F.3d 449, 456 (6th Cir. 2007)(emphasis in original).

[8] It is evident from Plaintiff's briefing that she considers the release of her personal information – and information allegedly regarding third parties – to herself to be part of a pattern or practice of improper conduct by Defendants, but she produces no legal authority for this theory and the Court knows of none. Defendants did not move for dismissal on this basis so this order will not rule definitively on that theory, except to indicate that the Court did not consider that evidence when analyzing whether the incidents complained of by Plaintiff represent indiscriminate or otherwise illegal conduct, or amount to a "policy or practice" which infringes the Constitution.

Additionally, the Court notes that Plaintiff cites no legal authority for the proposition that a University employee, accessing the files of a former employee in response to a valid records request, is engaging in conduct which implicates an unreasonable "search and seizure" under the Fourth Amendment. Even more intrusive records searches (e.g., into the text messages on a work phone) have been found non-violative of the Fourth Amendment. "The search was justified at its inception because there were 'reasonable grounds for suspecting that the search [was] necessary for a noninvestigatory work-related purpose.'" City of Ontario v. Quon, 560 U.S. 746, 761 (2010)(internal citation omitted). It is the finding of this Court that responding to a legitimate PRA request falls into the category of a legitimate "noninvestigatory work-related purpose" and that Plaintiff's Fourth Amendment rights have not been violated by Defendants' conduct.

**III.    Immunity defenses**

    a.  *Qualified immunity (federal)*

In light of this Court's ruling that Plaintiff has not succeeded in establishing the violation of a constitutional right, the qualified immunity analysis becomes very simple. The Ninth Circuit's test for qualified immunity lays out the following steps:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. <u>First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right?" If the answer is no, the officer is entitled to qualified immunity.</u> If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted. That is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the officer could have believed, "reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right." If the answer is yes, the officer is entitled to qualified immunity. If the answer is no, he is not.

Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006)(emphasis supplied). The Court need not take its analysis any further than the first question: none of the Defendants' actions in this lawsuit violated Plaintiff's constitutional rights, therefore they are uniformly entitled to qualified immunity.

      **b.** *Qualified immunity (state)*

Washington's PRA contains the following provision:

> No public agency, public official, public employee, or custodian shall be liable, nor shall a cause of action exist, for any loss or damage based upon the release of a public record if the public agency, public official, public employee, or custodian acted in good faith in attempting to comply with the provisions of this chapter.

RCW § 42.56.060. Defendants interpose this as a defense to Plaintiff's seventh cause of action, the common law tort of public disclosure of private facts. (Dkt. No. 82, ¶¶ 191-201.)

Plaintiff makes two arguments in response to this, one of which is non-meritorious *ab initio* and another for which she at least has some legal authority. First, she argues that, because Defendants did not comply with the law by releasing her SSN, they did not act in good faith. She cites no authority for this proposition and the Court rejects it.

Secondly, she cites case law that it is Defendants' burden to establish facts which are within Defendants' personal knowledge (e.g., the state of mind of Defendant Swenson). Gomez v. Toledo, 446 U.S. 635, 641 (1980). Defendants, for reasons best known to them, fail to include any representation in Defendant Swenson's declaration (Dkt. No. 30) that she was "attempting in good faith" to discharge her duties under the PRA and UW's policies.

In the absence of that, the Court refers to her detailed account of (1) the training she received in responding to PRA requests, (2) the number of PRA requests she processed in 2015 (the year Betz made his request), and (3) the fact that, in responding to Betz's request, she heavily redacted the material she produced and "created an exemption log regarding 101 pages

determined to be wholly exempt from disclosure under the Public Records Act." (Id. at ¶¶ 3, 5, and 6.)  There is case law in Washington which permits a finding on summary judgment of good faith where a defendant has made "a prima facie showing of good faith in her declaration and [] there was nothing in the record that suggested that the [defendant] acted with improper purpose." Marthaller v. King County Hosp., 94 Wn.App. 911, 916-17 (1999).  The Court finds that Defendant Swenson's declaration satisfies that standard and further finds on that basis that Swenson is entitled to immunity under RCW 42.56.060.

The Courts enters a similar finding as regards Defendant Andrew Palmer (the UW Compliance Analyst who, as mentioned *supra*, simply produced Plaintiff's departmental file for her at her request; *see* AC at ¶ 49).  Palmer avers that he "interpreted [Plaintiff's] request as a former employee's request for her own file, meaning it would not be redacted."  (Dkt. No. 29, Decl. of Palmer at ¶ 5.)  Plaintiff presents neither statutory nor case authority that this is not in compliance with the state of the law regarding production of documents under the PRA, and Palmer is entitled to immunity based on the state statute, for the same reasons as Swenson.

Regarding the remaining named Defendants – Saunders and Tapper – the Court makes a similar finding of good faith based on their declarations (Dkt. Nos. 120 and 121), which detail their responsibilities for implementing, overseeing, and improving the system by which UW complies with the PRA, as well as their lack of any personal involvement in the production of the records to either Betz or Plaintiff herself.  The evidence concerning them is completely lacking anything to suggest they operated with an improper purpose.  Plaintiff having come forward with nothing more than the inadvertent production of some of her private information, these Defendants will be held immune from liability in accordance with RCW § 42.56.060.[9]

---

[9] Some portion of Plaintiff's legal theory is based on allegations that all the Defendants "devised, implemented, enforced, encouraged, [and/or] sanctioned" policies and practices which violated Plaintiff's constitutional rights.

### IV. Breach of contract claim

Plaintiff has asserted a breach of contract claim against UW only, alleging that among the material produced were documents which were supposed to have been removed from her "official personnel file and from all Department of Laboratory Medicine files" pursuant to a 2003 settlement agreement. (AC at ¶¶ 183-190.) She alleges that these "private and confidential documents" were disclosed through PRA requests to "Betz and others" (it is not specified who the "others" were; the Court speculates that Plaintiff refers to the records produced to her at her own request). (Id. at ¶ 190.)

Plaintiff's claim is subject to a statute of limitations defense. Under Washington law, the limitations period for all contract claims is six years (RCW 4.16.040). Fatal to Plaintiff's cause of action, the limitations clock on a contract claim starts ticking from the date of the accrual of the claim; there is no "discovery rule" in this state as far as breach of (the majority of) contract claims are concerned.[10] Therefore, the latest date upon which Plaintiff could have sued under this cause of action was in 2009.

Plaintiff cites Washington case law which appears to suggest that a "discovery rule" is permissible in Washington contract cases. Cambridge Townhomes, LLC v. Pacific Star Roofing, Inc., 166 Wn.2d 475, 485 (2009). But the case cited for that proposition by the Washington Supreme Court very specifically limits application of the discovery rule to "breach of

---

(*See* AC at ¶ 158.) Aside from the isolated incident to which she was subject, she produces no proof of any policies or practices which support that allegation and cannot attach liability to any of the Defendants on this basis.

[10] The statute of limitations for an action upon a written contract is six years. RCW 4.16.040(1). "Statutes of limitations do not begin to run until a cause of action accrues." *1000 Va. Ltd. P'ship*, 158 Wn.2d at 575 (citing RCW 4.16.005). A cause of action usually accrues "when the party has the right to apply to a court for relief." *Id*. "Under the discovery rule, a cause of action does not accrue — and as a result the statute of limitations does not begin to run — until the plaintiff knows, or has reason to know, the factual basis for the cause of action." *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 79-80, 847 P.2d 440 (1993).
  Our Supreme Court "has consistently held that accrual of a contract action occurs on breach." *1000 Va. Ltd. P'ship*, 158 Wn.2d at 576. (Kinney v. Cook, 150 Wn. App. 187, 192-93 (2009).)

construction contracts where latent defects are alleged." 1000 Va. Ltd. P'ship v. Vertecs, 158 Wn.2d 566, 582 (2006)(emphasis supplied). This case does not involve construction contracts or latent defects. If a breach of Plaintiff's Settlement Agreement with UW occurred, it occurred at the point that UW failed to remove the documents from her file as required by the agreement; i.e., in 2003. Defendants are correct – Plaintiff is barred from bringing this claim by the statute of limitations.

V.     **Injunctive and declaratory relief**

Injunctive relief is appropriate only where Plaintiff has a "well-grounded fear" of immediate invasion of the rights she is suing to protect. WFSE v. State of Washington, 99 Wn.2d 878, 888 (1983). Plaintiff alleges, without any supporting evidence, that she has a "credible fear of her medical and health information being produced again by Defendants." (Response at 24.) She also says that she is entitled to enjoin Defendants from producing her full name and corresponding birthdate (citing Article I, Section 7 of the Washington State Constitution), but Defendants have never argued that they had a right under the PRA to disclose that information. Defendants are entitled as a matter of law to have Plaintiff's request for injunctive relief dismissed.

Regarding her request for declaratory relief, Plaintiff again presents arguments that imply that Defendants have taken a position that they had a right to divulge the information regarding which she has sued them. ("At no time have Defendants stated they would stop producing Ms. Dalessio's private health and medical information to others." Id.) Defendants have never claimed that they were entitled to disclose any information which is exempted from production by the PRA or otherwise prohibited; their position has consistently been that whatever

1 information was produced improperly was produced inadvertently, not according to any policy
2 or belief that they were entitled to do so.

A request for declaratory relief should be dismissed if it is "duplicative of existing claims." Englewood Lending, Inc. v. G&G Coachella Invs., 651 F.Supp.2d 1141, 1145 (C.D.Cal. 2009). Should Plaintiff prevail on any of her claims, there is no need to "declare" that Defendants' conduct was illegal; it is merely redundant. Her request for declaratory relief will be dismissed.

### VI. Plaintiff's medical information claims

Even a cursory reading of Plaintiff's complaint makes it clear that she is suing Defendants for more than just the release of two SSN's and some personal information. The complaint is replete with allegations that the documents produced to both Betz and herself contained medical/health information that Plaintiff believes is protected from disclosure by both HIPAA and the ADA. (*See* AC at ¶¶ 36, 50, 65, 72, 83, 84, 87, 157, 167, 194.)

However, Defendants' opening brief is solely concerned with the release of the SSN's – there is not a single mention of medical or health information in their initial arguments. Plaintiff seizes upon this in her response, pointing out that (even if the Court were to accept Defendants' summary judgment arguments and dismiss the claims they were attacking) Plaintiff would still have her claims regarding the disclosure of the medical/health information. In their reply brief, Defendants attempt to rebut the medical/health information claims, arguing that (1) the information is not the kind protected from disclosure (or is illegible in the documents they produced) and (2) there are no § 1983 claims available under HIPAA or the ADA.

Unsurprisingly, Plaintiff filed a surreply to strike this new argument. "It is well established that new arguments and evidence presented for the first time in a Reply are waived."

Docusign, Inc. v. Sertifi, Inc., 468 F.Supp.2d 1305 1307 (W.D.Wash. 2006)(*citing* U.S. v. Patterson, 230 F.3d 1168, 1172 (9th Cir. 2000). The motion is well-taken; the argument is untimely and will be stricken.

**Conclusion**

Regarding Plaintiff's claim that the inadvertent disclosure of her SSN and other personal data amounted to a violation of her rights under the U.S. Constitution, the Court finds that there are no disputed issues of material fact and that Defendants are entitled to summary judgment as a matter of law. The portion of Plaintiff's lawsuit will be dismissed with prejudice. Her breach of contract claim is barred by the applicable statute of limitations, and she has established no legal basis for her requests for injunctive or declaratory relief; those claims will also be dismissed with prejudice. The unnamed Doe Defendants, alleged only to have produced documents as they were required to do by state law and university policy, will be dismissed.

Defendants' untimely attempt to rebut Plaintiff's claims regarding her medical/health information will be stricken. The Court expresses its doubts about the viability of those claims, as well as Plaintiff's claims that the disclosure of her personal information to her, plus the alleged disclosure of information concerning third parties, is actionable, but as Defendants made no motion in that regard, a ruling on that portion of Plaintiff's lawsuit awaits another day. The Court also notes that Plaintiff has, as of yet, offered no evidence that the conduct of which she complains has resulted in any legally-cognizable damages, but again this portion of Plaintiff's proof was not challenged by Defendants.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 11, 2019.

Marsha J. Pechman
United States Senior District Judge