The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JULIE DALESSIO, an individual,

　　　　　　　　Plaintiff,

　　v.

UNIVERSITY OF WASHINGTON, a
Washington Public Corporation; ELIZA
SAUNDERS, Director of the Office of
Public Records, in her personal and official
capacity; ALISON SWENSON, Compliance
Analyst, in her personal capacity; PERRY
TAPPER, Public Records Compliance
Officer, in his personal capacity; ANDREW
PALMER, Compliance Analyst, in his
personal capacity; JOHN or JANES DOES
1-12, in his or her personal capacity,

　　　　　　　　Defendants.

No. 2:17-cv-00642-MJP

DEFENDANTS SAUNDERS,
SWENSON, TAPPER, AND PALMER'S
SECOND MOTION FOR SUMMARY
JUDGMENT

**Noted for Hearing:**
**Friday, April 19, 2019**
**(per court order, Dkt. 160)**

## I.　　INTRODUCTION

On March 15, 2019, this Court entered an order finding that Defendants' immunity arguments upon which the Court dismissed Plaintiff's "personal information" claims appeared equally applicable to Plaintiff's "medical information" claims. *Dkt. 160*, at p. 3:16-4:3.  However, the Court has requested follow-up briefing on specific issues in the form of a second Motion for Summary Judgment.  There is no basis to dispute Defendants' substantive arguments or authority.  Plaintiff has had the opportunity to produce authority but has refused to do so.  Pursuant to the Court's order, Defendants seek dismissal of all remaining claims, including Plaintiff's "medical information" claims, with prejudice.

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 1
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## II.    STATEMENT OF FACTS

The facts of this case have been briefed extensively by both parties and the Court. *Dkts. 119, 130, 132,* and *153.*  No additional discovery has been exchanged between the parties since the Court's order.

As the Court neatly identified, Plaintiff's remaining claims include her First and Third Causes of Action:  alleged violations of the Fourth and Fourteenth Amendments (claim pursuant to 42 U.S.C. § 1983) for the release of allegedly private "health information" in violation of the Americans with Disabilities Act (ADA) and the Health Insurance Portability and Accountability Act (HIPAA), and her Seventh Cause of Action:  a state law claim for public disclosure of private facts.  *Dkt. 160* at p. 10 (attachment A).  The allegedly "private facts" giving rise to the remaining state law claim also pertain to disclosure of allegedly private health information. *Id.*  Individually-named Defendants Eliza Saunders, Alison Swenson, Perry Tapper, and Andrew Palmer ("Individual Defendants") are the only remaining Defendants in this action.[1]

**A.    Plaintiff's Claims Regarding Allegedly Private "Health Information" is limited to Nine Pages of Documents That Do Not Actually Disclose Protected Health Information.**

When previously pushed to identify what specific *medical or health* documents were produced to her neighbor, David Betz, in response to his Public Records Act (PRA) Request (PR 15-00570), Plaintiff only identified **nine pages**, which are in the record as pages 69-77 of *Dkt. 34*. *Dkt. 130*, at p. 5:5-8.  Those records consist of:

- A form titled "accommodations request" that is completely illegible and unreadable (Dkt. 34 at 69)

- A 2002 cover letter containing no medical information (Dkt. 34 at 70)

- A "temporary accommodation letter" from Plaintiff's Departmental supervisor to her—heavily redacted to remove any references to any medical

---

[1] Claims against Defendant University of Washington and John/Jane Does 1-16 were previously dismissed with prejudice. *Dkt. 153.*

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 2
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

information (Dkt. 34 at 71-73)[2]

- A Job Analysis form outlining the essential functions and physical capacities required to perform *the position* of "Clinical Technologist II"—it is not filled out or signed by a doctor and does not contain *medical information* about Dalessio (Dkt. 34 at 74-77).[3]

A cursory review reveals these documents do <u>not</u> actually contain protected health or medical information and that any employment documents that may have contained health-related information were heavily redacted or illegible.  While Plaintiff has only identified those pages, it is undisputed that the remaining pages in the Betz production similarly lack any medical or health information.  *Dkts. 32, 33,* and *34.*

**B.    The Undisputed Facts Demonstrate That No Individually-Named Defendant—Employees Engaged in Conduct Giving Rise to A Cause of Action Against Them.**

It remains undisputed that Defendant Alison Swenson is the only Defendant who produced any documents related to Ms. Dalessio to a third party, Mr. Betz, on of approximately 194 public records requests Ms. Swenson worked on that year. *Dkt. 30 (Swenson Dec.); Dkts. 120, 121.*  It is also undisputed that she followed departmental procedures for locating records responsive to the PRA request and received responsive records from University departments that located employment files/documents related to Ms. Dalessio's employment, which had ended in 2003. Id. Upon review of the records, she redacted information as permitted by the PRA as exempt in 370 pages produced to Mr. Betz and withheld 101 pages she determined to be wholly exempt from disclosure under the PRA. *Id.; Dkt. 30-5, 30-6* (listing exemptions Ms. Swenson applied to redact or withhold portions of documents); *Dkt. 30-7* (Request Summary Report depicting exemptions applied).

Defendant Andrew Palmer's only involvement in this case is that he produced

---

[2] Plaintiff filed a copy of the corresponding unredacted version of the letter in Dkt. 38 at 00030-A1496201; however, it is undisputed the unredacted copy was never produced to a third party. *See,* Dkt. 34 at pp. 71-73.
[3] It is undisputed all unredacted documents Plaintiff filed in Dkt. 38 at pp. 28, 4-13, 22-25 were *only* produced directly to Ms. Dalessio herself in response to her request for her own records and *never* produced to a third party. Dkt. 131, at ¶¶ 17-23; Dkt. 29 (*Palmer Dec.*).

DEFENDANTS SAUNDERS, SWENSON, TAPPER, AND PALMER'S SECOND MOTION FOR SUMMARY JUDGMENT - 3
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

copies of Ms. Dalessio's personnel files and records directly to her pursuant to her own request. He never produced any documents regarding Ms. Dalessio to any third party. *Dkt. 29 (Palmer Dec.); Dkts. 30, 120, 121.*

Neither Defendant Perry Tapper nor Defendant Eliza Saunders released subject documents to anyone. They simply served as supervisors in the University's Office of Public Records. Dkt. 121 (*Tapper Dec.*), Dkt. 120 (*Saunders Dec.*). They corroborate the process Public Records Analysts follow to respond to public records requests involves individualized review of documents for potential exemptions under the PRA, redacting and/or withholding exempt material. *Dkt. 121, ¶¶4-5; Dkt. 120, ¶¶4-7, Ex. B.*

It is undisputed none of the parties knew of either Ms. Dalessio or Mr. Betz prior to his submitting a public records request in 2015, one of approximately 800 requests the OPR receives each year (requiring individualized review of more than four million pages of documents). *Dkt. 120, ¶7; Dkts. 29, 30, 120, 121.* There is no evidence that any Defendant departed from normal procedures for facilitating PRA responses in a manner consistent with their training and experience or engaged in any conduct regarding Ms. Dalessio's employment information for any purpose other than a good faith attempt to exercise their job duties pursuant to the mandates of the PRA. *Id.*

## III.   EVIDENCE RELIED UPON

- Pleadings and filings already in the record, including Dkt. Nos. 82, 28, 29, 30, 32-34, 118-121, 132, 153, 155, and 160.

## IV.   ARGUMENT AND ANALYSIS

Defendants seek summary judgment dismissal of Plaintiff's remaining claims. Defendants hereby incorporate legal and factual arguments and authority set forth in Dkt. Nos. 119, 132 and 153, and provide the following analysis to address the four specific questions requested by the Court in Dkt. 160.

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 4
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

**A.   No, Plaintiff Cannot Seek Relief for Alleged Violations of HIPAA or the ADA under 42 U.S.C. § 1983.**

Neither of these statutes are actionable under 42 U.S.C. §1983.  In *Nickler v. Cty. of Clark*, 752 F. App'x 427, 429 (9th Cir. 2018), the court recently reiterated that HIPAA does not give rise to a either a direct cause of action <u>or</u> a § 1983 claim:

> To the extent that Nickler raises a claim based on an alleged Health Insurance Portability and Accountability Act (HIPAA) violation, that claim fails because there is no private right of action under HIPAA, *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010), and Nickler has not shown that Congress's enactment of HIPAA "create[d] new rights enforceable under § 1983 ... in clear and unambiguous terms," *Gonzaga University v. Doe*, 536 U.S. 273, 290, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)."

Nor can a §1983 claim be used to enforce rights under the ADA. *Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012); *Iceberg v. Martin*, 2017 WL 396438, at *8 (W.D. Wash. Jan. 30, 2017), *app. dism.* 2018 WL 4904818 (9th Cir. 2018) (both dismissing § 1983 claims based on the ADA).  This law has been clearly established for some time.  *See also*, Dkt. 132, pp. 2-4.[4]  This should be dispositive of Plaintiff's First and Third Causes of Action.

**B.   Yes, Defendants' Immunity Defenses Apply Equally to Plaintiff's Allegations Concerning Disclosure of Medical Information and Alleged Violations of HIPAA and the ADA.**

As the Court identified in its order (*Dkt. 160*), the same immunity defenses that barred Plaintiff's "personal information" claims would also bar her "health information" claims under both State and Federal law.  *See also*, analysis in Dkt. 119, pp. 6-16; Dkt. 132, pp. 5-9. The individual Defendants are all entitled to qualified immunity for objectively reasonable exercise of judgment in the course of their job duties requiring administration of the PRA on behalf of the University. To the extent any allegations are based on policy-level involvement in determining processes by which University documents are located and

---

[4] Though Plaintiff is not proceeding directly on an ADA Claim, individual Defendants are not subject to liability under the ADA either.  *See, e.g., Alford v. Barton*, 20915 WL 2455138 at *8 (E.D. Cal. 2015) (*citing Walsh v. Nevada Dept. of Human Rts.*, 471 F.3d 1033, 1037-38 (9th Cir. 2006)).

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 5
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

produced to the Office of Public Records (OPR) for inspection, redaction, and then production pursuant to Washington's Public Records Act, Eliza Saunders and Perry Tapper would also be entitled to discretionary immunity.[5]

1. <u>All Individual Defendants Are Entitled to Qualified Immunity for Plaintiff's Section 1983 Claims.</u>

If the court were to allow § 1983 claims to proceed based on Plaintiff's allegations of disclosure of medical information and/or alleged "violations" of HIPAA and the ADA, then Defendants would be otherwise subject to qualified immunity barring such claims against them as individuals.[6]  Defendants are entitled to qualified immunity from lawsuits absent evidence they intentionally and directly violated a Constitutional right that was so "clearly established" that they would have known they were violating Ms. Dalessio's Constitutional rights at the time they acted.  *See, Jones v. State Dep't of Health,* 170 Wash.2d 338, 349, 242 P.3d 825 (2010).  To determine whether qualified immunity can be overcome, the court first looks at whether "the plaintiff's allegations establish a connection between the defendant's conduct and the violation of a constitutional right"—*i.e.*, whether the defendant committed the alleged acts." *Id.* (*citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  Second, the court determines "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Jones*, at 349 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

a. *Plaintiff's "Health Information" Claims Do Not Establish a Constitutional Violation.*

First, Plaintiff has failed to demonstrate any documents produced to a third party (Mr. Betz) contain "protected health information" that would implicate constitutional or statutory privacy rights.  Contrary to Plaintiff's initial claims, the documents released to

---

[6] Again, the negative answer to question No. 1 posed by the court should be dispositive and result in dismissal of Plaintiff's §1983 claims as a matter of law without moving to the remainder of the qualified immunity analysis.

DEFENDANTS SAUNDERS, SWENSON, TAPPER, AND PALMER'S SECOND MOTION FOR SUMMARY JUDGMENT - 6
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Mr. Betz when responding to his 2015 PRA request solely consisted of employment records from Plaintiff's employee files—not from any medical "patient file".   In fact, Plaintiff identified the specific documents she alleges contain "protected health information" as pages 69-77 of *Dkt. 34. Dkt. 130*, at p. 5:5-8.   None of those pages contain *any* legible private medical or health information about Plaintiff.   The closest document is a "temporary accommodation letter" that has been so heavily redacted that a reader could not tell what allegedly sensitive information might be contained therein.[7]

Even if some medical information *had been* disclosed (which it was not), courts have long found even the actual release of medical treatment information does not necessarily form the basis for a constitutional claim.   "Not every disclosure of personal information will implicate the constitutional right to privacy, however, and the Supreme Court has cautioned against unwarranted expansion of the right[.]" *Cooksey v. Boyer*, 289 F.3d 513, 515-16 (8th Cir. 2002). "[T]o violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation... or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Id.* (Internal quotations omitted.)   Redacted or illegible copies of personnel file documents and blank forms do not constitute a "shocking degradation" or an "egregious humiliation." *Id.*   Therefore, Plaintiff fails to establish a constitutional violation.

Separately, to prevail on federal claims under 42 U.S.C. § 1983 against an individual defendant, a plaintiff must prove *that individual* directly and *intentionally* violated her rights under the U.S. Constitution—allegations of negligence do not suffice. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986) (rejecting 14th Amendment due process claim based on negligence); *Stevenson v. Koskey*,

---

[7] Washington courts have repeatedly interpreted the PRA as "a strongly worded mandate for broad disclosure of public records." *See, Koenig v. City of Des Moines,* 158 Wn.2d 173, 142 P.3d 162 (2006) (requiring public agency to disclose sexually explicit details of minor's sexual assault despite law enforcement concerns of potentially deterring future victims and families from cooperating with law enforcement, and reality that requestor could easily connect the detailed information with the identifiable victim despite redaction of her name).

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:   (206) 623-8861
FAX:   (206) 223-9423

877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's personal mail did not rise to the level of a constitutional violation cognizable under §1983.)  The Court has already acknowledged Plaintiff admitted any release of private information to Betz was inadvertent and that there is no evidence any individual Defendant acted intentionally to violate Plaintiff's rights in any way. *Dkt. 153*, at p. 5:23-7:9.[8]

Further, the extensive redactions made to the alleged "health information"—as well as more than 101 pages withheld as exempt altogether—again demonstrate that Ms. Swenson did not intentionally release any protected health information, but rather that she made exhaustive efforts to evaluate and withhold potentially exempt information.[9] Similarly, there is no causal connection between Defendants Palmer, Saunders, or Tapper and the alleged injury as it is undisputed (and the court has ruled) they had no involvement "beyond (1) supervisory responsibility over Swenson or (2) general managerial responsibility for the policies and procedures concerning production of records and files pursuant to document requests." *Id.* at p. 6:14-7; *Dkts. 29, 120, 121.*

In a substantively similar case, the Third Circuit confirmed the requirement of intentional conduct applies to the inadvertent disclosure of private records—**even clearly protected health information**. *Weisberg v. Riverside Twp. Bd. of Educ.*, 180 F. App'x 357, 365 (3d Cir. 2006) ("Medical information ... is entitled to privacy protection against disclosure. The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *see also, Annabel v. Michigan Dept. of Corr.,* 2018 WL 3455407 at *22-23 (W.D. Mich. 2018), *citing Summe v. Kenton Cty.*, 604 F.3d 257, 270-271 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right

---

[8] *See*, *Dkt. 37, Dec. of Dalessio at 2* ("…these PRs containing my…health related information… would be properly redacted and hoped that UW would request [Betz] destroy all copies of personal, confidential information that he was mistakenly provided." *Cited in Order, Dkt. 153, fn. 5.*; *Dkt. 160*, at p. 7:14-16.

[9] *See*, *Dkt. 30* (Swenson withheld 101 of 471 pages of documents from release to Mr. Betz, and heavily redacted others based on PRA exemptions, including those based on "health privacy." *Dkt Nos. 30-5, 30-6, 30-7, Dkt. 34, pp. 63-66, 71-73, 80-82, 102-106* (Swenson redactions based on privacy exceptions).

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 8
2:17-cv-00642-MJP

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights).

In *Weisberg*, an employee's Fourteenth Amendment claim for violation of informational privacy was properly dismissed where his medical report was accidentally put into an envelope with another teacher's contract, thus releasing sensitive information. *Id*. at 360. *Id*. at 365; *see also, Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 739-40 (D.N.J. 2012 (negligent disclosure does not violate a constitutionally-protected privacy right.")   The Court has already acknowledged there is no evidence anyone intentionally released "protected health information" about Ms. Dalessio in the PRA response. For all of these separate and individually-sufficient reasons, Plaintiff fails to meet the first prong of qualified immunity by establishing a constitutional violation.  *See also,* Dkt. 119, pp. 6-16; Dkt. 132 at pp. 5-9.

        b.    *Any Constitutional Right Potentially Implicated Was Certainly Not "Clearly Established" at the Time of the Production.*

Even if the Court somehow found some private health information was disclosed in a manner significantly substantial enough to possibly amount to a constitutional violation, Plaintiff fails the second prong of proving any such right was clearly established at the time of disclosure.  The standard for determining application of qualified immunity is "whether the [individual] could have believed, reasonably but mistakenly…  that his or her conduct did not violate a clearly established constitutional right."  *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (Emphasis added.)  This inquiry must be particularized based on the circumstances the official is confronted with at the time. *See*, *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039 (1987); *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("[A] district court must decide whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights.")   The "immunity protects all but the plainly

DEFENDANTS SAUNDERS, SWENSON, TAPPER, AND PALMER'S SECOND MOTION FOR SUMMARY JUDGMENT - 9
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1    incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551,

2    196 L. Ed. 2d 463 (2017) (Internal citations and quotations omitted.)

3            The documents Plaintiff identifies as "protected health information" do not even rise

4    to the level disclosed in *Cooksey*. *See supra.*  As the Court can see, none of the documents

5    produced to Mr. Betz by Defendant Swenson qualify as such under the rigorous standard

6    defining Constitutionally-protected private information. *Dkts. 32, 33, 34.*  Based on the

7    specific facts and circumstances of this case, there is no authority that would have made it

8    clearly established at the time of the production that any of the identified documents would

9    even constitute "protected health information", much less that their production in response

10   to a lawful PRA request in redacted format would violate a clearly established

11   constitutional right.  Therefore, the Individual Defendants are also entitled to qualified

12   immunity for all remaining claims.

13           2.    <u>"Good Faith" Immunity Bars Any State Law Claims Against Defendants</u>.

14           The Individual Defendants are also entitled to "good faith" immunity for any state

15   law claims under RCW 42.56.060.  This immunity bars all state law claims, including

16   Plaintiff's claims for "public disclosure of private facts." *Nicholas v. Wallenstein*, 266 F.3d

17   1083, 1087 (9th Cir.2001); *Levine v. City of Bothell,* 2012 WL 2567095, at *3 (W.D. Wash.

18   July 2, 2012); *Whaley v. DSHS*, 90 Wash. App. 658, 669 (1998).  Plaintiff's references to

19   the ADA and HIPAA as the basis of describing certain information as "private" by virtue of

20   allegedly constituting "health" information does not foreclose application of statutory

21   immunity barring claims against employees charged with preparing documents responsive

22   to PRA requests and evaluating, redacting, withholding, and producing such documents in

23   the course of fulfilling their obligations under the PRA.

24           3.    <u>Eliza Saunders and Perry Tapper Are Entitled to Discretionary Immunity to
         the Extent Plaintiff's Claims Are Based on Their Actions in Creating UW's
25       Public Records System.</u>

26           Defendants used the same processes to locate, collect, and redact the alleged

27   "protected health information" as they did the alleged "personal information."  To the

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 10
2:17-cv-00642-MJP

1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

extent Plaintiff pursues a claim against Defendants Saunders and/or Tapper based on their role in creating or implementing the processes by which the University of Washington responds to PRA requests, it is also barred by discretionary immunity.

The PRA requires that public agencies search all places reasonably calculated to locate where responsive documents may be located. *Neighborhood All. of Spokane Cty. v. Spokane Cty.*, 172 Wash. 2d 702, 720, 261 P.3d 119, 128 (2011). Any acts or decisions by OPR Director Eliza Saunders or OPR Compliance Officer Perry Tapper, regarding, for example, developing a system for OPR to coordinate with the vast array of University departments to identify, locate, and collect documents pursuant to the requirements of the Public Records Act, as well as how to track requests, evaluate for potential exemptions, and prepare redactions involves the exercise of basic policy evaluation, judgment, and expertise necessary to implement programs to meet the statutory requirements of the PRA with available resources and infrastructure in an enormous public agency like the University of Washington. Public officials necessarily consider logistics, resources, and benefits when developing such a system for responding to PRA requests based on the public official's knowledge and expertise with the goal of complying with the PRA. *See, Dkt. 120, 121;* Dkt. 106 *(Order)*; Dkt. 119, p. 19; Dkt. 132, pp. 10-11.

**C.     No, Plaintiff Is Not Entitled to Relief Under Any Cause of Action for the Release of Allegedly Protected Information to Herself.**

Simply put, there are no privacy concerns in releasing a person's documents or information to themselves. It is undisputed Plaintiff is the only one who received an unredacted copy of her personnel file and employment-related documents. Therefore, Plaintiff has no legitimate claim of a violation of privacy under federal or state law for the release of her own file to herself.

1.     <u>No Legal Authority Supports a Theory of Liability Under Any of Plaintiff's Causes of Action for Producing Documents Regarding Plaintiff's Employment to Herself.</u>

Under Washington law, employees have the legal right to request and inspect their

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 11
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

own personnel files and employers are required to make them available to the employee within a reasonable time after the employee makes the request.   RCW 49.12.240 and RCW 49.12.250.   Former employees may also request review of their personnel files. *Martin v. Gonzaga Univ.*, 191 Wash. 2d 712, 720, 425 P.3d 837, 842 (2018).   Plaintiff's remaining causes of action under § 1983 and common law "Public Disclosure of Private Facts" do not permit recovery for release of one's own information to herself.

Plaintiff's Fourth Amendment claim appears to allege an unlawful search and seizure because University of Washington employees located her employee files, allegedly containing information protected by HIPAA and the ADA, and produced copies of the employment documents to her. *Dkt. 82* at ¶¶ 147-165.   This Court has already ruled that "accessing the files of a former employee in response to a valid records request" does not violate the Fourth Amendment with regard to their response to the Betz request in 2015. *Dkt. 153* at p. 9:1-11.   The employees searched the same records in responding to Plaintiff's subsequent request for her own records in 2016, except there was even less of a constitutionally-protected "reasonable expectation of privacy" because Defendants were producing documents related to Plaintiff's own employment directly to her. *See, e.g. Boateng v. Lynch*, 672 F. App'x 646, 647 (9th Cir. 2016).

With regard to claims of informational privacy under the Fourteenth Amendment, courts have found the information must first be disclosed *to the public* to even potentially implicate a constitutional concern.   "To determine whether a particular disclosure satisfies this exacting standard, we must examine the nature of the material **opened to public view** to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession." *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (emphasis added.); *Whitworth v. Regents of Univ. of California*, 274 F. App'x 559, 562 (9th Cir. 2008) (Plaintiff failed to allege liberty right under the Fourteenth Amendment where he could not show a sexual harassment allegation had been disclosed to the public.)

In addition, §1983 claims require a direct and intentional violation of an individual's

DEFENDANTS SAUNDERS, SWENSON, TAPPER, AND PALMER'S SECOND MOTION FOR SUMMARY JUDGMENT - 12
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

constitutional rights—negligence is not enough.  It is undisputed that Andrew Palmer is the only employee who produced the response to PR 16-00760 directly to Ms. Dalessio.  He testified he understood Dalessio's request was a request for her own personnel files and therefore would not be redacted before releasing records regarding her own employment to her. *Dkt. 29* at ¶ 4.  Defendants could locate no Federal law supporting a theory that release of information to the subject of the information could in any way give rise to any type of privacy claim.

Finally, the "Common Law Tort" of "Public Disclosure of Private Facts" requires just that—*public* disclosure.  "The tort of invasion of privacy requires evidence that the matter **publicized** (1) would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." *Reid v. Pierce County,* 136 Wash.2d 195, 205, 961 P.2d 333 (1998) (citing Restatement (Second) of Torts, § 652D (1977)) (emphasis added.) "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *K.S. v. City of Puyallup*, No. 13-5926 RJB, 2014 WL 3056817, at *3–5 (W.D. Wash. July 7, 2014), citing *Restatement, supra.* Information that is only provided to Plaintiff is not disseminated to the public.  Therefore, it cannot give rise to a cause of action.

2. <u>Plaintiff's Claims Would Also Be Barred by Good Faith Immunity and Qualified Immunity.</u>

As discussed above, any claims based on producing Plaintiff's unredacted personnel file *to her* are barred by qualified immunity under Federal law and good faith immunity under RCW 42.56.060.  Plaintiff cannot show that producing Plaintiff's records to her would violate any constitutional right, or that an employee in the position of Defendants would have any reason to expect that they could possibly be violating the Constitution in doing so.  Therefore, Plaintiff's §1983 claims would be barred.  Similarly, all state law claims are barred by good faith immunity. There is no evidence even hinting that Defendant

DEFENDANTS SAUNDERS, SWENSON, TAPPER, AND PALMER'S SECOND MOTION FOR SUMMARY JUDGMENT - 13
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Palmer acted in anything but good faith, nor does the law or evidence suggest he could have or should have anticipated he could be violating any legal or Constitutional right when producing Plaintiff's records to her.  Plaintiff's claims separately fail on these grounds.

**D.     No, Plaintiff Does Not Have Standing to Sue For the Release of Information Regarding Third Parties Contained in the Documents in her UW File.**

As an initial matter, Plaintiff did not allege there was protected third-party information *in her file*, but rather that information regarding third-parties was produced to Mr. Betz in response to PR 15-00570.  In any event, however, Plaintiff does not have the right to pursue §1983 or tort claims against Defendants on behalf of others.  In a 1992 decision, the Supreme Court decision, laid out the minimal constitutional requirements for standing to pursue a §1983 claim:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, *the plaintiff* must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between *the injury* and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that *the injury* will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (emphasis added). *See also*, *Jackson v. Official Rep.s & Emp. of Los Angeles Police Dep't In & For Los Angeles Cty.*, 487 F.2d 885, 886 (9th Cir. 1973) (Plaintiff did not have standing to assert claims regarding alleged deprivation of others' constitutional rights under the Fourth Amendment).  Washington law on "standing" follows similar logic. *See*, *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wash. 2d 107, 138, 744 P.2d 1032, 1055 (1987), amended, 109 Wash. 2d 107, 750 P.2d 254 (1988) ("The doctrine of standing prohibits a litigant from raising another's legal rights.")

Plaintiff cannot show that *she* suffered an "injury in fact" or an invasion of any of *her* legally protected interests as a result of allegedly receiving information regarding

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 14
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

others.  This claim appears to be related to the appearance of individuals' names on a Disability Services Office computer "screen shot" documenting which employee files had already been destroyed pursuant to State law retention schedules. *Dkt. 34*, at p. 193. As the document does not contain any medical information, it is questionable whether *anyone* could assert a privacy claim regarding the information contained in the documents in any event.  Regardless, Plaintiff certainly cannot.  Similarly, Plaintiff cannot show the release of the other individuals' names had any causal connection to any injury she alleges to have suffered.[10]

Plaintiff's Amended Complaint seemingly argues she presented this information to support arguments of a "pattern or practice" in support of her own claims. *Dkt. 82* at ¶ 79. However, courts have repeatedly found "[a]n interest sufficient to support standing to sue … must be more than simply the abstract interest of the general public in having others comply with the law." *Chelan Cty. v. Nykreim*, 146 Wash. 2d 904, 935, 52 P.3d 1, 16 (2002).  Plaintiff has no standing to assert claims on behalf of the other individuals whose names may appear in the response to PR 15-00570.

## V.    CONCLUSION

As with the claims previously dismissed, Plaintiff fails to provide evidence, legal authority, or expert opinion creating a material question of fact about or establishing a viable claim against Defendants Swenson, Palmer, Tapper, or Saunders. Thus, these individual Defendants respectfully request the Court dismiss Plaintiff's remaining claims and entire lawsuit as a matter of law with prejudice.

DATED:  March 28, 2019

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: */s/ Jayne L. Freeman*

---

[10] Furthermore, all of Plaintiff's claims seeking injunctive and/or declaratory relief have already been dismissed with prejudice. *Dkt. 153, p. 13-14; Dkt. 160, p. 10 (Ex. A).*

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 15
2:17-cv-00642-MJP

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Jayne L. Freeman, WSBA #24318
Special Assistant Attorney General for Defendant

801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone: (206) 623-8861
Fax:    (206) 223-9423
Email: jfreeman@kbmlawyers.com

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 16
2:17-cv-00642-MJP

1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX:  (206) 223-9423

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on March 28, 2019, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to

4   the following:

5

6       **Attorneys for Plaintiff**

7       Mr. Joseph Thomas
        14625 SE 176th Street, Apt. N-101
8       Renton, WA 98058-8994
        Telephone:  (206) 390-8848
9       Email:  joe@joethomas.org

10
    DATED:  March 28, 2019
11

12
                                        /s/ Jayne L. Freeman
13                                      Jayne L. Freeman, WSBA #24318
                                        Special Assistant Attorney General for
14                                      Defendant
                                        801 Second Avenue, Suite 1210
15                                      Seattle, WA  98104
                                        Phone: (206) 623-8861
16                                      Fax:     (206) 223-9423
                                        Email: jfreeman@kbmlawyers.com
17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS SAUNDERS, SWENSON, TAPPER,
AND PALMER'S SECOND MOTION FOR
SUMMARY JUDGMENT - 17
2:17-cv-00642-MJP
1010-00051/420054.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:   (206) 223-9423