1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   WESTERN DISTRICT OF WASHINGTON

10

11   JULIE DALESSIO, an individual,              No.  2:17-cv-00642-MJP

12                   Plaintiff,                   PLAINTIFF'S RESPONSE TO
                                                 DEFENDANTS SAUNDERS, SWENSON,
13         v.                                    TAPPER, AND PALMER'S SECOND
                                                 MOTION FOR SUMMARY JUDGMENT
14   UNIVERSITY OF WASHINGTON, a
     Washington Public Corporation; Eliza
15   Saunders, Director of the Office of Public
     Records, in her personal and official       **Noted for Hearing:  Friday, April 19, 2019
16   capacity; Alison Swenson, Compliance        (per court order, Dkt. 160)**
     Analyst, in her personal capacity; Perry
17   Tapper, Public Records Compliance
     Officer, in his personal capacity; Andrew
18   Palmer, Compliance Analyst, in his          **\*\*\* ORAL ARGUMENT REQUESTED**
     personal capacity; John or Jane Does 1-12,
19   in his or her personal capacity,

20                   Defendant.

21

22

23

24

25

26

27

28   Response to Defendant's Second Motion        1        Law Office of Joseph Thomas
     For Summary Judgment                                  5991 Rainier Ave. South #B
                                                           Seattle, Washington 98118
     Case 2:17-cv-00642                                    Phone (206)390-8848

To avoid liability for violations of the Public Records Act Defendants engaged in a pattern and practice of over-disclosure of personal and private information of individuals.  Under the Public Records Act there is only liability for wrongfully withholding records, and not for over-disclosure.  *See* RCW 42.56.550(4).

Defendants are concerned about liability for violations of the Public Records Act.  The job description for Defendant Saunders, who is the Director of the Office of Public Records, warns about the grave financial risk, for violations of the Public Records Act.

> State-wide risks associated with non-compliance to the public records act rise daily.  The need to properly manage these risks increases as well.  Throughout Washington, government institutions which have inadequately managed public records and open public meetings compliance and enforcement structures, are being ordered by the courts to pay, sometimes budget-breaking fines and fees (these are discussed in the comments section).  It is fair to say the risk of being fined $500,000.00 for a single infraction of the Public Records law is not uncommon.

> Mitigating  these risks and reducing their impact to the University requires that the incumbent have a breadth and depth of expertise in all legal aspects and best practices of  transparency laws, public records and open public meetings, HIPAA, FERPA, privacy law, human subjects regulations, and federal anti-terrorism rules and laws, to name a few.

Dkt. 130-1 at 8.

To avoid liability under the Public Records Act, Defendants engaged in a pattern and practice of over-disclosing personal and private information.  It is the modus operandi of Defendants to over-disclose documents because it avoids liability.  Legal redress for wrongful withholdings is relatively straightforward compared to over-disclosure.

Defendants' pattern and practice of over-disclosure of medical information violates Plaintiff's clearly established constitutional rights.  This Court should deny Defendants' Second Motion for Summary Judgment and this lawsuit should proceed to a jury trial.

## I.      RELIEF REQUESTED

Plaintiff requests Defendants' Second Motion for Summary Judgment is denied.

## II.      UNCONTESTED FACTUAL BACKGROUND

On September 16, 2015, Plaintiff's neighbor, David Betz, made a Public Records Act

1    request for "all records maintained by the University of Washington relating or pertaining to Julie

2    Dalessio."  Dkt. 82 at 5, ¶ 29; Dkt. 95 at 4, ¶ 29.

3          On November 10, 2015, Defendant Swenson produced an installment of documents to Mr.

4    Betz's request with "the appropriate redactions." Dkt. 82 at 5, ¶ 30; Dkt. 95 at 4, ¶ 30.

5          On December 04, 2015, Defendant Swenson made a subsequent production of documents

6    to Mr. Betz's request and again verified that for this second and final installment of documents

7    "made the appropriate redactions and/or exemptions" according to the PRA.  Dkt. 82 at 6, ¶ 31;

8    Dkt. 95 at 4, ¶ 31.  Defendant Swenson stated the basis for the redactions on December 04, 2015

9    were: FERPA Student Privacy 20 U.S.C. § 1232; HIPAA 40 C.F.R. Part 160, 164; RCW

10   42.56.050 Invasion of Privacy; RCW 42.56.070(1) Other Statute; RCW 42.56.230(3) Employee

11   Privacy; RCW 42.56.230(3) Employee Performance Evaluation; RCW 42.56.230(3) Taxpayer

12   Information; RCW 42.56.250(2) Employment Application; RCW 42.56.230(3) Employee

13   Information; Chapter 70.02 RCW Medical Records. Dkt. 82 at 6, ¶ 31; Dkt. 95 at 4, ¶ 31.

14         Defendant Swenson also produced documents about Plaintiff in requests PR-2016-00218.

15   Dkt. 82 at 6, ¶ 35;

16         On April 17, 2016, out of fear that her private, confidential, personal information was

17   unlawfully being disclosed to known and unknown third parties Dalessio contacted Defendant

18   Swenson by email and Defendant UW's Office of Public Records by United States Postal Service

19   alerting them that Mr. Betz "was given confidential information, including my social security

20   number and date of birth along with the other health and personnel related, confidential, exempt

21   information."  Dkt. 82 at 7, ¶ 37; Dkt. 95 at 4, ¶ 37.

### III.    LEGAL AUTHORITY

23         "In order to carry its ultimate burden of persuasion on the motion, the moving party must

24   persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co.*

25   *v. Fritz Companies*, 210 F. 3d 1099, 1102 (9th Cir. 2000).   "If a moving party fails to carry its

26   initial burden of production, the nonmoving party has no obligation to produce anything, even if

27   the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

28

1    "One can think of few subject areas more personal and more likely to implicate privacy

2    interests than that of one's health." *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.

3    3d 1260, 1269 (9th Cir. 1998).

4    "Health care information is personal and sensitive information that if improperly used or

5    released may do significant harm to a patient's interests in privacy, health care, or other interests."

6    RCW 70.02.005(1).

## IV.    ARGUMENT

7

8    **1.  As a matter of law, this Court cannot grant summary judgment because there**

9    **are many disputed issues of material fact concerning medical information**

10   All material facts alleged by the nonmoving party are assumed to be true, and all

11   inferences must be drawn in that party's favor. *Humann v. City of Edmonds*, C13-101 MJP, at *3

12   (W.D. Wash. Aug. 19, 2014) (Pechman, J.) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088

13   (9th Cir. 2008)).

14   "[A]" party seeking summary judgment" has the burden to "demonstrate the absence of a

15   genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  "If a genuine

16   issue of material fact exists that prevents a determination of qualified immunity at summary

17   judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F. 3d 1071, 1077 (9th Cir.

18   2003).

19   First, there are disputed issues of material fact whether Defendants produced protected

20   health information, as defined by the HIPAA, ADA and RCW 70.02.010(17), about Plaintiff in

21   response to David Betz' PRA request.   Dkt. 82 at 6-7, ¶ 36; Dkt. 107 at 4, ¶ 36.  The evidence is

22   already in the record identifying Plaintiff's protected health information that was produced

23   pursuant to the PRA to David Betz. Dkt. 34 at 69-77 (in part identifying Plaintiff's request for

24   accommodations under the ADA health care provider document, and temporary accommodations

25   letter).  Defendants argue the documents are "employment records" not protected health

26   information.  Dkt. 161 at 7. Whether these documents are medical information about Plaintiff is a

27   material fact because it goes to whether these documents are private constitutionally, whether the

28   Defendants acted lawfully, reasonably, or outside the scope of their duties in releasing these

records.

Second, there is a disputed issue of material fact if Defendants on multiple instances produced protected health information, as defined by the HIPAA, ADA and RCW 70.02.010(17), about Plaintiff.  Dkt. 38 at 22-25 (filed under seal as "00021-A1496196" and these documents identifies two medical doctors, a primary physician and an occupational medicine physician, and the document contains a multi-page psychological review describing Plaintiff's cognitive status and there are no redactions on any pages of this document); Dkt. 38 at 15-16 (filed under seal as "00015-A1496192" and this document is an occupational medicine physician's estimate of Plaintiff's physical capabilities, with the physician's name and signature, handwritten notes, and a detailed evaluation of what Plaintiff could do on the job and there are no redactions on any pages of this document); Dkt. 38 at 04-13 (filed under seal as "00004-A1496190" and this document identifies a psychologist, including name and signature, on a document from the Disability Services Office and is a "cognitive job analysis" of Plaintiff and there are no redactions on any pages of this document); Dkt. 38 at 251-54 13 (filed under seal as "00251-A1510625" and this document identifies Plaintiff's occupational medicine physician and primary care physician and explains Plaintiff's physical job limitations). Defendants producing Plaintiff's medical information on multiple instances proves a pattern and practice, which rises above mere negligence, and constitutes a violation of Plaintiff's Due Process rights.

Third, there are disputed issues of material fact whether Defendants produced protected health information, as defined by the HIPAA, about third parties in response to Plaintiff's PRA requests as alleged in the complaint.   Dkt. 82 at 14-15, ¶ 83; Dkt. 107 at 10, ¶ 83.  The evidence is already in the record identifying a small portion of third parties' protected health information that was produced to Plaintiff in response to public records requests. Dkt. 37-5 at 3 (identifying an Activity Prescription Form under the ADA with the worker's name, doctor's name, L&I claims number, and diagnosis); *Id*. at 20 (identifying a recommendation for an accommodation under the ADA from the UW Disabilities Services Office and is prohibited from "disclosure, copying, distribution"); *Id.* at 22 (identifying a document marked confidential that is an Activity's Prescription Form made under the ADA with the requestor's name, doctor's name, and

prescription un-redacted).  Defendants do not address in their motion for summary judgement that protected health information about third parties was produced to Plaintiff.  This is a material fact because it goes to whether these documents are private constitutionally, whether the Defendants acted lawfully, reasonably, or outside the scope of their duties in releasing these records.

Fourth, it is a disputed issue of material fact whether any policies that would prohibit private information in the production of documents, specifically: personally identifiable medical information, personally identifiable SSNs, personally identifiable employee personnel files.  The Public Records Act mandates that agencies "shall make available for public inspection and copying all public records, unless" exempt by statute. RCW 42.56.070(1).  Agencies claiming documents are exempt in whole or in part "shall" state the specific exemption authorizing the withholding. RCW 42.56.210(3).  By their own admission, Defendants withheld exempt medical information from production under the Public Records Act because of HIPAA and RCW 70.02.020 Medical Records. *See* Dkt. 82 at 6, ¶ 31; Dkt. 95 at 4, ¶ 31. *See also* Dkt. 130-1 at 7 (stating Defendant Saunders' job description as the Public Records Officer is to "assur[e] that the University complies with the Public Records Act and other state and federal laws such as the Health Insurance Portability and Accountability Act (HIPAA)").  Defendants claimed HIPAA and RCW 70.02.020 as a legal basis to withhold records, but still produced many documents to Plaintiff and third parties that are within the purview of HIPA and RCW 70.02.020.  Defendants violated its mandatory duty to produce only non-exempt information under the Public Records Act.

Fifth, it is a disputed issue of material fact who authorized and participated in the unlawful document productions.  It is known that Defendant Swenson sent the two stages of documents to Defendant Tapper for review before release to Mr. Betz [Dkt. 30-7 at 3], yet in its second motion for summary judgment, defendants assert that Mr. Tapper "simply served as supervisors in the University's Office of Public Records."  Dkt. 161 at 4. Defendants admitted that Defendant Saunders is the Public Records Officer (PRO) for UW [Dkt. 132 at 11] yet defendants assert that Ms Saunders "simply served as supervisors in the University's Office of Public Records."  Dkt. 161 at 4.

Sixth, it is a disputed issue of material fact that Defendant Saunders is the PRO for UW pursuant to RCW 42.56.580(1).  Defendants do not identify who is the PRO for UW pursuant to RCW 42.56.580(1).  Defendants identify in its documentation provided in initial disclosures that Defendant Saunders is the statutorily mandated PRO because she is the Director of the OPR.  Ex. A at 7.  The plain language of the PRA mandates that each agency have its own PRO, pursuant to RCW 42.56.580(1).  UW's self-created policies, codified in the Washington Administrative Code, unequivocally states that UW's Public Records Officer ("PRO") is the director of the OPR at UW.  WAC 478-276-060. Ex. B. Pursuant to the plain language of the Public Records Act, the Public Records Office has the mandatory duty to "oversee the agency's compliance with the public records disclosure requirements."  RCW 42.56.580(1).  Therefore, Defendant Saunders is responsible by statute for all of University of Washington's actions and inactions under the Public Records Act.  This is an issue of material fact in this case because there is evidence that Defendant Saunders is the PRO and it would implicate Defendant Saunders in her official capacity for the First and Third causes of action, which are in front of this Court.

Seventh, it is a disputed issue of material fact whether Defendant Tapper supervised Defendant Swenson in responding to request PR 2015-00570.  Mr. Tapper swears in a declaration to this Court that he did not "personally prepare or process the PR-2015-00570 public records request from Mr. Betz in 2015."  Dkt. at 2, ¶ 6.  In the request summary report for PR 2015-00570, it identifies PMT as reviewing the first and second stages of the production of documents.  Dkt. 30-7 at 3 (stating "sent stage 2 to PMT for review").  Defendants argue Ms. Swenson consulted with her supervisor Mr. Tapper Mr. Tapper "regarding some of the issues related to [PR 2015-00570] as is typical with many requests."  Dkt. 113-12 at 11.  This is an issue of material fact because if Mr. Tapper was involved in the production of PR 2015-00570 to Mr. Betz and is part of causation.

## 2. Yes, Plaintiff's claims regarding the disclosure of medical information are eligible for relief under § 1983

Plaintiff's claims regarding the disclosure of medical information are eligible for relief under 42 U.S.C. § 1983.

1   In the Second Motion for Summary Judgment, Defendants misconstrues Plaintiff's 42

2   U.S.C. § 1983 claims, and argues "Plaintiff Cannot Seek Relief for Alleged Violations of HIPAA

3   or the ADA under 42 U.S.C. § 1983." *See* Defs' Second Mot. Summ. J. at 5.  Defendants provide

4   no evidence to support this conclusion that Plaintiff sought relief for violations of HIPAA and the

5   ADA under 42 U.S.C. § 1983.

6   As a threshold issue, both of Plaintiff's 42 U.S.C. § 1983 claims are premised upon

7   constitutional violations of the Fourteenth and Fourth Amendments, and not HIPAA or the ADA.

8   Plaintiff's First Cause of Action is premised upon a substantive due process violation under the

9   Fourteenth Amendment.  Dkt. 82 at 17-20.  Plaintiff's Third Cause of action is premised upon an

10  unreasonable search and seizure violation under the Fourth Amendment. Dkt. 82 at 21-23.

11  In order to make the prima facie case in a 42 U.S.C. § 1983 lawsuit courts require plaintiffs to

12  "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights

13  secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338

14  (9th Cir. 1986); *see also Pistor v. Garcia*, 791 F. 3d 1104, 1114 (9th Cir. 2015).  Plaintiff

15  properly pled and alleged constitutional violations are the basis for the 42 U.S.C. §1983 claims.

16  HIPAA and the ADA define the "contours" of Plaintiff's right to privacy under the Fourth

17  and Fourteenth Amendments.  *Castro v. County of Los Angeles*, 833 F. 3d 1060, 1067 (9th Cir.

18  2016).  Plaintiff is referring to HIPAA and the ADA to define what privacy rights are afforded to

19  her by the United States Constitution.  Laws on the federal and state level define contours of

20  privacy.  "But the statute is of relevance in determining what privacy. . . public personnel

21  expected to have." *Nicholas v. Wallenstein*, 266 F. 3d 1083, 1088 (9th Cir. 2001).

22  Defendants' actions admit that HIPAA, ADA, and Chapter 70.02 RCW define the

23  contours of privacy under the Public Records Act. Defendants cited the statutory exemptions of

24  HIPAA and Chapter 70.02 RCW to withhold the documents because of Plaintiff's privacy in that

25  information. Dkt. 82 at 6, ¶ 31; Dkt. 95 at 4, ¶ 31.  Defendant Saunders' own job description

26  states it is her job to "assur[e] that the University complies with the Public Records Act and other

27  state and federal laws such as the Health Insurance Portability and Accountability Act (HIPAA)."

28  Dkt. 130-1 at 7.

Plaintiff only asserts HIPAA and the ADA in the context of defining the contours of her privacy rights guaranteed by the United States Constitution.

### 3. No. Defendants' immunity arguments do not equally apply to Plaintiff's claims regarding the disclosure of medical information

Defendants' immunity arguments do not equally apply to Plaintiff's claims regarding the disclosure of medical information and subsequently fail.

Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two steps that courts use to evaluate claims of qualified immunity. First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 US 194, 201 (2001). Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.*

### A. Defendants' conduct taken in the light most favorable to Plaintiff violated the Fourth and Fourteenth Amendments

Defendant violated Plaintiff's constitutional right to privacy under the Fourth and Fourteenth Amendments to the United States Constitution when it produced medical information about Plaintiff in response to Public Records Act requests.

When deciding if there is a constitutional violation the facts must be "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 US 194, 201 (2001). Because Plaintiff is the party asserting the injury and the facts must be taken in a light most favorable to her.

Both constitutional violations arise out of the same factual scenario. Plaintiff's neighbor, David Betz, made an invasive Public Records Act request about her to Defendant UW. Dkt. 82 at 5, ¶ 29; Dkt. 95 at 4, ¶ 29. Defendant Swenson, an employee of Defendant UW, responded to Mr. Betz's request producing documents in two installments. Dkt. 82 at 5-6, ¶¶ 30-31; Dkt. 95 at 4, ¶¶ 30-31. In pertinent part, Defendant Swenson and others withheld documents in whole or in

1    part because they were exempt from production under HIPAA or RCW 70.02.010(17). Dkt. 82 at

2    5-6, ¶¶ 30-31; Dkt. 95 at 4, ¶¶ 30-31.  But Defendant Swenson and others still produced many

3    exempt documents that are protected by the ADA to Mr. Betz.  Dkt. 34 at 69-77 (identifying

4    ADA protected health information about Plaintiff).

5           Plaintiff "feared" the University of Washington and named Defendants were producing

6    her medical information and social security number (as well as other personal and private

7    information) to others under the Public Records Act.  Dkt. 131 at 4, ¶ 17; Dkt. 82 at 7, ¶ 37. Then

8    Plaintiff made a series of Public Records Act requests to determine if Defendants and the

9    University of Washington would continue to produce her medical information and social security

10   number (as well as other personal and private information) to others.  Dkt. 82 at 9-10, ¶¶ 49-50;

11   Dkt. 95 at 6-7, ¶¶ 49-50.  Defendant Palmer and others produced documents containing Plaintiff's

12   protected medical information under HIPAA, ADA and RCW 70.02.010(17) as well as other

13   private information.  Dkt. 38 at 22-25 (filed under seal as "00021-A1496196" and these

14   documents identifies two medical doctors, a primary physician and an occupational medicine

15   physician, and the document contains a multi-page psychological review describing Plaintiff's

16   cognitive status and there are no redactions on any pages of this document); Dkt. 38 at 15-16

17   (filed under seal as "00015-A1496192" and this document is an occupational medicine

18   physician's estimate of Plaintiff's physical capabilities, with the physician's name and signature,

19   handwritten notes, and a detailed evaluation of what Plaintiff could do on the job and there are no

20   redactions on any pages of this document); Dkt. 38 at 04-13 (filed under seal as "00004-

21   A1496190" and this document identifies a psychologist, including name and signature, on a

22   document from the Disability Services Office and is a "cognitive job analysis" of Plaintiff and

23   there are no redactions on any pages of this document); Dkt. 38 at 251-54 13 (filed under seal as

24   "00251-A1510625" and this document identifies Plaintiff's occupational medicine physician and

25   primary care physician and explains Plaintiff's physical job limitations).

26          No one from the University of Washington, including any of the named Defendants asked

27   Plaintiff's approval to produce these documents through the Public Records Act. Dkt. 131 at 2,

28   ¶ 4 (stating "[a]t no time did UW, any of the named Defendants in this lawsuit, or anyone else

10

associated with UW give me the opportunity to authorize the disclosure of these very personal and private documents to a third party.").

Plaintiff also learned that Defendants routinely produced medical information (HIPAA, ADA and RCW 70.02.020) about third parties under the Public Records Act. Dkt. 37-5 at 3 (identifying an Activity Prescription Form under the ADA with the worker's name, doctor's name, L&I claims number, and diagnosis); *Id.* at 20 (identifying a recommendation for an accommodation under the ADA from the UW Disabilities Services Office and is prohibited from "disclosure, copying, distribution"); *Id.* at 22 (identifying a document marked confidential that is an Activity's Prescription Form made under the ADA with the requestor's name, doctor's name, and prescription un-redacted).

Defendants have a pattern and practice of producing persons exempt medical information unredacted under the Public Records Act. *See e.g.* Dkt. 37-5 at 3 (identifying an Activity Prescription Form under the ADA with the worker's name, doctor's name, L&I claims number, and diagnosis); *Id.* at 20 (identifying a recommendation for an accommodation under the ADA from the UW Disabilities Services Office and is prohibited from "disclosure, copying, distribution"); *Id.* at 22 (identifying a document marked confidential that is an Activity's Prescription Form made under the ADA with the requestor's name, doctor's name, and prescription un-redacted).  Evidence of multiple occurrences of an act is used to demonstrate a pattern and practice. *Board of Comm'rs of Bryan Cty. v. Brown*, 520 US 397, 408 (1997). Defendants are not entitled to immunity when there is a pattern and practice of an unconstitutional act.

###### i.      Fourteenth Amendment violation

The dissemination of medical information through the PRA or even the Freedom of Information Act ("FOIA") violates Plaintiff's right to informational privacy under the Fourteenth Amendment to the United States Constitution.  Under the Fourteenth Amendment, Plaintiff has a right to keep medical information private about herself, and not have it produced without her knowledge or consent.

The United States Supreme Court has identified "once there is disclosure, the information

1   belongs to the general public." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174

2   (2004).  *Muslim Advocates v. US Dept. of Justice*, 833 F. Supp. 2d 92, 99 (D.C. Cir. 2011)

3   (stating "[u]nder [the] public-domain doctrine, materials normally immunized from disclosure

4   under FOIA lose their protective cloak once disclosed and preserved in a permanent public

5   record").

6        The reason for this is "there is no question that an individual cannot expect to have a

7   constitutionally protected privacy interest in matters of public record." *Doe v. City of New York*,

8   15 F. 3d 264, 268 (2nd Cir. 1994).  There is no way to un-ring the disclosure bell of the PRA or

9   similarly FOIA.  As stated previously, the harm is already done once the documents become

10  public that is why Washington Legislature a provision of the PRA, RCW 42.56.540, which allows

11  a person or entity to sue to enjoin the release of records under the PRA.  But as established

12  earlier, Defendants did not give Plaintiff the opportunity to object to the public records disclosure

13  of her medical information.  *See* Dkt. 131 at 2, ¶ 4 (stating "[a]t no time did UW, any of the

14  named Defendants in this lawsuit, or anyone else associated with UW give me the opportunity to

15  authorize the disclosure of these very personal and private documents to a third party.").  Because

16  Defendants did not give Plaintiff a chance to object, Defendants have a pattern and practice of

17  producing Plaintiff's medical information under the Public Records Act.

18       Defendants argue that there is no violation of the Due Process Clause because "allegations

19  of negligence do not suffice."  Dkt. 161 at 7.  This misconstrues Plaintiff's argument.

20       Here, the facts identify through a pattern and practice, Defendant is producing medical

21  information about Plaintiff and others.  Plaintiff is not alleging an this is an isolated incident, but

22  Defendants indiscriminately disclose medical information under the Public Records Act.

23  Numerous pages of Plaintiff's medical information were produced under the Public Records Act

24  to Mr. Betz, Plaintiff, and possibly others.  Patterns and practice rise above mere negligence.  A

25  pattern and practice of producing Plaintiff's medical information under the Public Records Act

26  constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  *See Daniels v.*

27  *Williams,* 474 US 327 (1986).

28       At no time have Defendants produced any evidence that it is no longer producing

12

1    Plaintiff's medical information in the Public Records Act.  The record is absent of any

2    declarations, affidavits, or admissible testimony proving that Defendants have not produced

3    Plaintiff's medical information outside of what is documented in this Court's record. Defendants

4    have the burden to establish "facts peculiarly within the knowledge and control of the defendant."

5    *Gomez v. Toledo*, 446 US 635, 641 (1980).  What Defendant produces under the Public Records

6    Act is solely within the knowledge and control of Defendant.  The Washington State Legislature

7    recognizes what an agency produces under the Public Records Act is within the knowledge and

8    control of the agency, and that is why the agency has the mandatory statutory burden of proof in

9    Public Records Act lawsuits to prove it complied with the law.  *See* RCW 42.56.550(1).

10   Defendants waived this argument and any attempt to produce evidence now would be an

11   impermissible ambush.  LCR 7(b)(1); *Rocafort v. IBM Corp*., 334 F. 3d 115, 122 (1st Cir. 2003)

12   (stating "a party has a duty to incorporate all relevant arguments in the papers that directly

13   address a pending motion" and this duty "includes explaining arguments squarely and

14   distinctly").

15        At no point do Defendants state a compelling government interest for this infringement

16   into Plaintiff's privacy.

17        The dissemination of medical information through the PRA or even the Freedom of

18   Information Act ("FOIA") violates Plaintiff's right to informational privacy under the Fourteenth

19   Amendment to the United States Constitution.

20                          **ii.    Fourth Amendment violation**

21        The search of Plaintiff's medical information under the Public Records Act is an

22   unreasonable search and seizure violating the Fourth Amendment of the United States

23   Constitution.

24        The Fourth Amendment provides that "the right of the people to be secure in their persons,

25   houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ."

26   U.S. Const. amend. IV.  The Fourth Amendment is of 'general application,' and its text requires

27   that every search or seizure of 'papers and effects' be evaluated for its reasonableness."  *Hudson*

28   *v. Palmer*, 468 US 517, 555-56 (1984).

1       Here there is no doubt that Defendants' collection of Plaintiff's medical information is a

2   search under the Fourth Amendment.  The Public Records Act mandates that agencies conduct an

3   "adequate search" before producing responsive records to a PRA request.  *Neighborhood Alliance*

4   *of Spokane Cty. v. Cty. of Spokane*, 261 P. 3d 119, 128-29 (detailing the legal standard for an

5   adequate search under the PRA).  Defendants also admit through the request summary reports

6   they performed searches.  The Public Records Officers (or it's appointees) contacted different

7   departments in the University of Washington seeking documents responsive to the request.

8       The issue is whether the search was reasonable.  The answer to that question is: NO! An

9   unreasonable search and seizure is a violation of the Fourth Amendment. "[A] government

10   employer's warrantless search is reasonable if it is justified at its inception and if the measures

11   adopted are reasonably related to the objectives of the search and not excessively intrusive in light

12   of the circumstances giving rise to the search."  City of Ontario, Cal. v. Quon, 560 US 746

13   (2010).

14       Defendants should not have searched in confidential employee records such as employee

15   benefits and disability services office records that contain protected HIPAA or ADA documents.

16   *See* See Dkt. 30-7 at 2-4; Dkt. 108-6 at 1-4; Exhibit A.  Any documents containing Plaintiff's

17   personal information should have been segregated off and protected from unauthorized searches

18   or public inspection.

19       A search should not even include any documents that fall under the purview of the either

20   HIPAA or the ADA.  Both HIPAA and the ADA requires documents that are governed by the

21   respective laws to be segregated out from all other documents. The ADA requires in 42 U.S.C. §

22   12112(d)(3)(B) and 42 U.S.C. § 12112(d)(4)(C) that medical records be kept separately from

23   nonconfidential information, and that access to confidential files be limited.  Similarly, HIPAA

24   42 U.S.C. § 1320d–6(a)(3) is violated when a person knowingly "discloses individually

25   identifiable health information to another person."  Also, for HIPAA in 45 CFR § 164.512(a) a

26   covered entity may only disclose protected health information "to the extent that such use or

27   disclosure is required by law and the use or disclosure complies with and is limited to the relevant

28   requirements of such law."  Because the UW is subject to both the ADA and HIPAA concerning

1  Plaintiff's medical information, it is inherently unreasonable to search in an area that is prohibited

2  by law or is precluded to be disclosed by law.

3      Defendants disregarded these safeguards and still searched and seized Plaintiff's medical

4  information, subsequently producing it numerous times in response to multiple Public Records

5  Act requests.  A small part of the evidence of Defendants' search of Plaintiff's medical

6  information is already in the record.  *See* Dkt. 30-7 at 2-4; Dkt. 108-6 at 1-4; Exhibit A to this

7  Response to Second Motion for Summary Judgment.  A "request summary report" is a document

8  generated by the Office of Public Records that identifies searches, responses and dispositions

9  under the Public Records Act.  First, the request summary report for PR 2015-00570 identifies the

10  search for responsive records included "UW Medicine" and information was withheld from

11  production at least in part due to HIPAA and RCW 70.02.020.  Dkt. 30-7 at 4.  Second, the

12  request summary report for PR 2016-00760 identifies the search included "UW Medicine" and it

13  does not identify any exempt information.  Dkt. 108-6 at 1-4.  Defendants did not know if there

14  was authorization to search through Plaintiff's protected HIPAA, ADA, and RCW 70.02.020

15  medical information.  Plaintiff has previously written a sworn declaration to this Court that at no

16  time did anyone from the University of Washington attempt to verify her identity before

17  disclosing these documents. Dkt. 131 at 4-5, ¶ 20.  Third, the request summary report for PR-

18  2017-00359 identifies the search included "UW Medicine" and information was withheld from

19  production at least in part due to HIPAA and RCW 70.02.020.  Exhibit A at 1-2.  It should be

20  noted by this Court the request summary report for PR-2017-00359 identifies that Defendants did

21  consider whether the documents produced to this request "may be exempt under ADA" and there

22  were "[n]umerous questions/documents," but ultimately decided not to claim the ADA as an

23  exemption.  Exhibit at 3.

24      When Defendants took the documents from UW Medicine and the Office of Disability

25  Services as identified in the request summary reports, Defendants co-mingled Plaintiff's protected

26  medical information with unprotected information. This seizure which co-mingled Plaintiff's

27  protected medical information with unprotected information transformed the nature of the

28  documents.  Once the protected medical information was co-mingled with the unprotected

15

1    information it lost its protection as a matter of law. "[T]here is no question that an individual

2    cannot expect to have a constitutionally protected privacy interest in matters of public record."

3    *Doe v. City of New York*, 15 F. 3d 264, 268 (2nd Cir. 1994) (citing *Cox Broadcasting Corp. v.*

4    *Cohn*, 420 U.S. 469, 493-96 (1975) (holding that newspaper could not be held liable for

5    publishing information released to public in official court records)); *see also Muslim Advocates v.*

6    *US Dept. of Justice*, 833 F. Supp. 2d 92, 99 (D.C. Cir. 2011) (stating "[u]nder [the] public-domain

7    doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak

8    once disclosed and preserved in a permanent public record").

9        Defendants searches of protected HIPAA, ADA, and RCW 70.02.020 medical

10   information is unreasonable. As identified above, under both HIPAA and the ADA medical

11   information is to be kept separately. The reason why the information is to be kept separately is to

12   restrict the access to that protected medical information because of the inherent privacy interests.

13   But there is no evidence in the record that Defendants did keep the HIPAA and ADA medical

14   information separate as they were supposed to. If the documents were kept separate, then

15   Defendants and the unnamed John or Jane Does who performed the searches should not have had

16   access to HIPAA and ADA documents.

17        Contrary to what Defendants argue, it is not necessary to prove "personal participation"

18   by a defendant to establish the required causation. "The requisite causal connection can be

19   established not only by some kind of direct personal participation in the deprivation, but also by

20   setting in motion a series of acts by others which the actor knows or reasonably should know

21   would cause others to inflict the constitutional injury." *Arnold v. Int'l Bus. Machs. Corp.*, 637

22   F.2d 1350, 1355 (9th Cir. 1981)." Pechman Dkt. 153 at 7 footnote 6.

23        At no point do Defendants state a compelling government interest for this infringement

24   into Plaintiff's privacy.

25        It is inherently unreasonable for Plaintiff to lose her constitutionally protected privacy

26   interest in her medical information because of Defendant's search and seizure. It is a per se

27   unreasonable search and seizure to search through Plaintiff's protected HIPAA, ADA, and RCW

28   70.02.020 medical information without prior authorization from Plaintiff.

Defendants unreasonable search and seizure of Plaintiff's medical information violated her Fourth Amendment right under the United States Constitution.

## B. The rights under the Fourth and Fourteenth Amendments were clearly established at the time of the violation

It is clearly established at the time of the violation both the Fourth and Fourteenth Amendments to the United States Constitution prohibited the production of medical information under the Public Records Act.

"A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Castro v. County of Los Angeles*, 833 F. 3d 1060, 1067 (9th Cir. 2016) (internal quotation marks omitted); *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### i.   Public disclosure of private medical information violates Plaintiff's clearly established rights under the Fourteenth Amendment

Plaintiff's clearly established right of privacy in her medical information.  This right was clearly established well before Defendants unconstitutional searches for

The zone of privacy established by the Fourteenth Amendment to the United States is firmly established. *Whalen v. Roe*, 429 U.S. 589, 599-604 (1977); *Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977) (reaffirming existence of right to privacy in personal information).  "[A]t least two distinct kinds of constitutionally-protected privacy interests" are protected by the Fourteenth Amendment: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *In re Crawford*, 194 F. 3d 954, 958 (9th Cir. 1999) (citing *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir.1991)).  The right of avoiding disclosure of personal matters is implicated here.

Moreover, it is well-established medical information is at the core of the personal matters protected by the Fourteenth Amendment.  "The constitutionally protected privacy interest in

avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality." *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F. 3d 1260, 1269 (9th Cir. 1998); *Doe v. Attorney General of US*, 941 F. 2d 780, 795-96 (9th Cir. 1991) (stating "that medical information was encompassed within the first privacy interest related to disclosure of personal matters"). Employees medical records are private and protected by the Fourteenth Amendment. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir.1980) (stating "[t]here can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection"). Medical information used as the basis of a complain to the New York Commission of Human Rights was also protected by the Fourteenth Amendment from disclosure. *Doe v. City of New York*, 15 F. 3d 264 (2nd Cir. 1994) (holding "the right to confidentiality includes the right to protection regarding information about the state of one's health"). Even prisoners, who have diminished levels of privacy while in prison have been held to have a right to avoid disclosure of their medical information under the Fourteenth Amendment. *Doe v. Delie*, 257 F. 3d 309, 311 (3rd Cir. 2001) (holding "the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests"); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.1999) ("[t]his Court already has accorded constitutional stature to the right to maintain the confidentiality of previously undisclosed medical information").

Defendants have not made any showing of any governmental interest in the disclosure of individual employees' health information.

The contours of this right to privacy in one's medical records is further evidenced by several federal and state laws. Both HIPAA and the ADA requires documents that are governed by the respective laws to be segregated out from all other documents. The ADA requires in 42 U.S.C. § 12112(d)(3)(B) and 42 U.S.C. § 12112(d)(4)(C) that medical records be kept separately from nonconfidential information, and that access to confidential files be limited. Similarly, HIPAA 42 U.S.C. § 1320d–6(a)(3) is violated when a person knowingly "discloses individually identifiable health information to another person." Also, for HIPAA in 45 CFR § 164.512(a) a covered entity may only disclose protected health information "to the extent that such use or

1    disclosure is required by law and the use or disclosure complies with and is limited to the relevant

2    requirements of such law."

3        The statutes prohibiting the search were well-established at the time of the Public Records

4    Act requests.  Defendants demonstrated they had actual notice of HIPAA and RCW 70.02.020

5    because it claimed each of those statutes as a statutory exemption in each of the three request

6    summary reports in the record. *See* Dkt. 30-7 at 2-4; Dkt. 108-6 at 1-4; Exhibit A.  Also,

7    Defendants demonstrated it had actual notice of ADA because they examined whether certain

8    documents were exempt under the ADA.  *See* Exhibit A at 3.

9        Therefore, it was clearly established at the time of the searches that it was unreasonable to

10   search through Plaintiff's medical information.

11                              **ii.      Defendants' search of Plaintiff's private medical**

12                                       **information violates Plaintiff's clearly established**

13                                       **rights under the Fourth Amendment right**

14       Defendants' search of Plaintiff's private medical information violates Plaintiff's clearly

15   established rights under the Fourth Amendment to the United states Constitution.

16       The Fourth Amendment provides that "the right of the people to be secure in their persons,

17   houses, papers and effects, against unreasonable searches and seizures, shall be violated . . . ."

18   U.S. Const. amend. IV.  The Fourth Amendment is of 'general application,' and its text requires

19   that every search or seizure of 'papers and effects' be evaluated for its reasonableness."  *Hudson*

20   *v. Palmer*, 468 US 517, 555-56 (1984).  "[T]he touchstone" of Fourth Amendment "analysis has

21   been the question whether a person has a constitutionally protected reasonable expectation of

22   privacy." *Oliver v. United States*, 466 U.S. 170, 177 (1984). The Fourth Amendment "puts limits

23   not only on the type of information the State may gather, but also on the means it may use to

24   gather it." *Whalen v. Roe*, 429 US 589, 607 (1977) (Brennan, J. concurring).

25       "There can be no question that ... medical records, which may contain intimate facts of a

26   personal nature, are well within the ambit of materials entitled to privacy protection." *Doe v.*

27   *Delie*, 257 F. 3d 309, 315 (3rd Cir. 2001) (quoting *United States v. Westinghouse Elec. Corp.*, 638

28   F.2d 570, 577 (3d Cir.1980)); *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F. 3d

                                             19

1260, 1269 (9th Cir. 1998) (stating "[t]he constitutionally protected privacy interest in avoiding

disclosure of personal matters clearly encompasses medical information and its confidentiality");

*Doe v. Attorney General of US*, 941 F. 2d 780, 795-96 (9th Cir. 1991) (stating "that medical

information was encompassed within the first privacy interest related to disclosure of personal

matters"). "Information relating to medical treatment and psychological counseling fall squarely

within the domain protected by the constitutional right to informational privacy." *Nelson v.*

*National Aeronautics and Space Admin.*, 530 F. 3d 865, 879 (9th Cir. 2008); *see also Planned*

*Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002); *Norman-Bloodsaw v.*

*Lawrence Berkeley Lab*, 135 F.3d 1260, 1269 (9th Cir.1998); *Roe v. Sherry*, 91 F.3d 1270, 1274

(9th Cir. 1996); *Doe v. Att'y Gen.*, 941 F.2d 780, 795-97 (9th Cir.1991).

The contours of the Fourth Amendment are shaped by federal and state laws prohibiting

the search of medical records. Both HIPAA and the ADA requires documents that are governed

by the respective laws to be segregated out from all other documents. The ADA requires in 42

U.S.C. § 12112(d)(3)(B) and 42 U.S.C. § 12112(d)(4)(C) that medical records be kept separately

from nonconfidential information, and that access to confidential files be limited.  Similarly,

HIPAA 42 U.S.C. § 1320d–6(a)(3) is violated when a person knowingly "discloses individually

identifiable health information to another person."  Also, for HIPAA in 45 CFR § 164.512(a) a

covered entity may only disclose protected health information "to the extent that such use or

disclosure is required by law and the use or disclosure complies with and is limited to the relevant

requirements of such law."

Defendants have not made any showing of any governmental interest in the disclosure of

individual employees' health information.

Defendants also recognize that Plaintiff's medical information is entitled to privacy

protections under HIPAA, ADA, and RCW 70.02.020.  HIPAA and RCW 70.02.020 are regularly

cited as a statutory exemption by Defendants to withhold records under the Public Records Act.

*See* Dkt. 30-7 at 2-4; Dkt. 108-6 at 1-4; Exhibit A.  While the ADA is not cited as a statutory

exemption by Defendants in the request summary reports in the record, Defendants do consider

the ADA to be a proper statutory exemption in which to withhold records under the Public

Records Act. Each of the statutory exemptions cited by Defendants when responding to Public Records Act requests is an admission that Defendants recognize there is a privacy interest in withholding exempt public records. *Nicholas v. Wallenstein*, 266 F. 3d 1083, 1088 (9th Cir. 2001).

Defendant should have known not to even search through HIPAA, ADA, and RCW 70.02.020 documents because producing these documents falls outside of the stated purpose of the Public Records Act. "The basic purpose of the public disclosure act is to provide a mechanism by which the public can be assured that its public officials are honest and impartial in the conduct of their public offices." *Bainbridge Island Police Guild v. City of Puyallup*, 259 P. 3d 190, 203 (Wash. 2011) (quoting *Cowles Publ'g Co. v. State Patrol*, 109 Wash.2d 712, 719 (1988)).

The search was unreasonable on its face and this was clearly established well before any of the Public Records Act requests were made. The Public Records Act requests alleged in the Complaint were at the earliest made in September 2015. Case law establishes well before the year 2015 that it is unreasonable to search a person's medical information without compelling governmental interest. The statutes prohibiting the search were well-established at the time of the Public Records Act requests. Defendants demonstrated they had actual notice of HIPAA and RCW 70.02.020 because it claimed each of those statutes as a statutory exemption in each of the three request summary reports in the record. *See* Dkt. 30-7 at 2-4; Dkt. 108-6 at 1-4; Exhibit A. Also, Defendants demonstrated it had actual notice of ADA because they examined whether certain documents were exempt under the ADA. *See* Exhibit A at 3.

Therefore, it was clearly established at the time of the searches that it was unreasonable to search through Plaintiff's medical information.

### 4. Yes. Plaintiff is entitled to relief under any federal or state cause of action for the release of any of her protected information to herself

Case law is clear that once Plaintiff's medical information was disclosed under the Public Records Act, she loses her privacy interest in that information. It does not matter if Defendants disclosed Plaintiff's medical information to a third party or to Plaintiff herself. Because Plaintiff

1    lost her privacy interest in her medical information she is entitled to relief for federal and state

2    causes of action for the release of her protected information.

3        Defendants actions in producing protected information in public records resulted in the

4    deprivation of Ms. Dalessio's constitutional rights. The United States Supreme Court has

5    identified "once there is disclosure, the information belongs to the general public." *Nat'l Archives*

6    *& Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). *Muslim Advocates v. US Dept. of Justice*,

7    833 F. Supp. 2d 92, 99 (D.C. Cir. 2011) (stating "[u]nder [the] public-domain doctrine, materials

8    normally immunized from disclosure under FOIA lose their protective cloak once disclosed and

9    preserved in a permanent public record").

10       Defendants are not entitled to "good faith" immunity. First, Defendants are not entitled to

11   good faith immunity for tortious conduct.  "The state of Washington, whether acting in its

12   governmental or proprietary capacity, shall be liable for damages arising out of its tortious

13   conduct to the same extent as a private person or corporation." RCW 4.92.090.  Second,

14   Defendants have failed to establish they were acting in good faith pursuant to the Public Records

15   Act, pursuant to their mandatory evidentiary burden.  Defendants only argue there is no evidence

16   they have departed from the norms of the Public Records Act. Dkt. 161 at 13-14.  However, it is

17   not enough to make the conclusory argument there is an absence of bad faith, Defendants must

18   argue "facts peculiarly within the knowledge and control of the defendant" to establish good faith.

19   *Gomez v. Toledo*, 446 US 635, 641 (1980); *Marthaller v. King County Hosp.*, 973 P.2d 1098,

20   1101 (1999) (stating good faith is usually a question of fact).  In fact, Defendant Saunders' job

21   description states her position as the Public Records Officer is to mitigate risk and to avoid

22   lawsuits. 130-1 at 8.  If Defendant Saunders and the rest of the Defendants were mitigating risk

23   by producing over-producing exempt documents that should not have been exempt, Defendants

24   would not have been acting in bad faith.  It is too early for this Court to rule on this question of

25   fact.

26       Defendants are not entitled to discretionary immunity. Discretionary immunity is narrowly

27   applied, if only if, the State can prove "that the decision was the outcome of a conscious

28   balancing of risks and advantages." *Taggart v. State*, 118 Wn.2d 195, 214-15 (1992) (citing *King*

*v. Seattle*, 84 Wn.2d 239, 246 (1974)).  "[T]he decision must be a basic policy decision by a high level executive." *Avellaneda v. State*, 273 P. 3d 477, 481 (Wash. Ct. App. 2012). Defendant Saunders identifies that she does not have discretion in her job. "The PRA mandates that an agency disclose public records responsive to a request unless an exemption supports redaction or withholding of that record." Dkt. 120 at 2, ¶ 5.  This is evidenced by the mandatory statutory burdens in the plain language of the Public Records Act.  "Moreover, 'shall' when used in a statute, is presumptively imperative and creates a mandatory duty unless a contrary legislative intent is shown." Goldmark v. McKenna, 259 P. 3d 1095, 1099 (Wash. 2011); Phil. II v. Gregoire, 128 Wash.2d 707, 713, (1996); State v. Krall, 125 Wash.2d 146, 148 (1994). RCW 42.56.070(1) (stating agencies "shall make available for public inspection and copying all public records, unless" exempt by statute); RCW 42.56.080(2) (stating agencies "shall" make public records "promptly available to any person"); RCW 42.56.520 (stating "[r]esponses to requests for public records shall be made promptly by agencies").  The record is absent of any evidence that Defendants exercised discretion in the Public Records Act.  In fact, the plain language of the Public Records Act identifies Defendants only had mandatory statutory burdens and no discretion.

> **5. Plaintiff is not claiming standing to sue for the release of information regarding third parties, instead Plaintiff is using evidence about the release of information regarding third parties to establish a pattern and practice of Defendants conduct that rises above negligence**

This Court misconstrues Plaintiff's argument.  Plaintiff is not claiming standing to sue for the release of information to third parties, instead Plaintiff is using evidence about the release of information regarding third parties to establish a pattern and practice of Defendants conduct that rises above negligence.

[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have `any tendency to make the existence of any fact that is of consequence to the determination [of the point in issue] more probable or less probable than it would be without the evidence.'" *Skinner v. Railway Labor Executives'*

1  *Assn.*, 489 US 602 (1989) (quoting *New Jersey v. TLO*, 469 US 325, 435 (1985)).

2        Plaintiff needs evidence to show that Defendants' actions rise above mere negligence.  As

3  this Court has ruled already in this lawsuit for there to be a violation of the Due Process Clause of

4  the Fourteenth Amendment the action must rise above negligence.   The third parties' information

5  is relevant to this lawsuit because it is evidence of the fact that Defendants actions in disclosing

6  employee health information was not an isolated incident.  One of the recognized legal standards

7  above negligence is a pattern and practice of a behavior.  "[T]he existence of a pattern of tortious

8  conduct by inadequately trained employees may tend to show that the lack of proper training,

9  rather than a one-time negligent administration of the program." *Board of Comm'rs of Bryan Cty.*

10  *v. Brown*, 520 US 397, 408 (1997).

11        Plaintiff is making the argument to this Court that Defendant is engaging in a pattern and

12  practice of disclosure of personal and private documents that are exempt from the Public Records

13  Act.  It is admitted by Defendants that some of the examples are about the disclosure of third

14  parties' personal and private information.  But the third parties' information is relevant to this

15  lawsuit because it is evidence that fact that is of consequence to the determination [of the point in

16  issue] more probable or less probable than it would be without the evidence.'" *Skinner v. Railway*

17  *Labor Executives' Assn.*, 489 US 602 (1989).

18        As this evidence is relevant this Court should consider it when determining this motion.

19                                    **V.      CONCLUSION**

20        This Court should deny Defendants' Second Motion for Summary Judgment.  This Court

21  must look at the facts in the light most favorable to the Plaintiff in this motion.  When looking at

22  the facts in the light most favorable to the Plaintiff, Defendants over-disclosed Plaintiff's exempt

23  medical information in bad faith to avoid liability under the Public Records Act. Dkt. 130-1 at 8.

24  In over-disclosing Plaintiff's medical information, Defendants unreasonably searched Plaintiff's

25  medical information, which is required to be segregated out, violating her Fourth Amendment

26  rights.  Moreover, Defendants produced Plaintiff's medical information through the Public

27  Records Act violating her right to informational privacy under the Fourteenth Amendment.  It

28  does not matter who the information was disclosed to – either to a third party or to Plaintiff – case

law is clear that once the documents are produced under the Public Records Act. the information belongs to the general public.  Defendants right of privacy in the Fourth and Fourteenth Amendments were clearly established at all times relevant to this lawsuit.  Plaintiff is using the evidence of Defendants' disclosing exempt documents about third parties as evidence of a pattern and practice.  Plaintiff is not asserting the rights of others. This Court should deny Defendants' motion in its entirety.

Respectfully submitted this 15 day of April 2019.

Law Office of Joseph Thomas

____/s/ Joseph Thomas_____
Joseph Thomas, WSBA 49532

**Certificate of Service**

I hereby certify that on 15 of April 2019, I filed the foregoing with the Clerk of the Court through the CM/ECF system which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Email Notice List.

____/s/ Joseph Thomas_____
Joseph Thomas, WSBA 49532
5991 Rainier Ave. South #B
Seattle, WA 98118
(206) 390-8848