UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE DALESSIO,<br><br>                Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF WASHINGTON, et al.,<br><br>                Defendants. | CASE NO. C17-642 MJP<br><br>ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Defendants' Second Motion for Summary Judgment (Dkt. No. 161),

2. Plaintiff's Response to Defendants' Second Motion for Summary Judgment (Dkt. No. 162),

3. Defendants' Reply in Support of Second Motion for Summary Judgment (Dkt. No.163),

4. Plaintiff's Objection to New Evidence (Dkt. No. 165) and Defendants' Response to Plaintiff's Objection (Dkt. No. 166),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that Plaintiff's Objection to New Evidence is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is GRANTED; the remainder of Plaintiff's claims are DISMISSED with prejudice.

**Background**

The following are undisputed facts: Plaintiff was employed by the University of Washington ("UW") as a Clinical Technologist in the Department of Laboratory Medicine from 1987 until her resignation in 2003. On September 16, 2015, UW's Office of Public Records ("OPR") received a records request from David Betz under the Public Records Act (RCW 42.56; "PRA") for "all records maintained by the University of Washington relating or pertaining to Julie Dalessio." (Dkt. No. 82 at 5, ¶ 29.) In response, Defendant and OPR Compliance Analyst Alison Swenson released two installments of redacted records to Betz. UW released a total of 370 pages of documents to Betz; although there were many redactions, Plaintiff's Social Security number ("SSN") was not redacted from two of the pages; there were also instances of unredacted addresses, telephone numbers and birthdates. Additionally, there was information in the documents which Plaintiff alleges was personal medical information protected under the Health Information Portability and Accountability Act ("HIPAA") and the Americans with Disabilities Act ("ADA"). (Dkt. Nos. 30-1, 30-2.)

Following Betz's request, Plaintiff submitted her own PRA request to UW for the information which was released to Betz. (Id. at ¶ 33.) On April 16, 2016, upon receipt of the documents released to Betz under the PRA, Plaintiff became aware that of the unredacted information of which she now complains.

On November 9, 2016, Plaintiff submitted a second PRA request for "a digital copy of my departmental personnel file, along with any other computer or paper files that might contain records of inquiries concerning my employment at the uw [*sic*], since my resignation in January 2003." (Dkt. No. 29, Decl. of Palmer, Ex. A.)  Those documents were provided (to Plaintiff only) in two installments on January 26 and February 15, 2017.  (Id. at 3-4.)

Additionally, Plaintiff requested and received, pursuant to the PRA, documents regarding other UW employees which she claims also contain confidential health information.  Dkt. No. 37, Exs. 5-7.

Plaintiff's amended complaint, filed by her appointed counsel, originally named as defendants: the University of Washington; Alison Swenson, OPR Compliance Analyst; Eliza Saunders, Director of UW Office of Public Records; Perry Tapper, UW Public Records Compliance Officer; Andrew Palmer, OPR Compliance Analyst; and Does 1 – 12 (unnamed officials in various UW departments).  (Dkt. No. 82, ¶¶ 98-203.)  Plaintiff claimed violations of her federal constitutional rights (§ 1983), breach of contract, and liability under the "common law tort" of public disclosure of private facts.  In addition to economic, compensatory, and punitive damages, she also sought declaratory, equitable, and injunctive relief, as well as attorney's fees and costs.  (Id. at ¶¶ 98-203, *et seq*.)

In October of 2018, Defendants filed their first motion for summary judgment.  (Dkt. No. 119.)  The Court partially granted and partially denied that motion, dismissing (1) all the "Doe Defendants" and UW; (2) Plaintiff's claims for breach of contract, along with her request for declaratory and injunctive relief; and (3) the portion of Plaintiff's § 1983 and state law claims related to disclosure of her "personal information" (SSN, address, birthdate, etc.).  *See* Dkt. No. 153, Order on Defendants' Motion for Summary Judgment.  In an order addressing both sides'

requests for reconsideration/clarification, the Court suspended the case schedule in order to permit Defendants to file the instant motion, a second motion for summary judgment addressing the issues remaining in the case. (Dkt. No. 160, at 8-9.)

**Discussion**

I.      **Standard of review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The Court turns first to Plaintiff's "Objection to New Evidence in Defendants' Reply to Second Motion for Summary Judgment." (Dkt. No. 165.)

| | |
|---|---|
| 1 | **II. Motion to strike** |
| 2 | Attached as Exhibit A to Defendants' reply brief were excerpts from discovery responses |
| 3 | from the UW and Defendant Swenson, along with transmittal letters confirming that what |
| 4 | Defendants Palmer and Swenson had requested during their document search concerning |
| 5 | Plaintiff were "employment records" not "personal patient medical records." (Dkt. No. 164, |
| 6 | Decl. of Freeman, Ex. A) The evidence was produced to rebut Plaintiff's assertion in her |
| 7 | response that Defendants had searched her medical records and produced protected information |
| 8 | from that allegedly improper source. |
| 9 | Plaintiff objects to the introduction of this "new evidence" for the first time in |
| 10 | Defendants' Reply. It is not a well-taken objection. In the first place, the information was |
| 11 | produced in response to Plaintiff's argument that documents might have been pulled from |
| 12 | "patient" records related to her medical treatment. *See* Dkt. No. 162 at 14-16. It is beyond |
| 13 | question that Defendants are permitted to respond to arguments made by Plaintiff in her |
| 14 | responsive briefing; to fail to respond would be to concede the merit of the argument. Just as |
| 15 | obviously, the rebutting party has the right to present evidence in support of whatever response it |
| 16 | chooses to make. |
| 17 | Secondly, this evidence was excerpted from discovery responses produced to Plaintiff in |
| 18 | August of 2018. *See* Dkt. No. 164-1 at 9. Both sides have previously filed the exhibit to which |
| 19 | Plaintiff now objects. *See* Dkt. Nos. 136-1, 113 at 9, 113-12, and 108-3. Plaintiff cannot |
| 20 | maintain that she was surprised by the evidence and it was entirely proper for Defendants to |
| 21 | adduce it in this context. |
| 22 | Plaintiff's objection to the "new evidence" is DENIED. |
| 23 | |
| 24 | |

### III. Summary judgment motion

The remainder of the Court's order addresses the arguments of the parties presented in response to the issues outlined by the Court in its previous order.

    a) *Are Plaintiff's allegations concerning the disclosure of medical information and alleged violations of HIPAA and the ADA eligible for relief under § 1983?*

Plaintiff's § 1983 claims regarding the production of "protected" health/medical information fail on two grounds.

First, even assuming for the sake of argument that the evidence Plaintiff has presented was sufficient to support her claim of production of privileged medical information to a third party, and even assuming *arguendo* that the production of such information was a violation of HIPAA or the ADA, this would still not suffice to form the basis of a § 1983 claim. Her attempts to argue otherwise are futile.

Despite the Court's admonitions to the contrary in the order on Defendant's first summary judgment motion (*see* Dkt. No. 153 at 7-8), Plaintiff continues to confuse her "right to privacy" with her constitutional rights. While there is *some* overlap, they are not the same thing, and establishing that one or more governmental actors have negligently done something which compromises the former does not automatically mean that Plaintiff's constitutional rights have been violated. Much more is required, and Plaintiff's proof fails to rise to that higher standard.

Case law abounds which holds that § 1983 is not available to vindicate rights under the ADA (Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002)[1]; Okwu v. McKim, 682 F.3d

---

[1] "[A] comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." (*citations omitted*)… We therefore join the Fifth, Eighth, and Eleventh Circuits and hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA…"

842, 846 (9th Cir. 2012)[2]; *see also* Iceberg v. Martin, 2017 WL 396438 at *8 (WAWD, C15-1232JLR)) or HIPAA (Nickler v. County of Clark, 752 F.App'x 427, 429 (9th Cir. 2018)[3].

Plaintiff attempts to circumvent this prohibition by arguing that the restrictions of HIPAA and the ADA "define the contours" of the constitutional right to privacy that she is vindicating through her lawsuit. Dkt. No. 162, Response at 8. But ultimately it is just another way of attempting to assert that these statutory schemes (which have their own remedial engines) create rights which are enforceable under § 1983; in fact, Plaintiff states at one point that "[she] is referring to HIPAA and the ADA to define what privacy rights are afforded to her by the U.S. Constitution." Id. This is exactly what the case law says those statutes do not do.

Nor does Plaintiff produce case law to support her position. She cites to a case in support of her argument that HIPAA and the ADA can be used to "define the 'contours' of rights to privacy under the Fourth or Fourteenth Amendment" (Castro v. County of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016)), but Castro is a prisoner rights case concerning the right to be free from violence at the hands of other inmates; the case has nothing to do with HIPAA or the ADA or a constitutional right to privacy.

She quotes from another Ninth Circuit ruling which found that "the statute[4] is of relevance in determining what privacy… public personnel expected to have." Nicholas v. Wallenstein, 266 F.3d 1083, 1088 (9th Cir. 2011). In the first place, the case is concerned with

---

[2] "By drafting a comprehensive remedial scheme for employer's violations of ADA Title I, Congress manifested an intent to preclude § 1983 remedies. *See* 42 U.S.C. § 12117... We are not free to interpret § 1983 in a way that provides a substitute remedy that Congress never provided."

[3] To the extent that [Plaintiff] raises a claim based on an alleged Health Insurance Portability and Accountability Act (HIPAA) violation, that claim fails because there is no private right of action under HIPAA, (*citation omitted*), and [Plaintiff] has not shown that Congress's enactment of HIPAA "create[d] new rights enforceable under § 1983 . . . in clear and unambiguous terms. (*citations omitted*.)"

[4] The statute, this Court notes, was Washington's Public Disclosure Act, not HIPAA or the ADA.

the *limitations* on privacy expectations created by the statute (i.e., that a prison nurse was not exempt from production of information the public had a right to access under Washington's Public Disclosure Act). In the second place, the holding was addressed to *privacy* rights, not *constitutional* rights; another example of Plaintiff mistaking one for the other.

An Eighth Circuit case from 2002 articulates best (1) the reason why not every violation of a person's privacy is a constitutional violation and (2) the nature of the threshold which Plaintiff is required to cross to establish that a violation of her privacy reaches "constitutional" dimensions:

> Not every disclosure of personal information will implicate the constitutional right to privacy,… and the Supreme Court has cautioned against unwarranted expansion of the right: "The personal rights found in [the] guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit within the concept of ordered liberty' …." (*citations omitted*) "The Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liabilities for injuries that attend living together in society ….'" (*citations omitted*). *See also* Eagle, 88 F.3d at 627 ("We must constantly remain aware, however, that the Constitution does not provide a remedy for every wrong that occurs in society.").
>
> In accordance with these principles, we have consistently held that to violate the constitutional right of privacy "the information disclosed must be either a shocking degradation or an egregious humiliation …to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information." Alexander, 993 F.2d at 1350 (citation omitted).

Cooksey v. Boyer, 289 F.3d 513, 515-16 (8th Cir. 2002). None of the information concerning Plaintiff which appears in any document she has produced as evidence can be described as "shocking," "degrading," "egregious," "humiliating," or "flagrant." Even if she could establish that "protected" health information about her was transmitted to a third party, she has failed as a

1 matter of law to establish that the information was of such an extreme nature that it rose to the
2 level of violation of a constitutional right.

Plaintiff also grounds her argument alleging a 4th Amendment "unreasonable search and seizure" on HIPAA and the ADA, arguing that since those statutes require "segregation" of protected information, the fact that some of that information allegedly appeared in the Defendants' document productions means that the mandatory security was breached; i.e., Defendants "searched" this segregated material and "unreasonably" seized it. Response at 14-16. The cases cited *supra* (Vinson, Okwu, and Nickler) continue to stand as a barrier to any argument that an alleged HIPAA/ADA violation can somehow be leveraged into a constitutional violation or a § 1983 claim. Furthermore, the Court has already ruled that the conduct alleged here, "responding to a legitimate PRA request[,] falls into the category of a legitimate 'noninvestigatory work-related purpose' and that Plaintiff's Fourth Amendment rights have not been violated by Defendants' conduct." Dkt. No. 153 at 9 (*citing* City of Ontario v. Quon, 560 U.S. 746 (2010)). This ruling is applicable to all the information produced by Defendants of which Plaintiff complains. It is the law of the case that no Fourth Amendment violation occurred during the course of conduct which is the subject of this lawsuit.

The second ground on which Plaintiff's claim fails is the assertion that the disclosure of her own personal health/medical information to *her* created a breach of her constitutional protections. This issue is covered in more depth below; suffice it to say that Plaintiff has failed to establish that delivering privileged information to a requester at that person's request violates the requester's constitutional rights in any fashion.

*b) Do Defendants' immunity defenses apply equally to Plaintiff's allegations concerning the disclosure of medical information and alleged violations of HIPAA and the ADA?*

Regarding the qualified immunity defense applicable to Plaintiff's federal claims, and quoting from the order on Defendants' first summary judgment motion:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. <u>First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right?" If the answer is no, the officer is entitled to qualified immunity.</u>

Dkt. No. 153 at 9-10 (*quoting* <u>Skoog v. County of Clackamas</u>, 469 F.3d 1221, 1229 (9th Cir. 2006)(emphasis supplied)). As in the previous summary judgment motion, the Court has settled that issue at the first question. Since Plaintiff has failed to establish the violation of a constitutional right stemming from the conduct of any of the Defendants, they are all entitled to qualified immunity.

Plaintiff and Defendants expend a considerable amount of briefing arguing whether the disclosures to which Plaintiff objects were "negligent" – the violation of a constitutional right requires direct and intentional action and the Constitution does not protect against negligent conduct by government officials. <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986). Defendants argue that, even if privileged information concerning Plaintiff was produced, it was done so inadvertently, and they are guilty of negligence at worst. Plaintiff argues that her evidence of production of "protected" information – regarding herself and third parties – to both herself and Betz establishes evidence of a "pattern and practice" by UW which she argues (with no citation to case authority) "rise[s] above mere negligence." Response at 12.

Because Plaintiff has failed to establish the violation of a constitutional right on which to ground her federal claims, the Court need not and does not reach the issue of whether Defendants' conduct was more than merely negligent. Without the violation of a constitutional right, Defendants are entitled to qualified immunity, and the issue of their *mens rea* is immaterial.

Regarding the immunity defense applicable to Plaintiff's state claim, the law states:

> No public agency, public official, public employee, or custodian shall be liable, nor shall a cause of action exist, for any loss or damage based upon the release of a public record if the public agency, public official, public employee, or custodian acted in good faith in attempting to comply with the provisions of this chapter.

RCW § 42.56.060. The Court previously found, based on Defendants' declarations, that there was sufficient circumstantial evidence to support findings of good faith on all the part of all Defendants. Dkt. No. 153 at 10-11. (*See* Deschamps v. Sheriff's Office, 123 Wn.App. 551, 559 (2004).[5] Plaintiff produced no evidence to the contrary in the most recent round of briefing[6] and the Court finds no reason to disturb its original finding of "good faith" on the part of all the individual Defendants. Having so ruled, Defendants are entitled to immunity from Plaintiff's state law cause of action as well.

---

[5] "'The standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose." *Whaley v. Dep't. of Soc. & Health Serv.*, 90 Wn. App. 658, 669, 956 P.2d 1100 (1998) (citing *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986)[*further citations omitted*]… We examine good faith by considering all the relevant circumstances. *Whaley*, 90 Wn. App. at 669. Further, 'a traditional negligence standard--based on what the [employee or entity] reasonably should have known--is not used to determine whether immunity will attach.' *Whaley*, 90 Wn. App. at 668-69. And '[a]lthough good faith is usually a question of fact, it may be resolved on summary judgment where no reasonable minds could differ on the question.' *Marthaller*, 94 Wn. App. at 916." *Deschamps v. Sheriff's Office*, 123 Wn. App. 551, 559 (2004)

[6] Plaintiff does interpose a provision in Washington law which states that the State of Washington is liable for damages for the tortious conduct of its employees (RCW 4.92.090), but the State of Washington is no longer a defendant in this case and the statute is inapplicable to the individual defendants.

c) *Is Plaintiff entitled to relief under any federal or state cause of action for the release of any of her protected information to herself, or are her claims limited to the release of information to third parties?*

Plaintiff attempts to fashion an argument that somehow the production of her own information to her "destroyed" its protected character. She cites to a Supreme Court case for the proposition that "once there is disclosure, the information belongs to the public" (Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004)), but the case does not involve disclosure of privileged information to the person who held the privilege. She also quotes from a U.S. District Court case which held that "[u]nder the public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record" (Muslim Advocates v. U.S. Dept. of Justice, 833 F.Supp. 2d 92, 99 (D.C. Cir. 2011)), but (1) this is not a FOIA case and (2) Plaintiff has failed to identify anything disclosed about her which is now "preserved in a permanent public record" (in Muslim Advocates, the court was referring to an official government document).

Defendants cite Muslim Advocates for the holding that "a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld." Id. (*quoting* Public Citizen v. Dept. of State, 11 F.3d 198, 201 (D.C. Cir. 1993). Because Muslim Advocates is a FOIA case where the Defendant was fighting to *withhold* information, it is not on all fours with this case, but it does make the point that, if Plaintiff is claiming that her privileged information is now part of the "public record," it is her burden to point to where in the public domain the information can be found. Without evidence that it has been made available publicly, not even the material produced to Betz qualifies as "in the public domain;" the information produced to her unquestionably does not fall into that category.

1    Plaintiff has no grounds upon which to assert a federal or state cause of action on the
basis of information regarding her which was produced to her at her own request.

d) *Does Plaintiff have standing to sue for the release of any information regarding third parties which has been produced to her?*

Plaintiff herself makes it clear that she has not cited to this information because she believes she has standing to assert liability for its production. Response at 23-24. It is, in her mind, circumstantial evidence supporting her position that the production of her protected information is part of a "pattern or practice" by the UW which demonstrates that the production of her information was not "merely" negligence on Defendants' part, but something greater and more culpable.

It is a non-meritorious argument. First of all, the information she cites as allegedly "protected information"[7] once again fails to meet the threshold requirements ("shocking," "degrading," "egregious," "humiliating," or "flagrant") for violation of a constitutional right.

Second, she presents no evidence (by way of expert testimony or otherwise) that the sampling of third party information which she presents is statistically significant; i.e., represents a sufficiently large enough percentage of UW's total annual PRA production to legally constitute proof of a "pattern or practice" (a term for which Plaintiff provides no legal definition).

---

[7] 1. An "Activity Prescription Form" regarding modified duty which lists activity limitations due to a workplace injury to the subject's right shoulder. Dkt. No. 37-5 at 3.
2. A portion of an email from a UW Disability Services Consultant identifying an accommodation being made to an employee; there is nothing in the document concerning physical or medical condition. Dkt. No. 37-5 at 20.
3. A fax from a UW "Leave Specialist" at UW Medical Center Human Resources to a Dr. Schwarz listing physical restrictions for an employee and asking for clarification about the amount of weight she can lift, carry or push with her left hand; while the information regarding the subject's left hand is arguably privileged, it is *de miminis* to say the least. Dkt. No. 37-5 at 22.

1       Third, Plaintiff has no legal authority supporting her argument that proof of a "pattern or practice" suffices to lift Defendants' conduct above mere "negligence" and thus render them ineligible for the protections of qualified immunity. The case she does cite (<u>Board of Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397 (1997)) is an "excessive force" case where the question was whether to hold the county liable for the actions of one officer and the issue was whether the claimant had shown a lack of training by the municipality. ("[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program…"; <u>Id.</u> at 407-08). But Plaintiff has never alleged a claim of "improper or inadequate training" as a cause of action against any of the Defendants; it appears nowhere in her amended complaint. And the <u>Bryan County</u> case does not stand for the principle that "a pattern of tortious conduct" somehow elevates the alleged behavior above the realm of negligence; "lack of proper training" itself is a form of negligence.

      Finally, the evidence Plaintiff presents regarding production of the information concerning the third parties was neither assembled nor produced by any of the Defendants to this lawsuit. It constitutes no proof of liability regarding the individuals she has chosen to sue. It is the conclusion of this Court that this evidence avails Plaintiff nothing in terms of establishing her right to proceed on the causes of action she has asserted in this litigation.

**Conclusion**

      Defendants have definitively demonstrated that there are no outstanding issues of disputed material fact before the Court and that they are entitled to dismissal of the federal and state claims regarding their production of privileged medical/health information concerning

Plaintiff. Their conduct entails no violations of Plaintiff's constitutional rights, and all the Defendants are entitled for immunity under state and federal law. Summary judgment is GRANTED as to the remainder of Plaintiff's claims and her case is hereby DISMISSED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 7, 2019.

                          Marsha J. Pechman
                          United States Senior District Judge